# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| JAMES and ALICIA KAPPES, SCOTT CARNEY, SEAN CLANCY, ALEXANDER SHUSTA, ANDREW BERZANSKIS and MARGARET WILENSKY, KELSEY and PETER KEEFE, JOHN LATACKI, JOHN SPRUANCE, MICHAEL KEETH, DEVLIN SU, SPENCE VOSS, TIM BANAS, SALYI VU, CHRISTOPHER DORN, RUTH HOFFMAN, ALICIA and DAVID MALTZ, LAUREN HUNTINGTON, ELIZABETH NIEMIOJA, R. SCOTT PERRY, MATTHEW BERGANTINO, NICOLE and STEPHEN COSTA, CHAD FONG, JARED GADOMSKI LITTLETON, MICHAEL CHRISTIE, JOSEPH OHODNICKI, HELEN BARTEK, MICHAEL CARBAJALES-DALE, SHAWN SHEEHAN, RICHARD GOLLAND, ANDREW VENTURA, and AMI BENZUR, on behalf of themselves and all persons similarly situated, | Case No. 23-cv-10259 |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| FCA US, LLC, | |
| Defendant. | |

- i -

# CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................ 1

II.   JURISDICTION ................................................................................. 8

III.  VENUE ............................................................................................ 9

IV.   PARTIES ......................................................................................... 9

    A.   Plaintiffs ................................................................................. 9

        1.    James and Alicia Kappes (Arizona) ....................................... 9

        2.    Scott Carney (California) ..................................................... 10

        3.    Sean Clancy (California) ...................................................... 11

        4.    Alexander Shusta (California) .............................................. 12

        5.    Andrew Berzanskis and Margaret Wilensky (Colorado) ................................................................. 13

        6.    Kelsey and Peter Keefe (Connecticut) .................................. 14

        7.    John Latacki (Florida) ......................................................... 15

        8.    John Spruance (Georgia) ..................................................... 16

        9.    Michael Keeth (Idaho) ........................................................ 17

        10.   Devlin Su (Illinois) ............................................................. 18

        11.   Spence Voss (Illinois) ......................................................... 19

        12.   Tim Banas (Iowa) ............................................................... 20

        13.   Salyi Vu (Kansas) ............................................................... 21

        14.   Christopher Dorn (Kentucky) ............................................... 22

        15.   Ruth Hoffman (Maryland) ................................................... 23

16.     Alicia Maltz and David Maltz (Massachusetts) ..................... 24

17.     Lauren Huntington (Michigan/Ohio) ..................................... 25

18.     Elizabeth Niemioja (Minnesota) ........................................... 26

19.     R. Scott Perry (Missouri) ...................................................... 27

20.     Matthew Bergantino (New Hampshire) ................................ 29

21.     Nicole and Stephen Costa (New Hampshire) ........................ 29

22.     Chad Fong (North Carolina) ................................................. 30

23.     Jared Gadomski Littleton (Ohio) .......................................... 31

24.     Michael Christie (Oregon) .................................................... 32

25.     Joseph Ohodnicki (Pennsylvania) ........................................ 33

26.     Helen Bartek (Rhode Island) ................................................ 34

27.     Michael Carbajales-Dale (South Carolina) ........................... 35

28.     Shawn Sheehan (Texas) ........................................................ 36

29.     Richard Golland (Virginia) ................................................... 37

30.     Andrew Ventura (Virginia) ................................................... 38

31.     Ami Benzur (Washington) .................................................... 39

B.      Defendant ....................................................................................... 40

V.      FACTUAL ALLEGATIONS ................................................................. 42

A.      FCA marketed the Pacifica Hybrid as an extremely safe
        plug-in electric hybrid that can run in electric and gas
        modes and knew that these attributes were material to
        consumers. ..................................................................................... 42

B.      The Spontaneous Shutdown Risk. .................................................. 46

C.      All class members could have been made aware of the
        Spontaneous Shutdown Risk at the point of sale. ........................... 58

VI.    TOLLING OF THE STATUTE OF LIMITATIONS ................................ 59

    A.    Discovery Rule Tolling ...................................................................... 59

    B.    Fraudulent Concealment Tolling ........................................................ 60

    C.    Estoppel .............................................................................................. 60

VII.   CLASS ALLEGATIONS ......................................................................... 60

VIII.  CLAIMS ................................................................................................... 69

    A.    Nationwide Claims ............................................................................. 69

COUNT I VIOLATION OF THE MAGNUSON-MOSS
    WARRANTY ACT (15 U.S.C. § 2301, *et seq.*) (Alleged by all
    Plaintiffs on behalf of the Nationwide Shutdown Risk Class or,
    in the alternative, the State Shutdown Risk Subclasses) ........................... 69

COUNT II FRAUDULENT CONCEALMENT (COMMON LAW)
    (Alleged by all Plaintiffs on behalf of the Nationwide Shutdown
    Risk Class or, in the alternative, the State Shutdown Risk
    Subclasses) ............................................................................................... 74

COUNT III FRAUDULENT OMISSION (Alleged by all Plaintiffs on
    behalf of the Nationwide Shutdown Risk Class or, in the
    alternative, the State Shutdown Risk Subclasses) ................................... 78

COUNT IV UNJUST ENRICHMENT (COMMON LAW) (Alleged
    by all Plaintiffs on behalf of the Nationwide Shutdown Risk
    Class or, in the alternative, the State Shutdown Subclasses) .................... 80

    B.    State-Specific Claims ......................................................................... 82

        1.    Arizona .................................................................................. 82

COUNT V VIOLATIONS OF THE CONSUMER FRAUD ACT
    (Ariz. Rev. Stat. § 44-1521, *et seq.*) (Alleged by Plaintiffs
    James and Alicia Kappes on behalf of the Arizona Shutdown
    Risk Subclass) .......................................................................................... 82

COUNT VI BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER ARIZONA LAW (Ariz. Rev.

- iv -

Stat. § 47-2314)  (Alleged by Plaintiffs James and Alicia
Kappes on behalf of the Arizona Shutdown Risk Subclass) ...................... 86

2.      California............................................................................... 88

COUNT VII VIOLATION OF THE CALIFORNIA CONSUMER
LEGAL REMEDIES ACT (Cal. Civ. Code § 1750, *et seq.*)
(Alleged by Plaintiffs Carney, Clancy, and Shusta on behalf of
the California Shutdown Risk Subclass) ..................................................... 88

COUNT VIII VIOLATIONS OF THE CALIFORNIA UNFAIR
COMPETITION LAW (Cal. Bus. & Prof. Code § 17200)
(Alleged by Plaintiffs Carney, Clancy and Shusta on behalf of
the California Shutdown Risk Subclass) ..................................................... 92

COUNT IX VIOLATIONS OF CALIFORNIA FALSE
ADVERTISING LAW (Cal. Bus. & Prof. Code § 17500,
*et seq.*) (Alleged by Plaintiffs Carney, Clancy and Shusta on
behalf of the California Shutdown Risk Subclass) ..................................... 95

COUNT X VIOLATION OF SONG-BEVERLY CONSUMER
WARRANTY ACT FOR BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY UNDER
CALIFORNIA LAW (Cal. Civ. Code §§ 1791.1 & 1792)
(Alleged by Plaintiffs Carney, Clancy and Shusta on behalf of
the California Shutdown Risk Subclass) ..................................................... 97

3.      Colorado ........................................................................... 100

COUNT XI VIOLATIONS OF THE COLORADO CONSUMER
PROTECTION ACT (Colo. Rev. Stat. § 6-1-101, *et seq.*)
(Alleged by Plaintiffs Berzanskis and Wilensky on behalf of the
Colorado Subclass) ................................................................................ 100

COUNT XII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER COLORADO LAW (Colo.
Rev. Stat. § 4-2-314) (Alleged by Plaintiffs Berzanskis and
Wilensky on behalf of the Colorado Subclass)........................................ 104

COUNT XIII BREACH OF EXPRESS WARRANTIES UNDER
COLORADO LAW (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-

210) (Alleged by Plaintiffs Berzanskis and Wilensky on behalf of the Colorado Express Warranty Subclass) .......................................... 107

4.    Connecticut ........................................................................ 113

COUNT XIV VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT (Conn. Gen. Stat. § 42-110a, *et seq.*) (Alleged by Plaintiffs Kelsey and Peter Keefe on behalf of the Connecticut Subclass) .................................................. 113

COUNT XV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CONNECTICUT LAW (Conn. Gen. Stat. § 42a-2-314) (Alleged by Plaintiffs Kelsey and Peter Keefe  on behalf of the Connecticut Subclass) ........................ 117

5.    Florida ................................................................................. 119

COUNT XVI VIOLATION OF FLORIDA'S UNFAIR & DECEPTIVE TRADE PRACTICES ACT (Fla. Stat. § 501.201, *et seq.*) (Alleged by Plaintiff Latacki on behalf of the Florida Subclass) ................................................................................. 119

COUNT XVII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER FLORIDA LAW (Fla. Stat. § 672.314)  (Alleged by Plaintiff Latacki  on behalf of the Florida Subclass) ................................................................ 123

COUNT XVIII BREACH OF EXPRESS WARRANTY UNDER FLORIDA LAW (Fla. Stat. § 672.313, 680.21 and 680.1031) (Alleged by Plaintiff Latacki on behalf of the Florida Express Warranty Subclass) ................................................................ 124

6.    Georgia .............................................................................. 130

COUNT XIX VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT (Ga. Code Ann. § 10-1-390, *et seq.*) (Alleged by Plaintiff Spruance on behalf of the Georgia Subclass) ................................................................................. 130

COUNT XX BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER GEORGIA LAW (Ga. Code

- vi -

Ann. § 11-2-314(1)) (Alleged by Plaintiff Spruance on behalf
   of the Georgia Subclass) ........................................................................ 134

COUNT XXI BREACH OF EXPRES WARANTY UNDER
   GEORGIA LAW (Ga. Code Ann. § 11-2-313) (Alleged by
   Plaintiff Spruance on behalf of the  Georgia Express Warranty
   Subclass)............................................................................................... 136

      7.    Idaho................................................................................... 142

COUNT XXII VIOLATION OF THE IDAHO CONSUMER
   PROTECTION ACT (Idaho Civ. Code § 48-601, *et seq.*)
   (Alleged by Plaintiff Keeth on behalf of the Idaho Subclass)................. 142

COUNT XXIII BREACH OF IMPLIED WARRANTY OF
   MERCHANTABILITY UNDER IDAHO LAW (Idaho Civ.
   Code § 28-2-314) (Alleged by Plaintiff Keeth on behalf of the
   Idaho Subclass)...................................................................................... 146

COUNT XXIV BREACH OF EXPRESS WARRANTY UNDER
   IDAHO LAW (Idaho § 28-12-210 (Alleged by Plaintiff Keeth
   on behalf of the  Idaho Express Warranty Subclass) ............................... 148

      8.    Illinois................................................................................. 154

COUNT XXV VIOLATION OF ILLINOIS CONSUMER FRAUD
   AND DECEPTIVE BUSINESS PRACTICES ACT (810 ILCS
   505/1, *et seq.*, and 720 ILCS 295/1A) (Alleged by Plaintiffs Su
   and Voss on behalf of the Illinois Subclass)........................................... 154

COUNT XXVI BREACH OF IMPLIED WARRANTY OF
   MERCHANTABILITY UNDER ILLINOIS LAW (810 ILCS
   5/2-314) (Alleged by Plaintiffs Su and Voss on behalf of the
   Illinois Subclass).................................................................................... 158

      9.    Iowa..................................................................................... 160

COUNT XXVII VIOLATIONS OF THE IOWA PRIVATE RIGHT
   OF ACTION FOR CONSUMER FRAUDS ACT (Iowa Code
   § 714h.1, *et seq.*) (Alleged by Plaintiff Banas on behalf of the
   Iowa Subclass)....................................................................................... 160

COUNT XXVIII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER IOWA LAW (Iowa Code
§ 554.2314) (Alleged by Plaintiff Banas on behalf of the Iowa
Subclass) ................................................................................. 164

        10.   Kansas ................................................................. 167

COUNT XXIX VIOLATIONS OF THE KANSAS CONSUMER
PROTECTION ACT (Kan. Stat. § 50-623, *et seq.*) (Alleged by
Plaintiff Vu on behalf of the Kansas Subclass) ...................... 167

COUNT XXX BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY (Kan. Stat. Ann. § 84-2-314) (Alleged
by Plaintiff Vu on behalf of the Kansas Subclass).................. 168

        11.   Kentucky ........................................................... 171

COUNT XXXI VIOLATIONS OF THE KENTUCKY CONSUMER
PROTECTION ACT (Ky. Rev. Stat. § 367.110, *et seq.*)
(Alleged by Plaintiff Dorn on behalf of the Kentucky Subclass)............. 171

COUNT XXXII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER KENTUCKY LAW
(Kentucky Rev. Stat. §§ 355.2, *et seq.*)  (Alleged by Plaintiff
Dorn on behalf of the Kentucky Subclass) .............................. 175

        12.   Maryland .......................................................... 177

COUNT XXXIII VIOLATIONS OF THE MARYLAND
CONSUMER PROTECTION ACT (Md. Code Com. Law § 13-
101, *et seq.*) (Alleged by Plaintiff Hoffman on behalf of the
Maryland Subclass).................................................................. 177

COUNT XXXIV BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MARYLAND LAW (Md.
Code Com. Law § 2-314)  (Alleged by Plaintiff Hoffman on
behalf of the Maryland Subclass) ............................................ 181

        13.   Massachusetts ................................................... 183

COUNT XXXV DECEPTIVE ACTS OR PRACTICES
PROHIBITED BY MASSACHUSETTS LAW (Mass. Gen.

Laws Ch. 93A, § 1, *et seq.*) (Alleged by Plaintiffs Alicia and
David Maltz,  on behalf of the Massachusetts Subclass) ........................ 183

COUNT XXXVI BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MASSACHUSETTS LAW
(Mass. Gen. Laws Ch. 106, § 2-314) (Alleged by Plaintiffs
Alicia and David Maltz  on behalf of the Massachusetts
Subclass) ............................................................................................... 187

COUNT XXXVII BREACH OF EXPRESS WARRANTY  UNDER
MASSACHUSETTS LAW (Mass. Gen. Laws Ch. 106, § 2-
313, 2A-103 and 2A-210 et seq.) (Alleged by Plaintiffs Alicia
and David Maltz  on behalf of the Massachusetts Express
Warranty Subclass) ................................................................................ 190

      14.    Michigan ........................................................................... 196

COUNT XXXVIII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MICHIGAN LAW (Mich.
Comp. Laws § 440.314) (Alleged by Plaintiff Huntington on
behalf of the Michigan Subclass) ........................................................... 196

COUNT XXXIX BREACH OF EXPRESS WARRANTY  UNDER
MICHIGAN LAW (Mich. Comp. Laws § 440.2313, 440.2803,
and 440.2860) (Alleged by Plaintiff Huntington on behalf of the
Michigan Subclass) ................................................................................ 198

      15.    Minnesota ......................................................................... 204

COUNT XL VIOLATION OF MINNESOTA PREVENTION OF
CONSUMER FRAUD ACT (Minn. Stat. § 325F.68, *et seq.*)
(Alleged by Plaintiff Niemioja on behalf of the Minnesota
Subclass) ............................................................................................... 204

COUNT XLI VIOLATION OF MINNESOTA UNIFORM
DECEPTIVE TRADE PRACTICES ACT (Minn. Stat.
§ 325D.43-48, *et seq.*) (Alleged by Plaintiff Niemioja on behalf
of the Minnesota Subclass) .................................................................... 208

COUNT XLII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MINNESOTA LAW (Minn.

- ix -

Stat. § 336.2-314)  (Alleged by Plaintiff Niemioja on behalf of
the Minnesota Subclass).......................................................................... 213

COUNT XLIII BREACH OF EXPRESS WARRANTY  UNDER
MINNESOTA LAW (Minn. Stat. § § 336.2-313, and § 336.2A-
210)  (Alleged by Plaintiff Niemioja on behalf of the
Minnesota Express Warranty Subclass) ................................................. 214

16.    Missouri..................................................................... 221

COUNT XLIV VIOLATION OF MISSOURI MERCHANDISING
PRACTICES ACT (Mo. Rev. Stat. § 407.010, *et seq.*) (Alleged
by Plaintiff Perry on behalf of the Missouri Subclass) ........................... 221

COUNT XLV BREACH OF EXPRESS WARRANTY UNDER
MISSOURI LAW (Mo. Stat. § 400.2-313, and § 400.2A-210)
(Alleged by Plaintiff Perry on behalf of the  Missouri Express
Warranty Subclass) ................................................................................ 224

17.    New Hampshire ................................................. 231

COUNT XLVI VIOLATION OF NEW HAMPSHIRE CONSUMER
PROTECTION ACT (N.H. Rev. Stat. § 358-A:1, *et seq.*)
(Alleged by Plaintiffs Bergantino and Nicole and Stephen Costa
on behalf of the New Hampshire Subclass)............................................ 231

COUNT XLVII BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER NEW HAMPSHIRE LAW
(N.H. Rev. Stat. § 382-A:2-314) (Alleged by Plaintiffs
Bergantino and Nicole and Stephen Costa on behalf of the New
Hampshire Subclass).............................................................................. 235

18.    North Carolina .................................................. 236

COUNT XLVIII VIOLATION OF NORTH CAROLINA UNFAIR
AND DECEPTIVE ACTS AND PRACTICES ACT (N.C. Gen.
State §§ 75-1.1, *et seq.*) (Alleged by Plaintiff Fong on behalf of
the North Carolina Subclass) ................................................................. 236

COUNT XLIX BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER NORTH CAROLINA LAW

011086-11/2143139 V1

(N.C. Gen. Stat. § 25-2-314) (Alleged by Plaintiff Fong on Behalf of the North Carolina Subclass) .................................................. 240

19.    Ohio.................................................................................. 242

COUNT L IMPLIED WARRANTY IN TORT UNDER OHIO LAW (Alleged by Plaintiffs Gadomski Littleton and Huntington on behalf of the Ohio Subclass) .................................................. 242

20.    Oregon............................................................................. 244

COUNT LI VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT (Or. Rev. Stat. §§ 646.605, *et seq.*) (Alleged by Plaintiff Christie on behalf of the Oregon Subclass).......................... 244

COUNT LII BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER OREGON LAW (Or. Rev. Stat. §72.3140) (Alleged by Plaintiff Christie on behalf of the Oregon Subclass) .................................................. 249

COUNT LIII BREACH OF EXPRESS WARRANTY  UNDER OREGON LAW (Or. Rev. Stat. §§ 72.3130 and § 72A.2100) (Alleged by Plaintiff Christie on behalf of the  Oregon Express Warranty Subclass) .................................................. 251

21.    Pennsylvania...................................................................... 257

COUNT LIV VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW (73 P.S. § 201-1, *et seq.*) (Alleged by Plaintiff Ohodnicki on behalf of the Pennsylvania Subclass) .................................................. 257

COUNT LV BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER PENNSYLVANIA LAW (13 Pa. Cons. Stat. Ann. § 2314) (Alleged by Plaintiff Ohodnicki on behalf of the Pennsylvania Subclass) .................................................. 260

COUNT LVI BREACH OF EXPRESS WARRANTY  UNDER PENNSYLVANIA LAW (13 Pa. Cons. Stat. Ann. § 2313 and 2A103) (Alleged by Plaintiff Ohodnicki on behalf of the Pennsylvania Express Warranty Subclass) .................................................. 263

22.    Rhode Island..................................................................... 269

011086-11/2143139 V1

COUNT LVII VIOLATION OF THE RHODE ISLAND UNFAIR
    TRADE PRACTICES AND CONSUMER PROTECTION
    ACT RHODE ISLAND LAW (R.I. Gen. Laws § 6-13.1,
    *et seq.*) (Alleged by Plaintiff Bartek on behalf of the Rhode
    Island Subclass) ...................................................................................... 269

COUNT LVIII BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER RHODE ISLAND LAW (R.I.
    Gen Laws § 6A-2-314) (Alleged by Plaintiff Bartek on behalf
    of the Rhode Island Subclass) .................................................................. 273

        23.    South Carolina ................................................................... 275

COUNT LIX VIOLATIONS OF THE SOUTH CAROLINA
    REGULATION OF  MANUFACTURERS, DISTRIBUTORS,
    AND DEALERS ACT (S.C. Code Ann. § 56-15-10, *et seq.*)
    (Alleged by Plaintiff Carbajales-Dale on behalf of the South
    Carolina Subclass) ................................................................................... 275

COUNT LX BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER SOUTH CAROLINA LAW
    (S.C. Code § 36-2-314) (Alleged by Plaintiff Carbajales-Dale
    on behalf of the South Carolina Subclass) ............................................... 280

        24.    Texas ................................................................................. 282

COUNT LXI VIOLATIONS OF THE TEXAS DECEPTIVE TRADE
    PRACTICES CONSUMER PROTECTION ACT ("DTPA")
    (Tex. Bus. & Com. Code §§ 17.41, *et seq.)* (Alleged by Plaintiff
    Sheehan on behalf of the Texas Subclass) ............................................... 282

COUNT LXII BREACH OF THE IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER TEXAS LAW (Tex. Bus. &
    Com. Code § 2.314) (Alleged by Plaintiff Sheehan on behalf of
    the Texas Subclass) .................................................................................. 287

COUNT LXIII BREACH OF EXPRESS WARRANTY UNDER
    TEXAS LAW (Tex. Bus. & Com. Code § 2.313 and 2A.210)
    (Alleged by Plaintiff Sheehan behalf  of the Texas Express
    Warranty Subclass) .................................................................................. 289

        25.    Virginia ............................................................................. 295

COUNT LXIV VIOLATION OF VIRGINIA CONSUMER
    PROTECTION (Va. Code Ann. §§ 59.1-196, *et seq.*) (Alleged
    by Plaintiffs Golland and Ventura on behalf of the Virginia
    Subclass) ................................................................................................ 295

COUNT LXV BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER VIRGINIA LAW (Va. Code
    Ann. § 8.2-314) (Alleged by Plaintiffs Golland and Ventura on
    behalf of the Virginia Subclass) ............................................................ 300

COUNT LXVI BREACH OF EXPRESS WARRANTY UNDER
    VIRGINIA LAW (Va. Code Ann. § 8.2-313 and 8.2A-210)
    (Alleged by Plaintiff Golland on behalf of the  Virginia Express
    Warranty Subclass) ................................................................................ 302

        26.    Washington ........................................................................ 308

COUNT LXVII VIOLATION OF THE WASHINGTON
    CONSUMER PROTECTION ACT (Rev. Code Wash.
    §§ 19.86.010, *et seq.*) (Alleged by Plaintiff Benzur on behalf of
    the Washington Subclass) ...................................................................... 308

COUNT LXVIII BREACH OF IMPLIED WARRANTY OF
    MERCHANTABILITY UNDER WASHINGTON LAW (Rev.
    Code Wash. § 62A.2-314) (Alleged by Plaintiff Benzur on
    behalf of the Washington Subclass) ...................................................... 312

REQUEST FOR RELIEF ............................................................................... 314

DEMAND FOR JURY TRIAL ....................................................................... 314

- xiii -

Plaintiffs file this lawsuit individually and on behalf of proposed Nationwide and statewide classes. Plaintiffs allege the following based on personal knowledge as to their own acts and experiences and, as to all other matters, based on the investigation of counsel:

## I.     INTRODUCTION

1.      The most important duty of a car manufacturer is to provide consumers with a safe car. A second related duty is to promptly warn consumers and fix or replace a car where the manufacturer learns of a defect that implicates serious safety issues.

2.      FCA US LLC ("FCA") breached these fundamental duties by selling Chrysler Pacifica Hybrid plug-in electric minivans that with respect to the gasoline drive system were dangerous and prone to an immediate and complete shutdown while in motion. Then, though FCA knew of the shutdown risk in the gasoline drive system prior to launching the vehicles, it did nothing to warn owners and lessees until very recently.

3.      Model year 2017-2023 Chrysler Pacifica Hybrid minivans (the "Shutdown Risk Vehicles") contain a defect in the propulsion system that can cause the vehicle to experience an immediate shutdown of motive power while the vehicle is being driven (the Spontaneous Shutdown Risk).

- 1 -

4.      All Chrysler Pacifica Hybrid Vehicles produced to date are Shutdown Risk Vehicles. The 2017-18 Chrysler Pacifica Hybrids at issue in this case are already the subject of a nationwide MDL because of a critical defect in their hybrid-drive batteries that can and has caused spontaneous fires. *See In re: Chrysler Pacifica Fire Recall Products Liability Litigation¸* MDL No. 3040 (E.D. Mich.). This case is brought by many of the same plaintiffs who have brought the *Pacifica Fire Recall* case since their Pacifica Hybrids are admitted by FCA to contain both the Spontaneous Shutdown Risk at issue here and the Spontaneous Fire Risk at issue in *Pacifica Fire Recall.* Thus, this case and *Pacifica Fire Recall,* share the same Plaintiffs, same Defendant, and concern the motive power system of the same vehicles, though this case covers all model years of the Pacifica Hybrid, while *Pacifica Fire Recall* concerns only the 2017-18 model year Pacifica Hybrids.[1]

5.      The Spontaneous Shutdown Risk exposes putative class members to an unreasonable risk of accident, injury, death, or property damage if their vehicle spontaneously shuts down while in operation on a public street or highway. The Spontaneous Shutdown Risk also exposes passengers, other drivers on the road,

---

[1] Discovery in *Pacifica Fire Recall* may reveal that additional model years are stricken with the defective hybrid batteries at issue in that case, which may result in even a further overlap of the cars at issue in the two cases.

- 2 -

and bystanders to an unreasonable risk of accident, injury, death, and/or property damage.

6.      The Spontaneous Shutdown Risk is the direct result of a shutdown risk long known to, concealed by, and still unremedied by FCA. Not only did FCA conceal the risk from consumers both before and after their purchases of the Shutdown Risk Vehicles, but it also concealed its consequences, including the serious safety hazards and monetary harm caused by the Spontaneous Shutdown Risk—e.g., accidents and injury or death to persons in and around the Shutdown Risk Vehicle should it lose all motive power while the vehicle is traveling on a public street or highway.

7.      In the Part 573 Safety Recall Report provided to NHTSA, FCA has admitted that it received and was aware of "six customer assistance records, 242 warranty claims, and 59 field reports potentially related to" the Spontaneous Shutdown Risk.[2] Shockingly, FCA admitted that these reports of spontaneous shutdowns occurred at least as early February 17, 2018, long before the vast majority of Shutdown Risk Vehicles were sold to consumers.

8.      Even though reports implicating the Spontaneous Shutdown Risk were coming in from February 17, 2018, FCA admits that it did not trouble to open

---

[2] Part 573 Safety Recall Report No. 23V-010 at 2, attached as Exhibit 1.

an investigation into the issue until August 16, 2022, *four and one-half years after it was put on notice* of this serious defect that it admits "can cause a vehicle crash without prior warning."

9.     Notwithstanding its awareness and investigation of hundreds of warranty claims and complaints relating to the Spontaneous Shutdown Risk, FCA did not determine it should issue a recall until January 9, 2023. However, FCA is not offering owners and lessees of the Shutdown Risk Vehicles any remedy.

10.     Instead, with its recall notification to NHTSA, FCA indicates that it will not even begin notifying its customers of the recall until March 8, 2023.[3] When it does issue the recall, FCA admits that it is not going to repair or replace the transmission wire harnesses that it knows are faulty and prone to causing the dangerous Spontaneous Shutdown Risk. Instead, FCA intends to merely install software updates that it says will "provide[] messaging to the customer and sufficient drive time to exit traffic."[4]

11.     FCA is silent as to what is "sufficient drive time to exit traffic" and it is silent as to how it determined this amount of time, which obviously could vary widely based upon speed, traffic and road conditions at the time the spontaneous shutdown occurs. What FCA should, but is refusing to, do is simply replace the

---

[3] *See id.* at 3.

[4] *Id.*

011086-11/2143139 V1

faulty wiring harness with a non-faulty part so that owners of Shutdown Risk

vehicles do not have to play Russian Roulette with the lives of their vehicle

occupants (and the lives of others on the roadways) every time they enter traffic.

12.     FCA knew or should have known about the Spontaneous Shutdown

Risk before the Shutdown Risk Vehicles went to market, and certainly knew well

before it issued its confounding "recall," as evidenced by: (1) the rigorous pre-

launch testing of the Shutdown Risk Vehicles and their hybrid propulsion that any

responsible manufacturer would have conducted, including testing that would have

revealed the faulty wiring harness; (2) the consumer complaints lodged with the

National Highway Traffic Safety Administration ("NHTSA") and elsewhere

online; (3) the hundreds of warranty claims it received at least as early as February

2018, long before the vast majority of the Shutdown Risk Vehicles were sold; and

(4) its own investigation of spontaneous shutdown events in the Shutdown Risk

Vehicles.

13.     In FCA's instructions to dealers, FCA states that the dealer will

"update the Power Inverter Module (PIM) software and, if necessary, update the

Instrument Panel Cluster (IPC) software." And it notes, "[t]he remedy for this

condition is not currently available."[5] The FCA software update solution is

---

[5] Jan. 24, 2023 FCA Dealer Notification, attached as Exhibit 2.

inadequate because the software remedy (i.e., a software update) only monitors the Power Inverter Module and does not interrupt the failure process that results in the Spontaneous Shutdown Risk. Clearly, this "fix" is not a fix at all, the dangerous wiring harnesses that are prone to short-circuit failure are completely unaffected by this repair. At best, the "repair" may give an owner additional time to execute an emergency stop away from traffic, but it will do absolutely nothing to prevent the spontaneous shutdown from occurring and there is no rational basis for FCA's apparent belief that "sufficient drive time to exit traffic" will actually result.

14.    FCA offers no actual remedy for the faulty wiring harnesses that cause the Spontaneous Shutdown Risk and no reimbursement to Shutdown Risk Vehicle owners and lessees for out-of-pocket expenses, loss of use, and loss of value. Because no *bona fide* repair is available, vehicle owners and lessees are left without a safely operable vehicle for an unknown and potentially lengthy period.

15.    To add further insult to injury, rather than do the right thing and globally offer every consumer a buy back of their Shutdown Risk Vehicle at a fair price (e.g., the Blue Book value on the day before the recall was announced) since FCA apparently cannot remedy the flawed wiring harnesses, or at least offer to provide a comparable loaner or rental minivan while safely storing the dangerous Shutdown Risk Vehicles until such time as it is able to genuinely repair them, FCA has done nothing of the sort.

- 6 -

16.     If FCA had conducted adequate pre-launch testing of the hybrid propulsion system in the Pacifica Hybrids, including stress and durability testing of the sort that is the norm for automobile manufacturers, it would have learned of the unreasonable risks posed by the faulty wiring harnesses and the related components meant to enable the safe operation of the Pacificas. FCA was therefore, at a minimum, reckless (and likely worse) in its rush to release the first-ever plug-in electric hybrid minivan.

17.     Because of FCA's fraudulent concealment of the defect in violation of state consumer protection acts and the common law of fraudulent concealment, its breaches of express warranties and implied warranties of merchantability and its failure to act more quickly in disclosing and providing a remedy for the Spontaneous Shutdown Risk once shutdowns began occurring, owners and lessees of Pacifica Hybrids are injured in fact, incurred damages, and suffered ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Spontaneous Shutdown Risk, then they would either not have purchased or leased those vehicles, or would have paid substantially less for them, or would have purchased non-hybrid versions of the vehicles, which cost at least $6,000 less. Shutdowns in the Shutdown Risk Vehicles also necessitate expensive repairs, car rentals, car payments, towing charges, property damage, time off work, loss of use, and other miscellaneous costs.

- 7 -

18.     Plaintiffs bring this class action to redress FCA's misconduct. Plaintiffs seek damages and a repair under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312, and state consumer protection acts and the common law of fraudulent concealment as well as express and implied warranty and unjust enrichment.

## II.     JURISDICTION

19.     This Court has original jurisdiction over this lawsuit under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because Plaintiffs and Defendant are citizens of different states; there are more than 100 members of the Class and each Subclass (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and class members reside across the United States. The citizenship of each party is described further below in the "Parties" section.

20.     This Court has personal jurisdiction over the Defendant by virtue of its transactions and business conducted in this judicial district, and because Defendant is headquartered in Michigan. Defendant has transacted and done business, and violated statutory and common law, in the State of Michigan and in this judicial district.

## III.   VENUE

21.     Venue is proper in this judicial district under 28 U.S.C. § 1391

because Defendant transacts substantial business and is headquartered in this

district.

## IV.   PARTIES

**A.   Plaintiffs**

**1.     James and Alicia Kappes (Arizona)**

22.     Plaintiffs and proposed class representatives James and Alicia Kappes

("Plaintiffs," for purposes of this paragraph) are residents and citizens of Oro

Valley, Arizona. On or about October 21, 2018, Plaintiffs purchased a new 2018

Chrysler Pacifica Hybrid Electric Minivan from the Airpark Dodge Chrysler Jeep

dealership in Phoenix, Arizona. Plaintiffs' Pacifica Hybrid is a Shutdown Risk

Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and

interaction with Chrysler, Plaintiffs were aware of Chrysler's uniform and

pervasive marketing messages of dependability and safety and the benefits of being

able to drive the vehicle in electric mode; these were primary reasons Plaintiffs

purchased the vehicle. However, despite touting the safety and dependability of the

vehicle and the benefits of using the vehicle in its electric mode and gas mode, at

no point did Chrysler or its agents, dealers, or other representatives disclose to

Plaintiffs the Spontaneous Shutdown Risk. Plaintiffs regularly service the vehicle

but are now concerned about driving it due to the dangers resulting from the

- 9 -

Spontaneous Shutdown Risk. Plaintiffs would not have purchased the vehicle, or would have paid less for it, or Plaintiffs would have purchased a non-hybrid version of the Pacifica, had Plaintiffs known about the Spontaneous Shutdown Risk.

### 2.    Scott Carney (California)

23.    Plaintiff and proposed class representative Scott Carney ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Bakersfield, California. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on Monday, August 6, 2018, from the Rydell dealership in San Fernando, California. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or

- 10 -

would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

24.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

### 3.     Sean Clancy (California)

25.     Plaintiff and proposed class representative Sean Clancy ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Sacramento, California. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on October 28, 2018, from the Elk Grove Dodge Chrysler Jeep Ram dealership in Elk Grove, California. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle as a hybrid; these were among the primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would

- 11 -

not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

### 4.   Alexander Shusta (California)

26.   Plaintiff and proposed class representative Alexander Shusta ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Carlsbad, California. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on March 9, 2018, from Stewart Chrysler Jeep Dodge Ram dealership in Colma, California. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have

purchased a non-hybrid version of the Pacifica, had Plaintiff known about the

Spontaneous Shutdown Risk.

27.     Soon after receiving notification from FCA that a "repair" was

available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff

sought to present the vehicle to the dealership but was told there were no

appointments available until December.

### 5.     Andrew Berzanskis and Margaret Wilensky (Colorado)

28.     Plaintiffs and proposed class representatives Andrew Berzanskis and

Margaret Wilensky ("Plaintiffs," for purposes of this paragraph) are a married

couple and are residents and citizens of Norman, Oklahoma. Plaintiffs purchased a

certified 2018 Chrysler Pacifica Hybrid on January 9, 2021, from AutoNation

Chrysler, Dodge, Jeep Ram Southwest in Littleton, Colorado. Plaintiffs' Pacifica

Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown

Risk. Through exposure and interaction with Chrysler, Plaintiffs were aware of

Chrysler's uniform and pervasive marketing messages of dependability and safety

and the benefits of being able to drive the vehicle in electric mode and in gas

mode; these were primary reasons Plaintiffs purchased the Spontaneous Shutdown

Risk Vehicle. However, despite touting the safety and dependability of the vehicle

and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its

agents, dealers, or other representatives disclose to Plaintiff the Spontaneous

Shutdown Risk. Plaintiffs regularly service the vehicle but are now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiffs would not have purchased the vehicle, or would have paid less for it, or Plaintiffs would have purchased a non-hybrid version of the Pacifica, had Plaintiffs known about the Spontaneous Shutdown Risk.

29.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiffs presented the vehicle to the dealership.

### 6.     Kelsey and Peter Keefe (Connecticut)

30.     Plaintiffs and proposed class representatives Kelsey and Peter Keefe ("Plaintiffs," for purposes of this paragraph) are a married couple and residents and citizens of Mansfield Center, Connecticut. Plaintiffs purchased a 2018 Chrysler Pacifica Hybrid on April 12, 2019, from Valenti Chrysler, Dodge, Jeep Ram in Mystic, Connecticut. Plaintiffs' Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiffs were aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiffs purchased the Spontaneous Shutdown Risk Vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the

- 14 -

vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiffs would not have purchased the vehicle, or would have paid less for it, or Plaintiffs would have purchased a non-hybrid version of the Pacifica, had Plaintiffs known about the Spontaneous Shutdown Risk.

### 7.   John Latacki (Florida)

31.    Plaintiff and proposed class representative John Latacki ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Oakland, Florida. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on August 30, 2018, from the Orlando Dodge Chrysler dealership in Orlando, Florida. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or

- 15 -

would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

32.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership. However, the dealership told him that they did not have the equipment to do the software update needed to resolve the Spontaneous Fire Risk and were not willing to pay $10,000 to Chrysler to get it.

### 8.     John Spruance (Georgia)

33.     Plaintiff and proposed class representative John Spruance ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Boynton Beach, Florida. Plaintiff leased a 2017 Chrysler Pacifica Hybrid on November 18, 2017, from the Troncalli Chrysler Dodge Jeep Ram dealership in Cumming, Georgia. In November 2020, Plaintiff exercised the option in his lease to purchase the Pacifica. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents,

- 16 -

dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown
Risk. Plaintiff regularly services the vehicle but is now concerned about driving it
due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would
not have purchased the vehicle, or would have paid less for it, or Plaintiff would
have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the
Spontaneous Shutdown Risk.

34.     Soon after receiving notification from FCA that a "repair" was
available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff
presented the vehicle to the dealership.

### 9.     Michael Keeth (Idaho)

35.     Plaintiff and proposed class representative Michael Keeth ("Plaintiff,"
for purposes of this paragraph) is a resident and citizen of Meridian, Idaho.
Plaintiff purchased a new 2018 Chrysler Pacifica Hybrid on September 16, 2018,
from Dennis Dillon Dodge Chrysler Jeep in Caldwell, Idaho. Plaintiff's Pacifica
Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown
Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of
Chrysler's uniform and pervasive marketing messages of dependability and safety
and the benefits of being able to drive the vehicle in electric mode and in gas
mode; these were primary reasons Plaintiff purchased the vehicle. However,
despite touting the safety and dependability of the vehicle and the benefits of using

the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

36.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

### 10.     Devlin Su (Illinois)

37.     Plaintiff and proposed class representative Devlin Su ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Naperville, Illinois. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on February 5, 2022, from the Bettenhausen Chrysler Dodge Jeep Ram dealership in Tinley Park, Illinois. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the

vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk, particularly because Plaintiff has two children in car seats (including a newborn) who could be severely injured in the event of an accident due to the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

## 11. Spence Voss (Illinois)

38. Plaintiff and proposed class representative Spence Voss ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Kenosha, Wisconsin. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid from the Liberty Chrysler Dodge Ram dealership in Libertyville, Illinois, on June 28, 2019. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However,

despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

### 12.    Tim Banas (Iowa)

39.    Plaintiff and proposed class representative Tim Banas ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Bolingbrook, Illinois. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on December 3, 2019, from Turpin Chrysler Dodge Jeep in Dubuque, Iowa. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of the benefits of being able to drive the vehicle in electric mode and in gas mode; that was the primary reason Plaintiff purchased the Spontaneous Shutdown Risk Vehicle. Plaintiff also believed the vehicle was safe. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents,

dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

### 13.    Salyi Vu (Kansas)

40.    Plaintiff and proposed class representative Salyi Vu ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Wichita, Kansas. Plaintiff purchased a new 2018 Chrysler Pacifica Hybrid on or about September 9, 2019, from Park Motors in Augusta, Kansas. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk.

- 21 -

Plaintiff would not have purchased the vehicle had Plaintiff known about the Spontaneous Shutdown Risk.

### 14.    Christopher Dorn (Kentucky)

41.    Plaintiff and proposed class representative Christopher Dorn ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Franklin, Tennessee. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on July 15 ,2019, from Shelbyville Chrysler Dodge Jeep Ram in Shelbyville, Kentucky. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

42.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership. However, Plaintiff was told that the dealership would not be able to perform the software update at that time, and it would not provide him with substitute transportation in the interim. The software update was finally performed on January 27, 2023.

### 15.    Ruth Hoffman (Maryland)

43.     Plaintiff and proposed class representative Ruth Hoffman ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Kensington, Maryland. Plaintiff purchased a 2017 Chrysler Pacifica Hybrid on April 27, 2017, from the Criswell Chrysler Jeep Dodge Ram FIAT dealership in Gathersberg, Maryland. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers

- 23 -

resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

44.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership. However, the dealership could not complete the software update until November 21, 2022 and told Plaintiff that she would have to pay $50 per day for alternative transportation while she waited for the update to be performed. The November 21, 2022 appointment was postponed by the dealership and neither Chrysler or Plaintiff have had any success in rescheduling it so the software update has not yet been done.

**16.   Alicia Maltz and David Maltz (Massachusetts)**

45.     Plaintiffs and proposed class representatives Alicia Maltz and David Maltz ("Plaintiffs," for purposes of this paragraph) are a married couple and residents and citizens of Stoughton, Massachusetts. Plaintiffs purchased a 2018 Chrysler Pacifica Hybrid on September 15, 2018, from Quirk Chrysler in Braintree, Massachusetts. Plaintiffs' Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiffs were aware of Chrysler's uniform and pervasive

marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiffs purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiffs the Spontaneous Shutdown Risk. Plaintiffs regularly service the vehicle but are now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiffs would not have purchased the vehicle, or would have paid less for it, or Plaintiffs would have purchased a non-hybrid version of the Pacifica, had Plaintiffs known about the Spontaneous Shutdown Risk.

46.     Soon after receiving notification from FCA that a "repair" was available, Plaintiffs presented the vehicle to the dealership for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*. The dealership originally told Plaintiffs that the update would take 1-2 days. However, the dealership kept Plaintiffs' car for 10 days.

### 17.     Lauren Huntington (Michigan/Ohio)

47.     Plaintiff and proposed class representative Lauren Huntington ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Strongsville, Ohio. Plaintiff purchased a new 2018 Chrysler Pacifica Hybrid on March 30, 2019,

- 25 -

from Cole Chrysler in Marshall, Michigan. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

48. Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall,* Plaintiff presented the vehicle to the dealership.

### 18. Elizabeth Niemioja (Minnesota)

49. Plaintiff and proposed class representative Elizabeth Niemioja ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Inver Grove Heights, Minnesota. Plaintiff purchased a 2017 Chrysler Pacifica Hybrid from the

Bloomington Chrysler-Dodge dealership in Bloomington, Minnesota. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

50.    Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

### 19.    R. Scott Perry (Missouri)

51.    Plaintiff and proposed class representative R. Scott Perry ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Westborough,

Massachusetts. Plaintiff purchased a certified pre-owned 2017 Chrysler Pacifica

Hybrid on February 5, 2019, from Woody's Automotive Group in Chillicothe,

Missouri. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the

Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler,

Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of

dependability and safety and the benefits of being able to drive the vehicle in

electric mode and in gas mode; these were primary reasons Plaintiff purchased the

vehicle. However, despite touting the safety and dependability of the vehicle and

the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents,

dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown

Risk. Plaintiff regularly services the vehicle but is now concerned about driving it

due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would

not have purchased the vehicle, or would have paid less for it, or Plaintiff would

have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the

Spontaneous Shutdown Risk.

52.     Soon after receiving notification from FCA that a "repair" was

available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff

presented the vehicle to the dealership.

### 20. Matthew Bergantino (New Hampshire)

53. Plaintiff and proposed class representative Matthew Bergantino ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Tampa, Florida. Plaintiff purchased a 2017 Chrysler Pacifica Hybrid on May 1, 2017, from the Allen Mello Chrysler Dodge Jeep Ram dealership in Nashua, New Hampshire. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle had Plaintiff known about the Spontaneous Shutdown Risk.

### 21. Nicole and Stephen Costa (New Hampshire)

54. Plaintiffs and proposed class representatives Nicole and Stephen Costa ("Plaintiffs," for purposes of this paragraph) are residents and citizens of Marblehead, Massachusetts. Plaintiffs purchased a 2018 Chrysler Pacifica Hybrid

- 29 -

from the Bonneville Chrysler dealership in Manchester, New Hampshire, in December 2017. Plaintiffs' Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiffs were aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiffs purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiffs the Spontaneous Shutdown Risk. Plaintiffs regularly service the vehicle but are now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiffs would not have purchased the vehicle, or would have paid less for it, or Plaintiffs would have purchased a non-hybrid version of the Pacifica, had Plaintiffs known about the Spontaneous Shutdown Risk.

### 22. Chad Fong (North Carolina)

55.     Plaintiff and proposed class representative Chad Fong ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Carthage, North Carolina. Plaintiff purchased a Certified used 2018 Chrysler Pacifica Hybrid on January 9, 2019, from National Jeep Chrysler Dodge in Jacksonville, North Carolina. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the

- 30 -

Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle, including specifically that he believed the vehicle would offer safe and reliable transportation for his family with three small children. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk and he is very concerned about whether he would be able to safely remove his children from the car in the event of an accident. Plaintiff would not have purchased the vehicle had Plaintiff known about the Spontaneous Shutdown Risk.

### 23. Jared Gadomski Littleton (Ohio)

56.    Plaintiff and proposed class representative Jared Gadomski Littleton ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Cleveland, Ohio. Plaintiff purchased a used 2018 Chrysler Pacifica Hybrid on October 14, 2021, from the Terry Henricks Chrysler Dodge Jeep Ram dealership in Archbold, Ohio. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the

- 31 -

Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of the benefits of being able to drive the vehicle in electric mode and in gas mode; that was the primary reason Plaintiff purchased the vehicle. Because he lives only five miles from his workplace, the allure of the vehicle was that he would only have to use electricity for his daily driving. The hybrid feature would allow him to take the vehicle on occasional longer trips. The lessened environmental impact of the vehicle was also a strong reason for his purchase of the expensive vehicle. Plaintiff also relied on the safety of his vehicle when he purchased it; after all he trusted the vehicle to safely transport his family. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about the safety of his vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased his vehicle, and instead would have purchased a much less expensive vehicle, had Plaintiff known about the Spontaneous Shutdown Risk.

**24.    Michael Christie (Oregon)**

57.     Plaintiff and proposed class representative Michael Christie ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Sherwood,

- 32 -

Oregon. Plaintiff purchased a new 2018 Chrysler Pacifica Hybrid on June 17, 2019, from Dick's Auto Group in Beaverton, Oregon. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff regularly services the vehicle but is now concerned about driving it due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

58.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

**25.   Joseph Ohodnicki (Pennsylvania)**

59.     Plaintiff and proposed class representative Joseph Ohodnicki ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Pittsburgh,

- 33 -

Pennsylvania. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on May 15, 2019, from CarRight Chrysler Jeep Dodge Ram in Moon Township, Pennsylvania. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle had Plaintiff known about the Spontaneous Shutdown Risk.

60.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

**26.    Helen Bartek (Rhode Island)**

61.     Plaintiff and proposed class representative Helen Bartek ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Guilford, Connecticut. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on January 12, 2019, from

- 34 -

Paul Baileys Chrysler Dodge Jeep Ram dealership in North Kingstown, Rhode Island. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. This is especially concerning for Plaintiff, who has young children who are still strapped into car seats. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

### 27.    Michael Carbajales-Dale (South Carolina)

62.    Plaintiff and proposed class representative Michael "Mik" Carbajales-Dale ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Seneca, South Carolina. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on June 20, 2018, from Lake Keowee Chrysler Dodge in Seneca, South Carolina.

Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff has four children and is particularly concerned about being able to safely evacuate the kids from the car quickly in the event of an accident. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

### 28. Shawn Sheehan (Texas)

63.    Plaintiff and proposed class representative Shawn Sheehan ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Little Elm, Texas. Plaintiff purchased a used 2017 Chrysler Pacifica Hybrid on September 18, 2020, from the Dodge City CDJR City of McKinney dealership in McKinney, Texas. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the

Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

64.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

**29.    Richard Golland (Virginia)**

65.     Plaintiff and proposed class representative Richard Golland ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Potomac, Maryland. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on July 21, 2019, from the Safford Chrysler Jeep Dodge Ram & FIAT of Springfield dealership in

Springfield, Virginia. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle, or would have paid less for it, or Plaintiff would have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the Spontaneous Shutdown Risk.

66.     Soon after receiving notification from FCA that a "repair" was available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff presented the vehicle to the dealership.

### 30.   Andrew Ventura (Virginia)

67.     Plaintiff and proposed class representative Andrew Ventura ("Plaintiff," for purposes of this paragraph) is a resident and citizen of Waynseboro, Virginia. Plaintiff purchased a 2018 Chrysler Pacifica Hybrid from

- 38 -

the CMA Valley Chrysler Dodge Jeep Ram dealership in Staunton, Virginia.

Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the

Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler,

Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of

dependability and safety and the benefits of being able to drive the vehicle in

electric mode and in gas mode; these were primary reasons Plaintiff purchased the

vehicle. However, despite touting the safety and dependability of the vehicle and

the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents,

dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown

Risk. Plaintiff regularly services the vehicle but is now concerned about driving it

due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would

not have purchased the vehicle, or would have paid less for it, or Plaintiff would

have purchased a non-hybrid version of the Pacifica, had Plaintiff known about the

Spontaneous Shutdown Risk.

68.    Soon after receiving notification from FCA that a "repair" was

available for the Spontaneous Fire Risk at issue in *Pacifica Fire Recall*, Plaintiff

presented the vehicle to the dealership.

**31.    Ami Benzur (Washington)**

69.    Plaintiff and proposed class representative Ami Benzur ("Plaintiff,"

for purposes of this paragraph) is a resident and citizen of Bellevue, Washington.

- 39 -

Plaintiff purchased a 2018 Chrysler Pacifica Hybrid on September 1, 2018, from the AutoNation Chrysler Jeep Dodge Ram dealership in Bellevue, Washington. Plaintiff's Pacifica Hybrid is a Shutdown Risk Vehicle equipped with the Spontaneous Shutdown Risk. Through exposure and interaction with Chrysler, Plaintiff was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode; these were primary reasons Plaintiff purchased the vehicle. However, despite touting the safety and dependability of the vehicle and the benefits of using the vehicle as a hybrid, at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk. Plaintiff is now concerned about driving the vehicle due to the dangers resulting from the Spontaneous Shutdown Risk. Plaintiff would not have purchased the vehicle had Plaintiff known about the Spontaneous Shutdown Risk.

**B.     Defendant**

70.     Defendant FCA US LLC ("FCA"), formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. FCA's principal place of business and headquarters is at 1000 Chrysler Dr., Auburn Hills, MI 48326.

- 40 -

71.     FCA is a motor vehicle manufacturer and a licensed distributor of new, previously untitled Chrysler, Dodge, Jeep, and Ram brand motor vehicles. FCA's Chrysler brand is one of the "Big Three" American automobile brands. FCA engages in commerce by distributing and selling new and used passenger cars and motor vehicles under its Chrysler, Dodge, Jeep, and Ram brands.

72.     FCA, through its various entities, designs, manufactures, markets, distributes, and sells automobiles throughout the U.S. and worldwide. FCA and/or its agents designed and manufactured the Pacifica Hybrids. FCA also developed and disseminated the owner's manuals and warranty booklets, advertisements, brochures, and other promotional materials relating to the Pacifica Hybrids, with the intent that such documents be purposely distributed throughout all fifty states. FCA is engaged in interstate commerce, selling vehicles through its network in every state of the United States.

73.     As further detailed below, FCA-authorized automobile dealerships act as FCA's agents in selling automobiles under the FCA name and disseminating vehicle information provided by FCA to customers. At all relevant times, FCA's dealerships served as its agents for motor vehicle repairs and warranty issues because they performed repairs, replacements, and adjustments covered by FCA's manufacturer warranty pursuant to the contracts between FCA and its more than 2,000 authorized dealerships nationwide.

## V.   FACTUAL ALLEGATIONS

**A.   FCA marketed the Pacifica Hybrid as an extremely safe plug-in electric hybrid that can run in electric and gas modes and knew that these attributes were material to consumers.**

74.   Plug-in hybrid-electric vehicles like the Pacifica Hybrids have significant environmental advantages over conventional vehicles with internal combustion engines. While operating in electric mode, the Pacifica Hybrids do not produce any of the noxious tailpipe emissions—such as nitrogen oxides and other smog-forming pollutants, other pollutants harmful to human health, and greenhouse gases such as carbon dioxide and methane—that vehicles with internal combustion engines produce.[6] When functioning properly, then, the Pacifica Hybrids can be beneficial for air quality and public health, and can help to reduce the overall ecological damage caused by using personal vehicles for transportation.[7] This benefit is especially significant in states where most electricity is generated from sources other than coal-fired plants.[8]

75.   In addition to the environmental benefits of electric propulsion, the cost of the electricity necessary to enable the operation of the Pacifica Hybrids in

---

[6] Exhibit 3, *Emissions from Hybrid and Plug-In Electric Vehicles*, U.S. DEP'T OF ENERGY, https://afdc.energy.gov/vehicles/electric_emissions.html (last visited March 24, 2022).

[7] *Id.*

[8] *Id.* (state-by-state calculator showing that charging an all-electric vehicle in Oregon produces less than 17% of the carbon dioxide equivalent of that produced by gasoline-powered vehicles).

- 42 -

electric mode vehicle is generally considerably less than the cost of fueling with gasoline or diesel.[9]

76.     Consumers paid a substantial premium for the plug-in hybrid propulsion system in the Pacifica Hybrids. In 2018, for example, the base sticker price for the Pacifica Hybrid was $6,000 more than the price for a standard Pacifica.[10]

77.     The only reason to pay the premium price commanded by the Pacifica Hybrid was because of the perceived environmental and financial benefits they offered as a result of their status as plug-in hybrid electric vehicles.

78.     Not surprisingly, then, in marketing the Pacifica Hybrid, FCA stressed that it was "America's first-ever Hybrid minivan" and that it averaged 84 miles per gallon.

79.     Indeed, a major selling point of the Pacifica Hybrid is its ability to run on either electric or gasoline power.

------

[9] Exhibit 4, Brooke Crothers, *Rising Gas Prices Driving You To An Electric Car? Cost To Charge A Tesla Model 3 Vs Gas*, FORBES (May 22, 2021) https://www.forbes.com/sites/brookecrothers/2021/05/22/rising-gas-prices-driving-you-to-an-electric-car-cost-to-charge-a-tesla-model-3-vs-gas/; Exhibit 5, Roberto Baldwin, *EV vs. Gas: Which Cars Are Cheaper to Own?*, CAR AND DRIVER (May 22, 2020), https://www.caranddriver.com/shopping-advice/a32494027/ev-vs-gas-cheaper-to-own/.

[10] *See* Exhibit 6, Eric Bangeman, *Higher sticker price, lower fuel costs: The Chrysler Pacifica Hybrid, reviewed*, ARS TECHNICA (Apr. 2, 2018), https://arstechnica.com/cars/2018/04/review-go-greener-with-chryslers-plug-in-pacifica-hybrid-minivan/.

- 43 -

80.     According to a sales brochure for the 2018 Pacifica Hybrid, the vehicle reflected "A mission for reducing emissions":



81.     Elsewhere in the same brochure, FCA continues to tout the electric driving ability of the Pacifica Hybrids:



82.     Another 2018 brochure for the gas-powered and hybrid Pacifica stated that:



83.     In addition to the alleged environmentally-friendly nature of the Pacifica Hybrid, FCA also stressed the alleged extreme safety of the vehicles as FCA knew this was a material attribute for consumers. In a 2018 brochure for the Pacifica Hybrid, FCA stated, "Your family's safety and security are what matter most":



- 45 -

84.    Indeed, that same brochure is replete with pictures of children in the Pacifica Hybrid and describes an extensive set of safety features.

85.    Another brochure for the 2018 Pacifica states that "[y]our travels will inspire while ensuring the well-being of all your beings with over 100 standard and available safety and security features":



Long and winding roads reveal panoramic views within the purposefully planned, kid-friendly road-trip vehicle. Your travels will inspire while ensuring the well-being of all your beings with over 100 standard and available safety and security features. The available seating for eight offers plenty of elbow room, as well as your turn to relax, needing only to focus on the road ahead. The ergonomic advantages of Pacifica make it easy to count on a peaceful trip.



## B.    The Spontaneous Shutdown Risk.

86.    As FCA now admits in a January 17, 2023 Safety Recall Report to the National Highway Traffic Safety Administration ("NHTSA"), a defect in the internal transmission wiring "could result in an unexpected engine shutdown under certain conditions."[11]

87.    FCA further admits that "[a]n unexpected engine shutdown resulting in a loss of motive power can cause a vehicle to crash without prior warning."[12]

---

[11] *See* Exhibit 1 (Part 573 Safety Recall Report).

[12] *Id.*

88.     FCA accomplishes the dual-mode driving of its hybrid Pacifica by having the power for both the gasoline and electric run through a "transmission." But this is not a transmission with a clutch and gears as one might find in a traditional gasoline-only powered car. Rather, it consists of two electric motors which provide both the motive electric power when running on batteries as well as control the drive ratio when power is coming from the internal combustion gasoline engine. The Spontaneous Shutdown Risk caused by the faulty wiring harness in the "transmission" causes the entire "transmission" to fail, which with this design causes the loss of both gasoline and battery motive power.

89.     FCA failed to adequately research, design, test, and manufacture the Shutdown Risk Vehicles before warranting, advertising, promoting, marketing, and selling the Shutdown Risk Vehicles as suitable and safe for use in an intended and reasonably foreseeable manner.

90.     The following complaints sent to NHTSA by terrified owners of Shutdown Risk Vehicles make clear that the Spontaneous Shutdown Risk was present immediately after FCA placed these vehicles for sale and FCA knew or should have immediately known of the Spontaneous Shutdown Risk:

**NHTSA ID Number:** 11092778

**Incident Date** April 17, 2018

**Consumer Location** MANHATTAN BEACH, CA

- 47 -

**Vehicle Identification Number** 2C4RC1N74JR****

**Summary of Complaint**

TL* THE CONTACT OWNS A 2018 (NA) CHRYSLER PACIFICA HYBRID. WHILE DRIVING 60 MPH, THE VEHICLE STALLED. ONCE IT WAS RESTARTED, THE TEMPERATURE AND TRACTION CONTROL INDICATORS ILLUMINATED. THE VEHICLE WAS TAKEN TO A DEALER (RY DELL CHRYSLER DODGE JEEP RAM, 700 SAN FERNANDO ROAD, SAN FERNANDO, CA 91340) WHERE IT WAS DIAGNOSED THAT THERE WAS A SHORT IN THE TEMPERATURE SENSOR AND A NEW TRANSMISSION WAS NEEDED. THE MANUFACTURER WAS NOTIFIED AND INFORMED THE CONTACT THAT THEY WOULD NOT HONOR THE WARRANTY ON THE VEHICLE. THE FAILURE MILEAGE WAS 278.

**NHTSA ID Number:** 11114441

**Incident Date** April 27, 2018

**Consumer Location** BLOOMINGTON, MN

**Vehicle Identification Number** 2C4RC1N73JR****

**Summary of Complaint**

WITH JUST 200 MILES AND HAVING OWNED THE VEHICLE 3 WEEKS, VEHICLE LOST POWER ON FREEWAY AND MY WIFE COASTED OFF TO THE SIDE WITH CAR FULLY STALLING AND IGNITION LOCKING UP WITHIN 1/4 MILE. VEHICLE WAS TOWED TO DEALERSHIP BUT WORKED FINE NEXT DAY. 100 MILES LATER AND ABOUT 3 WEEKS ON DIFFERENT FREEWAY THE SAME THING HAPPENED AGAIN AND VEHICLE WAS TOWED BACK TO DEALERSHIP. THE CAR SEEMS TO STALL IN HYBRID OR GAS MODE. SERVICE STAFF CHANGED BATTERY AND TRIED VARIOUS THINGS BUT SERVICE DEPARTMENT HAD THE CAR STALL OUT AGAIN ON TEST DRIVE ON FREEWAY AND VAN WAS TOWED BACK. CHRYSLER SENT THEIR OWN SERVICE SPECIALIST AND AFTER MAIN COMPUTER WAS CHANGED AND CONTROLS SET, CAR WAS DRIVEN A COUPLE OF MILES ON CITY STREETS BY THE EXPERT BEFORE STALLING OUT. AFTER THREE MONTHS, AND LESS THAN 500 MILES, WE ARE ASKING FOR A REFUND AND THE CAR HAS YET TO BE FIXED. *TT

**NHTSA ID Number:** 11104053

**Incident Date** June 17, 2018

**Consumer Location** OCEANSIDE, CA

**Vehicle Identification Number** 2C4RC1N70HR****

- 48 -

**Summary of Complaint**

WHILE DRIVING 45 MPH ON 4-LANE DIVIDED SURFACE STREET, A WARNING
CHIME SOUNDED, ALL THE DASH LIGHTS ILLUMINATED, AND THE ENGINE DIED.
ONCE STOPPED, WAS UNABLE TO RESTART THE ENGINE. ALL THE LIGHTS
REMAINED ON, AS DID THE RADIO, ETC. WAS ABLE TO 'START' THE SYSTEM IN
ORDER TO PUT IT IN NEUTRAL AND GET PUSHED TO SIDE OF ROAD. ENGINE
WOULD STILL NOT TURN OVER. ELECTRONICS REMAINED ON - WOULD NOT
TURN OFF EVEN WHEN DOOR WAS OPENED. TOW TRUCK DRIVER PULLED A
SWITCH TO ENABLE HIM TO PUT IT IN NEUTRAL AND THE ENGINE STARTED.
APPARENTLY WHEN THAT HAPPENED, IT CLEARED THE CODES AND THE
CHRYSLER GARAGE WAS UNABLE TO IDENTIFY THE PROBLEM. AFTER FOUR
DAYS OF TRYING TO RECREATE THE PROBLEM, THEY GAVE UP AND GAVE ME
THE CAR BACK. I AM EXTREMELY UNCOMFORTABLE DRIVING IT NOW. HAD ONE
PREVIOUS INCIDENT WHERE THE CHIME SOUNDED AND ALL THE DASH LIGHTS
CAME ON, BUT DID NOT LOSE POWER, OR STEERING. ENGINE LIGHT CAME ON,
BUT ONCE CAR WAS STOPPED AND THEN RESTARTED, LIGHT DID NOT COME
BACK ON. BOTH TIMES THAT HAPPENED, THE ELECTRIC BATTERY WAS
DEPLETED AND CAR WAS IN HYBRID MODE, USING THE GAS ENGINE.

**NHTSA ID Number:** 11121694

**Incident Date** August 3, 2018

**Consumer Location** SAN YSIDRO, CA

**Vehicle Identification Number** 2C4RC1N79JR****

**Summary of Complaint**

I WAS DRIVING THE CHRYSLER PACIFICA HYBRID 2018 COMPLETELY SHUT OFF.
NO POWER STEERING, NO ELECTRONICS NO NOTHING. I THOUGHT IT WAS A
FLUKE UNTIL I TALKED TO SOMEONE ELSE WITH THE SAME CAR AND IT
HAPPENED TO THEM 3 TIMES. MY WIFE IS SCARED TO DRIVE THE CAR NOW AND
WE HAVE 3 SMALL CHILDREN AND DON'T KNOW WHAT TO DO. [XXX]
INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT
(FOIA), 5 U.S.C. 552(B)(6).' *PM

**NHTSA ID Number:** 11121677

**Incident Date** August 20, 2018

**Consumer Location** ALAMEDA, CA

**Vehicle Identification Number** 2C4RC1N74JR****

- 49 -

**Summary of Complaint**

INCIDENT #1 (7/17/2018) - WHILE BREAKING TOWARDS A TRAFFIC LIGHT THAT TURNED FROM RED TO GREEN, I ATTEMPTED TO ACCELERATE BUT HEARD A LOUD POPPING NOISE, FELT THE VAN LURCH, AND IMMEDIATELY LOST ALL POWER TO THE VEHICLE. NUMEROUS WARNING LIGHTS APPEARED ON THE DASHBOARD INCLUDING ENGINE LIGHT & POWER/HYBRID PLUG-IN FAILURE. I WAS ABLE TO STEER TO THE SIDE OF THE ROAD AND BREAK TO A STOP, AND RESTART 1-2 MINUTES LATER. BROUGHT TO CHRYSLER DEALER ON 7/20 AND WAS TOLD ON 7/21 UPON PICKUP THAT THE ISSUE HAD BEEN RECTIFIED VIA SOFTWARE UPDATE. INCIDENT #2 (7/23/2018) - WHILE MOVING SLOWLY IN TRAFFIC, I ATTEMPTED TO ACCELERATE AS THE VEHICLES AHEAD OF ME MOVED AND AGAIN LOST ALL POWER WITH THE SAME SET OF ERRORS/WARNINGS MENTIONED IN INCIDENT #1. ONCE AGAIN, AFTER 1-2 MINUTES I WAS ABLE TO RESTART THE VEHICLE. I BROUGHT TO A DIFFERENT LOCAL CHRYSLER DEALER THAT SAME DAY. PICKED UP THE VEHICLE ON 7/24 AND WAS TOLD THAT AFTER THOROUGH MULTI-POINT MECHANICAL INSPECTION WITH THE FCA ENGINEERS, THE COMPANY BELIEVED THE PREVIOUS DEALER HAD INCORRECTLY APPLIED THE SOFTWARE UPDATE. DEALER TEST DROVE THE VEHICLE FOR 20 MILES AND COULD NOT RECREATE THE ISSUE. INCIDENT #3 (8/21/2018) - WHILE AGAIN MOVING IN TRAFFIC, MY WIFE (WITH OUR 1 YEAR OLD IN THE BACK) AGAIN SUDDENLY LOST ALL POWER AS MENTIONED IN INCIDENT #1 AND #2 ABOVE, EXCEPT SHE ALSO HAD THE STEERING COMPLETELY LOCK UP ON HER. SHE WAS ABLE TO BREAK TO A STOP MID-TRAFFIC AND RESTARTED THE VEHICLE 1-2 MINUTES LATER. SOON THEREAFTER I CALLED FCA CORPORATE DIRECTLY AND HAVE REQUESTED A FULL REPURCHASE OF THE VEHICLE AND PLAN TO PURSUE LEMON LAW REMEDIATION IF THAT DOESN'T LEAD TO RESOLUTION. ALL THREE INCIDENTS ARE LIFE THREATENING IN NATURE AND HAVE NOT BEEN DIAGNOSABLE BY MULTIPLE CHRYSLER DEALERSHIPS WORKING IN CONJUNCTION WITH FCA ENGINEERS. (IMAGE PROVIDED FROM INCIDENT #2) *TT

**NHTSA ID Number:** 11132868

**Incident Date** September 28, 2018

**Consumer Location** EL CAJON, CA

**Vehicle Identification Number** 2C4RC1N74JR****

**Summary of Complaint**

BRAND NEW, 5 DAY OLD HYBRID PACIFICA WITH 250 MILES STALLED OUT WHILE SLOWING DOWN TO COMPLETE A 3 POINT TURN ON A TWO LANE ROAD. PRIOR TO STALL BRAKES WERE 'MUSHY' AND NOT AS REAPONSIVE, HOWEVER DURING THE TURN BREAKS FAILED COMPLETELY, AND POWER STEERING WENT OUT.

- 50 -

FORCED TO SLAM ON BREAKS WHILE FORCING STEERING WHEEL TO COMPLETE TURN. INITIALLY THOUGHT EMERGENCY BREAKING ENGAGED TO STOP CAR THAT WAS NOW HEADED TOWARDS A CURB AND PEDESTRIANS BUT MORE LIKELY HIT THE CURB CAUSING THE CAR TO STOP HARD. CAR REMAINED PURPENDICULAR TO ONCOMING TRAFFIC FOR APPROXIMATELY 2-4 MINUTES WHILE I TRIED TO RESTART ENGINE. 7-8 CARS BEGAN TO BACK UP ON EACH SIDE OF CAR CONTINUING TO CAUSE A INCREASINGLY DANGEROUS SITUATION. HAD NOT EXPERIENCED ANY ISSUE UNTIL 'MUSHY BREAKS' ABOUT 1 BLOCK PRIOR TO 3 POINT TURN AND STALLING. INCREDIBLY DANGEROUS! PURCHASED THIS CAR BASED ON SAFETY RATINGS AND HYBRID FEATURE WITH HOPES OF DRIVING IT FOR A MINIMUM OF 5 YEARS. COMPLETELY TERRIFIED TO PUT MY FAMILY BACK IN THE CAR AS THEY COULD HAVE BEEN SERIOUSLY INJURED OR KILLED DUE ONLY TO CAR MALFUNCTION, AS COULD HAVE THOSE THAT WERE IN THE PATH OF UNRESPONSIVE CAR. UNDER THE CALIFORNIA LEMON LAW I AM EXPECTED TO PUT MY FAMILY BACK INTO A CAR THAT IS DANGEROUS ONLY TO PROVE THAT IT ONCE AGAIN PUT MY FAMILY IN A LIFE THREATENING SITUATION. THIS IS WHY PEOPLE TAKE THESE DANGEROUS CARS TO CAR MAX OR SELL THEM PRIVATELY, WITHOUT FULL DISCLOSURE, SO THEY DON'T HAVE TO PUT THEIR LOVED ONES AT RISK WITHOUT COMPLETELY LOSING $50,000. DANGEROUS CAR! DANGEROUS LAW!

**NHTSA ID Number:** 11171161

**Incident Date** January 3, 2019

**Consumer Location** VAN NUYS, CA

**Vehicle Identification Number** 2C4RC1L74JR****

**Summary of Complaint**

WHILE DRIVING AT 60MPH ON FREEWAY, VEHICLE LOST ENGINE POWER WITHOUT WARNING AND WAS NO LONGER RESPONSIVE TO GAS PEDAL. NOT ENOUGH TIME TO MANEUVER OUT OF TRAFFIC. FIRST OCCURRED 2 WEEKS AFTER NEW VEHICLE PURCHASE. OUT OF SERVICE FOR 15 DAYS THEN RETURNED TO OWNER AFTER SOFTWARE UPDATE. SAME PROBLEM OCCURRED AGAIN 3 MONTHS LATER, DRIVING ON FREEWAY AT 60MPH. HAS CURRENTLY BEEN OUT OF SERVICE FOR 19 DAYS. DEALERSHIP SERVICE DEPARTMENT HAS ORDERED NEW POWER INVERTER MODULE (HYBRID MOTOR). *BF.. *TR

**NHTSA ID Number:** 11180389

**Incident Date** February 15, 2019

**Consumer Location** ESCONDIDO, CA

**Vehicle Identification Number** 2C4RC1L79JR****

**Summary of Complaint**

ENTERING ON-RAMP TO FREEWAY IN SAN DIEGO, CA AT APPROXIMATELY
BETWEEN 25 TO 45-MPH. CAR STALLED AND ROLLED TO STOP AND WAS UNABLE
TO RECOVER. STALL CREATED SITUATION WHICH COULD HAVE CAUSED
COLLISION.

**NHTSA ID Number:** 11180614

**Incident Date** January 27, 2019

**Consumer Location** SYCAMORE, IL

**Vehicle Identification Number** 2C4RC1N76JR****

**Summary of Complaint**

NOV 19, 2018.WAS DRIVING IN TOWN AND VEHICLE DIED WHILE MOVING. TOWED
TO DEALERSHIP. REPLACED PIM, OUT OF SERVICE 17 DAYS. JAN 10, 2019. VEHICLE
DIED IN TOWN. WAS EVENTUALLY ABLE TO RESTART AND DROVE IT TO
DEALERSHIP. CLEARED CODES AND CLEANED TERMINALS. VEHICLE OOS ONE
DAY. JANUARY 27, 2019. VEHICLE DIED WHILE DRIVING IN TOWN. RESTARTED
WITH DIFFICULTY, THEN DIED AGAIN. VEHICLE TOWED TO DEALERSHIP. STILL
THERE AS OF FEB 17, REPLACING TRANSMISSION.YOUR PROGRAM WON'T LET ME
DOWNLOAD ALL FILES. HAD U73 DONE ON 6JUL18, U94 ON 8NOV18. NO CRASH,
NO FIRE, NO INJUTIES OR FATALITIES.

**NHTSA ID Number:** 11195021

**Incident Date** February 19, 2019

**Consumer Location** ELGIN, IL

**Vehicle Identification Number** 2C4RC1N74HR****

**Summary of Complaint**

WHILE DRIVING TO WORK IN THE MORNING ON 19-FEB-2019, THE MIL CHECK
ENGINE LAMP ILLUMINATED AS WELL AS THE "RED TURTLE" LIMP MODE
INDICATOR AND A DASHBOARD MESSAGE STATING "VEHICLE SPEED MAY BE
LIMITED." THIS HAPPENED WHILE DRIVING ON LOCAL SURFACE STREETS ABOUT
ONE MILE FROM MY PLACE OF WORK. I HAD JUST TURNED OFF A 45 MPH MAIN
STREET ONTO A 35 MPH SIDE STREET. THE GAS ENGINE IN MY PHEV HYBRID
VEHICLE STOPPED WORKING BUT COULD STILL OPERATE AT NORMAL SPEED IN

- 52 -

ALL-ELECTRIC MODE. I GOT TO WORK AND PLUGGED MY PHEV VAN INTO A CHARGEPOINT EVSE TO RECHARGE. AT LUNCH, I RAN SOME ERRANDS AND NOTICED THAT THE GAS ENGINE STILL WOULD NOT OPERATE UNDER ANY CONDITIONS, WHICH IS VERY RARE DURING THE HARSH, COLD WEATHER WE WERE HAVING AT THE TIME IN THE CHICAGO AREA. AFTER RETURNING TO WORK, I MADE A SERVICE APPOINTMENT AT MY LOCAL DEALERSHIP FOR THAT EVENING. ON MY DRIVE TO THE DEALERSHIP AFTER WORK, THE ALL-ELECTRIC MOTOR ALSO FAILED AND STOPPED WORKING ABOUT TWO MILES FROM THE DEALERSHIP. THIS HAPPENED ON A 35 MPH MAIN STREET, AND I WAS DRIVING STRAIGHT DOWN THE ROAD AT THE TIME. I SHUT THE VEHICLE OFF AND RESTARTED IT AND WAS ABLE TO MOVE ABOUT 100 FEET BEFORE IT SHUT DOWN AGAIN. I WAS ABLE TO REPEAT THIS PROCESS 2-3 TIMES IN ORDER TO TURN MY VEHICLE OFF ONTO A SIDE STREET SO THAT I WAS NOT IMPEDING TRAFFIC ON THE MAIN THOROUGHFARE. I HAD MY PHEV VAN TOWED TO THE DEALERSHIP THAT EVENING. IT HAS NOW BEEN AT THE DEALERSHIP FOR REPAIR FOR 49 DAYS, AND THEY STILL CANNOT DETERMINE WHAT CAUSED THE LOSS OF POWER AND FORWARD MOTION.

**NHTSA ID Number:** 11183057

**Incident Date** February 27, 2019

**Consumer Location** SAN DIEGO, CA

**Vehicle Identification Number** 2C4RC1N71JR****

**Summary of Complaint**

2018 CHRYSLER PACIFICA HYBRID 2ND DAY AFTER PURCHASE WITH LESS THAN 300 MILES ON THE ODOMETER. VEHICLE STALLED LESS THAN 100 YARDS AFTER ACCELERATING AFTER STOPPING AT A TRAFFIC SIGNAL. LOST ALL ACCELERATION CAPABILITY, ETC WARNING ILLUMINATED, ESC WARNING ILLUMINATED. INSTRUCTED TO SHIFT TO 'P' TO START. LUCKILY THIS OCCURRED AT 11 PM WITH MINIMAL TRAFFIC AND I WAS FORTUNATE THAT MY WIFE AND KIDS WERE NOT WITH ME. I WAS ABLE TO PULL OVER TO THE SHOULDER AND SHIFT TO PARK. THE VEHICLE WAS ABLE TO RESTART BUT I WAS NOT ABLE TO ACCELERATE PAST 45 MPH. I WAS ABLE TO PULL INTO A PARKING LOT A MILE DOWN THE ROAD WHERE I LET THE VEHICLE REMAIN POWERED OFF. AFTER 20 MINUTES, THE VAN STARTED UP NORMALLY. THIS IS EXTREMELY AN EXTREMELY DISTURBING INCIDENT TO HAPPEN ON SUCH A NEW VEHICLE AND NOTHING LIKE THIS HAS HAPPENED WITH ANY OF THE PREVIOUS VEHICLES I'VE OWNED OVER THE YEARS TO INCLUDE HYUNDAI, HONDA, SUZUKI, TOYOTA, AND DODGE. THERE ARE NUMEROUS COMPLAINTS WITH THE 2017 MODEL YEAR AND FCA STILL HAS NOT RESOLVED THE ISSUE!

**NHTSA ID Number:** 11228486

**Incident Date** April 21, 2019

**Consumer Location** LA CANADA, CA

**Vehicle Identification Number** 2C4RC1N74JR****

**Summary of Complaint**

THE MINIVAN BEGAN TO HAVE A MESSAGE ON THE DASH BOARD INDICATING
THE DRIVER TO SHIFT TO P AND RESTART THE CAR WHILE THE CAR WAS IN
MOTION. THE CAR PROCEEDED TO DECELERATE WITHOUT THE DRIVER
PRESSING ON THE BRAKES. THIS HAS HAPPENED THREE TIMES. ONCE, IT WAS
WHILE THE CAR WAS DRIVING ON THE HIGHWAY AND THE DECELERATION
BEGAN. THE DRIVER HAD TO PULL OFF TO THE OFF RAMP TO EXIT AND THE CAR
STALLED. THE SECOND TIME THE CAR WAS STOPPED WHILE WAITING FOR A
STOP LIGHT TO TURN GREEN AND IT WON'T RESTART. THE THIRD TIME
HAPPENED WHEN THE CAR WAS ON THE HIGHWAY ABOUT TO GET OFF TO THE
OFF RAMP AND THE STALLING BEGAN. CHRYSLER KEPT SAYING THAT THE
PROBLEM WAS RESOLVED WHEN WE BROUGHT THE CAR TO THE DEALER BUT IT
KEPT HAPPENING. ALSO, THE MAIN SCREEN KEEPS GOING BLANK FOR THE DVD
PLAYER AND YOU ARE NOT ABLE TO UTILIZE THAT FUNCTION. WE WERE TOLD
THE PROBLEM WAS RESOLVED WHEN WE TOOK THE CAR TO THE DEALER BUT IT
CONTINUED AFTER EACH FIX. ALL OF THESE REPAIRS ARE ON CHRYSLER
DATABASE.

**NHTSA ID Number:** 11209982

**Incident Date** May 25, 2019

**Consumer Location** PALATINE, IL

**Vehicle Identification Number** 2C4RC1N7XJR****

**Summary of Complaint**

I WAS DRIVING THE VEHICLE WITH MY FAMILY. WE HAD ALREADY USED UP THE
CHARGE FOR THE ELECTRIC ENGINE AND THE VEHICLE WAS OPERATING IN THE
HYBRID ENGINE. I HAD THE ADAPTIVE CRUISE CONTROL SET AT 72 MPH AND I
ACCELERATED TO 75 MPH TO CHANGE LANES TO THE RIGHT. AS I
ACCELERATED, SEVERAL ALARMS AND WARNINGS APPEARED ON THE DRIVER'S
DASHBOARD. THEY INCLUDED 'SERVICE HYBRID SYSTEM', A RED WRENCH WITH
A RED LIGHTING BOLT THROUGH IT AND THE ORANGE ENGINE AND BATTERY
ICONS. AFTER THE ALARMS SOUNDED, A MESSAGE APPEARED SAYING 'SHIFT
VEHICLE TO PARK'. WHEN I TRIED TO PRESS THE ACCELERATOR, NOTHING
HAPPENED AND IT SEEMED THAT THE ENGINE HAD STALLED. I WAS ABLE TO
COAST TO THE SHOULDER OF THE HIGHWAY, BREAK THE VEHICLE AND TURN

- 54 -

ON MY FLASHERS. AFTER WE STOPPED, I PUT THE VEHICLE IN PARK, SHUT THE
VEHICLE OFF, AND RESTARTED IT. AFTER RESTARTING THE VEHICLE, THE
ORANGE ENGINE WARNING LIGHT REMAINED ON. MY FAMILY AND I WERE ABLE
TO TRAVEL BACK HOME BUT TOOK BACK ROADS RATHER THAN THE HIGHWAY.

**NHTSA ID Number:** 11228471

**Incident Date** June 26, 2019

**Consumer Location** CLERMONT, FL

**Vehicle Identification Number** 2C4RC1N7XJR****

**Summary of Complaint**

WE WERE ON A ROAD TRIP FROM FLORIDA TO VIRGINIA TO BUFFALO. ON OUR
TRIP FROM VIRGINIA TO BUFFALO ON JUNE 26TH WHILE DRIVING AT 70 MILES
AN HOUR ON THE 99 IN PENNSYLVANIA THE CAR STALLED AND WE WERE
FORCED TO PULL OFF THE ROAD BARELY MADE IT AS THE CAR LOST ALL
POWER. HAD THE VAN TOWED TO A DEALER IN ALTOONA PA. WHEN THE CAR
ARRIVED AT THE DEALERSHIP IT STARTED RIGHT UP FOR HIM. HE THEN
PROCEEDED TO RESET THE ENGINE LIGHT AND SEND US ON OUR WAY. HE SAID
HAVE A SAFE TRIP. WE DROVE ABOUT 60 MILES IN THE CAR DID EXACTLY THE
SAME THING AT 65 MILES AN HOUR AGAIN BARELY GETTING OFF THE ROAD. MY
HUSBAND WAS DRIVING AT THAT TIME AND TURN THE CAR OFF OPEN THE
DOOR AND TRIED TO START IT IT DID START. WE CAUTIOUSLY PROCEEDED ON
OUR WAY AND AGAIN THE SAME THING HAPPENED AT THE NEXT 60 MILE
RANGE OF OUR TRIP. HE DID THE SAME THING AND IT STARTED UP. WE THEN
DROVE THE NEXT 130 MILES WITH NO INCIDENTS BUT THE ENGINE LIGHT WAS
ON WHEN WE ARRIVED IN BUFFALO WE PROCEEDED TO TAKE THE VEHICLE TO
WEST HERR DODGE WHERE IT'S STILL REMAINS TODAY. THEY HAVE NO IDEA
WHAT IS WRONG WITH THIS VEHICLE AND I AM WONDERING HOW THE HELL I'M
EVER GOING TO GET THIS BACK TO FLORIDA ANOTHER 1200 MILES. DRIVING AT
THOSE 200 MILES FROM ALTOONA PENNSYLVANIA WAS THE WORST DRIVING
EXPERIENCE I'VE EVER HAD IN MY LIFE. WE ARE STILL WAITING ON THE
VEHICLE AND IF I GET A CASE NUMBER FROM THE DEALER WHEN HE REPAIRS IT
OR TELLS ME IT IS REPAIRED I WILL LET YOU KNOW WE DID HAVE THIS VEHICLE
TO THREE DIFFERENT DEALERSHIPS TO IN VIRGINIA AND THE ONE IN ALTOONA
PA. THEY ALL RESET THE ENGINE LIGHT AND SENT US ON OUR WAY.

**NHTSA ID Number:** 11235056

**Incident Date** July 21, 2019

**Consumer Location** LAWRENCEVILLE, GA

**Vehicle Identification Number** 2C4RC1N71HR****

**Summary of Complaint**

ON THREE SEPERATE OCCASIONS OVER THE PAST FIVE MONTHS, I HAVE ENCOUNTERED THE SAME ISSUE. WHILE DRIVING BETWEEN 75-80MPH ON THE HIGHWAY WITH 32-44% LIFE ON THE HYBRID BATTERY, THE VEHICLE HAS SHUT OFF THE ENGINE. A MESSAGE COMES UP ON THE CLUSTER THAT I MUST PUT THE VEHICLE IN PARK TO DRIVE. THE ACCELERATOR DOES NOTHING AND POWER STEERING IS LOST. I MUST COAST OFF THE HIGHWAY. ONCE PARKED, THE VEHICLE IS IN A STATE THAT CANNOT BE TURNED ON/OFF. THE VEHICLE START BUTTON SHOWS THAT THE VEHICLE IS ON, BUT THE ENGINE IS STILL OFF. ALL OTHER ELECTRONICS IN CAR LIKE STEREO AND BLUETOOTH WORK AS THE CENTER TOUCHSCREEN REMAINS ACTIVE. TOUCHING THE START BUTTON MAKES THIS FLICKER TO OFF, BUT IT IMMEDIATELY RETURNS TO THIS STATE. MY VEHICLE HAS BEEN AT THE CHRYSLER DEALER TWICE ALREADY AND CURRENTLY IS THERE FOR A THIRD TIME TO RESOLVE THIS ISSUE, BUT THEY HAVE NO SOLUTION. THIS IS DEADLY!**NHTSA ID Number:** 11499950

**Incident Date** December 24, 2022

**Consumer Location** SIMSBURY, CT

**Vehicle Identification Number** 2C4RC1L72NR****

**Summary of Complaint**

THE CONTACT OWNS A 2022 CHRYSLER PACIFICA HYBRID. THE CONTACT STATED WHILE DRIVING 40 MPH, THE VEHICLE LOST MOTIVE POWER AND STALLED WITHOUT WARNING. THE CONTACT PULLED OVER ON THE SIDE OF THE ROAD AND THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE VEHICLE WAS TOWED TO THE DEALER AND THE CONTACT WAS INFORMED THAT THE POWER INVERTER MODULE NEEDED TO BE REPLACED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT CONTACTED. THE FAILURE MILEAGE WAS 3,100.

91.     Just as is the case with the Spontaneous Fire Risk recall, FCA's

planned recall in response to the Spontaneous Shutdown Risk is patently

inadequate, unsafe and unfair to Shutdown Risk Vehicle owners. Though FCA has

identified the faulty wiring harness internal to the transmission that is defective and

is causing the Spontaneous Shutdown Risk, it has no intention of replacing this

- 56 -

known faulty part. Instead, it plans merely to install one or more software updates that FCA claims will provide "messaging to the customer and sufficient drive time to exit traffic"[13]

92.     But FCA is silent as to how it has determined how much time is "sufficient drive time to exit traffic" and it has not indicated how it will detect a spontaneous short-circuit in a wiring harness to provide it. Owners of Shutdown Risk Vehicles are made to drive these cars while assuming all the risk that their driving habits and FCA's mysterious detection software update will actually allow them to safely exit traffic when their car spontaneously loses all motive power— both electric and gasoline. This is not a risk that FCA should be able to foist on innocent customers whose only mistake was buying a Pacifica Hybrid that FCA released for sale before ensuring that it would be safe.

93.     Moreover, FCA should not be permitted to pass the cost or replacing this known faulty part onto its innocent customers, whose cars may be out of their warranty period when this ticking timebomb of a defective part actually causes a complete shutdown of the hybrid propulsion system. FCA's plan to merely install a "monitoring" software update is a naked money grab. Rather than actually fix the known defect, FCA installs a dubious software messaging update while warranty

---

[13] *Id.*

coverage steadily passes by. Then when the defective wire harness does fail, for anyone out of warranty, rather than having paid up front to fix its known defect, FCA makes money selling the replacement parts and its dealers make money installing them, with all of such money coming right out of the pocket of FCA's customer.

**C.    All class members could have been made aware of the Spontaneous Shutdown Risk at the point of sale.**

94.    Plaintiffs and all putative class members were necessarily exposed to FCA's omissions before purchasing the Pacifia Hybrids because they each interacted with an authorized FCA dealer at the point of sale. These dealers could have disclosed the omitted information to each class member, but they failed to do so. As a district court affirmed in a consumer class action case against Ford, all class members in that case would have "been aware of a disclosure" about the Spontaneous Shutdown Risk at the point of sale because class members "interact[ed] with an authorized Ford dealer prior to purchase." *Daniel v. Ford Motor Co.*, 2016 WL 8077932, at *8 (E.D. Cal. Sept. 23, 2016). The same is true here with respect to FCA and its dealers. As a result of FCA's omission of material fact at the point of sale Plaintiffs and all class members have overpaid for their vehicles. The current "repairs" are not only in each case insufficient to remedy the overpayment, they do not account for the loss of value due to the taint these cars

now have, and do not compensate for the loss of performance the dubious repairs cause.

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    Discovery Rule Tolling

95.    Because FCA concealed the existence of the Spontaneous Shutdown Risk, class members had no way of knowing about the unreasonable shutdown risk of the Pacifica Hybrids.

96.    Within the period of any applicable statutes of limitation, Plaintiffs and members of the proposed Class and Subclasses could not have discovered through the exercise of reasonable diligence that FCA was concealing the conduct complained of herein.

97.    Plaintiffs and the other class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that FCA did not report information within its knowledge to federal and state authorities, its dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that FCA had concealed information about the unreasonable risk of spontaneous shutdown in the Shutdown Risk Vehicles, which was discovered by Plaintiffs only shortly before this action was filed.

98.    For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Pacifica Hybrids.

**B.    Fraudulent Concealment Tolling**

99.    All applicable statutes of limitation have also been tolled by FCA's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

**C.    Estoppel**

100.    FCA was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Shutdown Risk Vehicles.

101.    FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the shutdown risk of the Shutdown Risk Vehicles.

102.    Based on the foregoing, FCA is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CLASS ALLEGATIONS

103.    Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses:

> **Nationwide Shutdown Risk Class**: All persons or entities who purchased or leased one or more model year 2017-2023 Chrysler Pacifica Hybrid minivans (the "Shutdown Risk Vehicles").

- 60 -

**Arizona Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Arizona.

**California Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of California.

**Colorado Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Colorado.

**Colorado Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Colorado and who presented their vehicle to an FCA dealer for the associated recall repair.

**Connecticut Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Connecticut.

**Florida Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Florida.

**Florida Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Florida and who presented their vehicle to an FCA dealer for the associated recall repair.

**Georgia Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Georgia.

**Georgia Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Georgia and who presented their vehicle to an FCA dealer for the associated recall repair.

- 61 -

**Idaho Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Idaho.

**Idaho Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Idaho and who presented their vehicle to an FCA dealer for the associated recall repair.

**Illinois Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Illinois.

**Iowa Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Iowa.

**Kansas Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Kansas.

**Kentucky Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Kentucky.

**Maryland Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Maryland.

**Massachusetts Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Massachusetts.

**Massachusetts Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Massachusetts and who presented their vehicle to an FCA dealer for the associated recall repair.

**Michigan Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Michigan.

**Michigan Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Michigan and who presented their vehicle to an FCA dealer for the associated recall repair.

**Minnesota Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Minnesota.

**Minnesota Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Minnesota and who presented their vehicle to an FCA dealer for the associated recall repair.

**Missouri Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Missouri.

**Missouri Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Missouri and who presented their vehicle to an FCA dealer for the associated recall repair.

**New Hampshire Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of New Hampshire.

**North Carolina Shutdown Risk Subclass:** All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of North Carolina.

**Ohio Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Ohio.

- 63 -

**Oregon Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Oregon.

**Oregon Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Oregon and who presented their vehicle to an FCA dealer for the associated recall repair.

**Pennsylvania Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Pennsylvania.

**Pennsylvania Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Pennsylvania and who presented their vehicle to an FCA dealer for the associated recall repair.

**Rhode Island Shutdown Risk Subclass:** All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Rhode Island.

**Texas Shutdown Risk Subclass:** All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Texas.

**Texas Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Texas and who presented their vehicle to an FCA dealer for the associated recall repair.

**Virginia Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Virginia.

**Virginia Shutdown Risk Express Warranty Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Virginia and who

- 64 -

presented their vehicle to an FCA dealer for the associated recall repair.

**Washington Shutdown Risk Subclass**: All persons or entities who purchased or leased one or more of the Shutdown Risk Vehicles in the State of Washington.

104. Plaintiffs assert claims under the laws of each state set forth below.

105. Excluded from the definitions of each Class and Subclass are any personal injury or property damages claims resulting from accidents caused by the Shutdown Risk Vehicles. Also excluded from the Class and Subclasses are FCA and its subsidiaries and affiliates; all persons who make a timely election to be excluded from this action; governmental entities; the Judge to whom this case is assigned and his/her immediate family; and Plaintiffs' Counsel. Plaintiffs reserve the right to revise the Class and Subclass definitions based upon information learned through discovery.

106. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

107. This action has been brought and may be properly maintained on behalf of the Classes and Subclasses proposed herein under Federal Rule of Civil Procedure 23.

108.   **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of each Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. For purposes of this complaint, Plaintiffs allege that there are estimated to be 67,118 or more Shutdown Risk Vehicles in the Nationwide Shutdown Risk Class. The precise number of Class and Subclass members is unknown to Plaintiffs but may be ascertained from FCA's books and records. Class and Subclass members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

109.   **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class and Subclass members, including, without limitation:

    a.    Whether FCA engaged in the conduct alleged herein;

    b.    Whether the Spontaneous Shutdown Risk creates and unreasonable risk of unexpected shutdown in the Shutdown Risk Vehicles;

    c.    When FCA first knew about the Spontaneous Shutdown risk;

    d.    Whether FCA designed, manufactured, marketed, and distributed the Shutdown Risk Vehicles with defective transmission wiring harnesses;

- 66 -

e.     Whether FCA's purported recall "repair" for the Spontaneous Shutdown Risk is a *bona fide* repair of the faulty wiring harness;

f.     Whether FCA's conduct renders it liable for breach of the implied warranty of merchantability;

g.     Whether FCA's conduct renders it liable for breach of its express warranties;

h.     Whether FCA has been unjustly enriched at the expense of Plaintiffs and the Class and Subclasses;

i.     Whether Plaintiffs and the other Class and Subclass members overpaid for their vehicles at the point of sale; and

j.     Whether Plaintiffs and the other Class and Subclass members are entitled to damages and other monetary relief and, if so, in what amount.

110.   **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class and Subclass members' claims because, among other things, all Class and Subclass members were comparably injured through FCA's wrongful conduct as described above.

111.   **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class and Subclass representatives because their interests do not conflict with the interests of the other members of the Class and Subclasses they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The

- 67 -

Class and Subclasses' interests will be fairly and adequately protected by Plaintiffs and their counsel.

112. **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class and Subclass members are relatively small compared to the burden and expense that would be required to individually litigate their claims against FCA, so it would be impracticable for the members of the Class and Subclasses to individually seek redress for FCA's wrongful conduct. Even if Class and Subclass members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.  CLAIMS

**A.      Nationwide Claims**

### COUNT I
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (Alleged by all Plaintiffs on behalf of the Nationwide Shutdown Risk Class
### or, in the alternative, the State Shutdown Risk Subclasses)

113.   Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

114.   Plaintiffs bring this claim on behalf of the Nationwide Shutdown Risk Class.

115.   This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)-(d).

116.   The Shutdown Risk Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and Nationwide Shutdown Risk Class members are consumers because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its implied warranties.

117.   FCA is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

118.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

- 69 -

119.   FCA provided Plaintiffs and Nationwide Shutdown Risk Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, FCA warranted that the Shutdown Risk Vehicles engines were fit for their ordinary purpose as safe plug-in hybrid electric motor vehicles and would pass without objection in the trade as designed, manufactured, and marketed, and were adequately contained, packaged, and labeled.

120.   FCA breached its implied warranties, as described in more detail above, and is therefore liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a wiring harness in the transmission that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers, and bystanders. This defect rendered the Shutdown Risk Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

121.   As discussed above, on information and belief, FCA failed to perform the sort of testing that any responsible vehicle manufacturer would have done prior to launching the Shutdown Risk Vehicles, thus FCA knew or should have known of the defect. Yet, in order to pad its bottom line and launch the first-ever plug-in hybrid electric vehicle with the highest possible electric and overall range, FCA intentionally or recklessly foisted the dangerous Shutdown Risk Vehicles on unwitting class members.

122.   Any effort by FCA to limit the implied warranties in a manner that would exclude coverage of the Shutdown Risk Vehicles is unconscionable, and any such effort to disclaim or otherwise limit such liability is null and void.

123.   Any limitations FCA might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between FCA and Plaintiffs, as, at the time of purchase and lease, Plaintiffs had no other options for purchasing warranty coverage other than directly from FCA.

124.   Any limitations FCA might seek to impose on its warranties are substantively unconscionable. FCA knew that the Shutdown Risk Vehicles were defective and that the Shutdown Risk Vehicles could spontaneously shutdown when used as intended long before Plaintiffs and the Class. FCA failed to disclose this defect to Plaintiffs and the Class. Thus, enforcement of the durational limitations on the warranties is harsh and would shock the conscience.

- 71 -

125.   Plaintiffs have had sufficient direct dealings with either FCA or its agents (dealerships) to establish privity of contract between FCA and Plaintiffs. Nonetheless, privity is not required here because Plaintiffs are intended third-party beneficiaries of contracts between FCA and its dealers, and specifically, of FCA's implied warranties. The dealers were not intended to be the ultimate consumers of the Shutdown Risk Vehicles and have no rights under the warranty agreements provided with the Shutdown Risk Vehicles; the warranty agreements were designed for and intended to benefit consumers. Finally, privity is also not required because the Shutdown Risk Vehicles are dangerous instrumentalities due to the aforementioned defect, as spontaneous shutdowns and loss of motive power present an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as other vehicles, passengers and bystanders.

126.   Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring this class action and are not required to give FCA notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

127.   Plaintiffs would suffer economic hardship if they returned their Shutdown Risk Vehicles but did not receive the return of all payments made by them. Because FCA will not acknowledge any revocation of acceptance and

immediately return any payments made, Plaintiffs have not re-accepted their

Shutdown Risk Vehicles by retaining them.

128.   The amount in controversy of Plaintiffs' individual claims meets or

exceeds the sum of $25. The amount in controversy of this action exceeds the sum

of $50,000, exclusive of interest and costs, computed on the basis of all claims to

be determined in this lawsuit. Plaintiffs, individually and on behalf of all other

Nationwide Shutdown Risk Class members, seek all damages permitted by law,

including diminution in value of their vehicles, in an amount to be proven at trial.

In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a

sum equal to the aggregate amount of costs and expenses (including attorneys' fees

based on actual time expended) determined by the Court to have reasonably been

incurred by Plaintiffs and the Nationwide Shutdown Risk Class members in

connection with the commencement and prosecution of this action.

129.   Plaintiffs also seek the establishment of an FCA-funded program for

Plaintiffs and Nationwide Shutdown Risk Class members to recover out-of-pocket

costs incurred in attempting to rectify and/or mitigate the effects of the wiring

harness defect in their Shutdown Risk Vehicles.

- 73 -

## COUNT II

### FRAUDULENT CONCEALMENT
### (COMMON LAW)
**(Alleged by all Plaintiffs on behalf of the Nationwide Shutdown Risk Class or, in the alternative, the State Shutdown Risk Subclasses)**

130.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

131.    Plaintiffs assert this claim on behalf of themselves and the Nationwide Shutdown Risk Class, or, in the alternative, on behalf of the state-specific Shutdown Risk Subclasses.

132.    A nationwide class is appropriate because the elements of a fraudulent concealment (or "fraud by concealment") claim are virtually identical in all states. In all states, Plaintiffs can prevail by showing that: **(i)** FCA had a duty to disclose material facts in connection with the sale or lease of the Shutdown Risk Vehicles; **(ii)** FCA **either** (a) knowingly made a false representation concerning material information in connection with the sale or lease of the Shutdown Risk Vehicles, **or** (b) knowingly concealed material information in connection with the sale or lease of the Shutdown Risk Vehicles, **or** (c) knowingly failed to disclose material information in connection with the sale or lease of the Shutdown Risk Vehicles; **and (iii)** as a result of FCA's conduct, Plaintiffs suffered economic damages.

133.    FCA concealed and suppressed material facts concerning the serious safety defects in Plaintiffs' vehicles.

134.   FCA sold the Shutdown Risk Vehicles to Plaintiffs without disclosing the true nature of the Shutdown Risk Vehicles, including the Spontaneous Shutdown Risk, and concealed and suppressed the defect from regulators and consumers.

135.   FCA concealed and suppressed the true nature of the Shutdown Risk Vehicles, as well as the Spontaneous Shutdown Risk, with the intent to deceive Plaintiffs.

136.   FCA concealed and suppressed the true nature of the "recall repair" it intends to perform on the Shutdown Risk Vehicles, with the intent to deceive Plaintiffs into believing it is rectifying the Spontaneous Shutdown Risk.

137.   FCA did so in order to falsely assure purchasers, lessees, and owners of the Shutdown Risk Vehicles that the vehicles they were purchasing or leasing were safe and could be operated in traffic in order to cut costs and avoid the requisite safety technology and/or rigorous testing of the Shutdown Risk Vehicles prior to launching them, and then to avoid the cost and negative publicity of a *bona fide* recall repair. The concealed information was material to consumers, both because it concerned the quality and safety of the Shutdown Risk Vehicles and because the information would have significantly decreased the value and sales price of the vehicles.

138.   FCA had a duty to disclose the true nature of the Shutdown Risk Vehicles, as well as the Spontaneous Shutdown Risk and the true nature of its intended repair because it was known and/ only knowable by FCA; FCA had superior knowledge and access to the facts; and FCA knew the facts were not known to, or reasonably discoverable by, Plaintiffs. FCA also had a duty to disclose because it made many affirmative representations about the safety and quality of the Shutdown Risk Vehicles and touted the ability of the vehicles to operate as plug-in hybrid electric/gasoline vehicles, as set forth above; these representations were misleading, deceptive, and incomplete without the disclosure of the Spontaneous Shutdown Risk. Having provided information to Plaintiffs, FCA had the duty to disclose not just the partial truth, but the entire truth. Finally, once the Shutdown Risk Vehicles were on the road, FCA had a duty to monitor the Shutdown Risk Vehicles under the TREAD Act and implementing regulations, including the duty to promptly notify consumers of known safety defects.

139.   FCA concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt FCA's image and cost FCA money, and it did so at the expense of Plaintiffs and the Nationwide Shutdown Risk Class.

140.   On information and belief, FCA has still not made full and adequate disclosure and continues to defraud Plaintiffs and conceal material information

- 76 -

regarding the Spontaneous Shutdown Risk as well as whether its intended recall repair actually repairs the faulty wiring harness in the Shutdown Risk Vehicles.

141.   Plaintiffs were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased their Shutdown Risk Vehicles and paid the high premium as the result of FCA's claims that they could be safely operated as plug-in hybrid electric vehicles, including in gasoline drive modes, including in gasoline drive modes. Plaintiffs' actions were justified. FCA was in exclusive control of the material facts and such facts were not known to the public, including Plaintiffs.

142.   Because of the concealment and/or suppression of the facts, Plaintiffs sustained damage. In purchasing or leasing their Shutdown Risk Vehicles, Plaintiffs did not get the benefit of their bargain since the vehicles were worth less than they would have been without the defects, and because they own vehicles that diminished in value as a result of FCA's concealment of, and failure to timely disclose and remedy, the defects. Those Nationwide Shutdown Class members who sold their dangerous Shutdown Risk Vehicles at a substantial loss have also suffered quantifiable damages, as will all those who sell between now and the time FCA implements an adequate recall repair (if it ever does). Had Plaintiffs been aware of the concealed defects that existed in the Shutdown Risk Vehicles,

- 77 -

Plaintiffs would have paid less for their vehicles or would not have purchased or leased them at all.

143.    Accordingly, FCA is liable to Plaintiffs and the Nationwide Shutdown Risk Class for damages in an amount to be proven at trial.

144.    FCA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights and well-being in order to enrich FCA. FCA's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### FRAUDULENT OMISSION
**(Alleged by all Plaintiffs on behalf of the Nationwide Shutdown Risk Class
or, in the alternative, the State Shutdown Risk Subclasses)**

145.    Plaintiffs and the Nationwide Shutdown Risk Class reallege and incorporate by reference all paragraphs as though fully set forth herein.

146.    FCA was aware of the Spontaneous Shutdown Risk within the Class Vehicles, as well as the true nature of the Class Vehicles as a whole, when it marketed and sold the Class Vehicles to Plaintiffs and the Nationwide Shutdown Risk Class.

147.    Having been aware of the Spontaneous Shutdown Risk within the Class Vehicles, as well as the true nature of the Class Vehicles as a whole, and

having known that Plaintiffs and the other members of the Nationwide Shutdown Risk Class could not have reasonably been expected to know these material facts, FCA had a duty to disclose these facts to Plaintiffs and the other members of the Nationwide Shutdown Risk Class in connection with the sale or lease of the Shutdown Risk Vehicles.

148.   FCA did not disclose the Spontaneous Shutdown Risk or the true nature of the Shutdown Risk Vehicles to Plaintiffs and the Nationwide Shutdown Risk Class in connection with the sale or lease of the Class Vehicles.

149.   For the reasons set forth above, the Spontaneous Shutdown Risk within the Shutdown Risk Vehicles comprises material information with respect to the sale or lease of the Shutdown Risk Vehicles.

150.   In purchasing and leasing the Shutdown Risk Vehicles, Plaintiffs and the other members of the Nationwide Shutdown Risk Class reasonably relied on FCA to disclose known material defects with respect to the Shutdown Risk Vehicles.

151.   Had Plaintiffs and the other members of the Nationwide Shutdown Risk Class known of the true nature of the Shutdown Risk Vehicles, including the Spontaneous Shutdown Risk, they would not have purchased or leased the Shutdown Risk Vehicles or would have paid less for the Shutdown Risk Vehicles.

- 79 -

152.   Through its omissions regarding the true nature of the Shutdown Risk Vehicles, as well as the Spontaneous Shutdown Risk, FCA intended to induce, and did induce, Plaintiffs and the other members of the Nationwide Shutdown Risk Class to either purchase or lease a Shutdown Risk Vehicle that they otherwise would not have purchased, or pay more for a Shutdown Risk Vehicle than they otherwise would have paid.

153.   As a direct and proximate result of FCA's omissions, Plaintiffs and the other members of the Nationwide Shutdown Risk Class either overpaid for the Shutdown Risk Vehicles or would not have purchased the Shutdown Risk Vehicles at all if the true nature of the Shutdown Risk Vehicles, including the Spontaneous Shutdown Risk, had been disclosed to them and, therefore, have incurred damages in an amount to be determined at trial.

## COUNT IV

### UNJUST ENRICHMENT
### (COMMON LAW)
### (Alleged by all Plaintiffs on behalf of the Nationwide Shutdown Risk Class or, in the alternative, the State Shutdown Subclasses)

154.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

155.   Plaintiffs assert this claim on behalf of themselves and the Nationwide Shutdown Risk Class, or, in the alternative, on behalf of the state-specific

- 80 -

Shutdown Risk Subclasses. A nationwide class is appropriate because the elements of unjust enrichment are uniform in all the states.

156.   This claim is pleaded in the alternative to the contract-based claims brought on behalf of Plaintiffs and the Nationwide Shutdown Risk Class.

157.   FCA has received and retained a benefit from Plaintiffs and Nationwide Shutdown Risk Class members and inequity has resulted.

158.   FCA has benefitted from selling, leasing, and distributing the Shutdown Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiffs and Nationwide Shutdown Risk Class members have overpaid for the Pacifica Hybrids and been forced to pay other costs.

159.   Thus, Plaintiffs and the Nationwide Shutdown Risk Class conferred a benefit on FCA.

160.   It is inequitable for FCA to retain these benefits.

161.   Plaintiffs and the Nationwide Shutdown Risk Class were not aware of the true facts about the Pacifica Hybrids and did not benefit from FCA's conduct.

162.   FCA knowingly accepted the benefits of its unjust conduct.

163.   As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount according to proof.

- 81 -

**B.** **State-Specific Claims**

**1.** **Arizona**

## COUNT V

### VIOLATIONS OF THE CONSUMER FRAUD ACT
(Ariz. Rev. Stat. § 44-1521, *et seq.*)
(Alleged by Plaintiffs James and Alicia Kappes
on behalf of the Arizona Shutdown Risk Subclass)

164. Plaintiffs and the Arizona Shutdown Risk Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

165. Plaintiffs bring this claim on behalf of themselves and the Arizona Shutdown Risk Subclass ("Subclass," for the purposes of this claim).

166. FCA, Plaintiffs, and the Subclass are "persons" within the meaning of the Arizona Consumer Fraud Act ("Arizona CFA"), Ariz. Rev. Stat. § 44-1521(6).

167. The Pacifica Hybrids are "merchandise" within the meaning of Ariz. Rev. Stat. § 44-1521(5).

168. FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

169. The Arizona CFA provides that "[t]he act, use or employment by any person of any deception, deceptive act or practice, fraud, … misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale … of any merchandise whether or not any person has in fact been misled, deceived

or damaged thereby, is declared to be an unlawful practice." Ariz. Rev. Stat. § 44-1522(A).

170.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

171.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Shutdown Risk Vehicles.

172.   By failing to disclose and by actively concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, FCA engaged in unfair and deceptive business practices in violation of the Arizona CFA.

173.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

174.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Subclass members, about the true safety and reliability of their vehicles.

- 83 -

175.    FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs and the Subclass.

176.    FCA knew or should have known that its conduct violated the Arizona CFA.

177.    As alleged above, FCA made material misstatements about the safety and reliability of the Shutdown Risk Vehicles that were either false or misleading.

178.    FCA owed Plaintiffs and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

    a.    Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

    b.    Intentionally concealed the foregoing from Plaintiffs and the Subclass;

    c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and the Subclass that contradicted these representations; and/or

    d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

179.    Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Had Plaintiffs been aware of

- 84 -

the defects in their vehicles, they either would not have bought or leased their vehicles or would have paid less for them.

180.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs and the Subclass.

181.   Plaintiffs and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk. Plaintiffs and Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

182.   FCA's violations present a continuing risk to Plaintiffs and the Subclass as well as to the general public. In particular and as alleged herein, FCA has yet to offer any *bona fide* fix for the Shutdown Risk Vehicles. FCA's unlawful acts and practices complained of herein affect the public interest.

183.   As a direct and proximate result of FCA's violations of the Arizona CFA, Plaintiffs and the Subclass have suffered injury-in-fact and/or actual damage as alleged above.

184.   Plaintiffs seek monetary relief against FCA in an amount to be determined at trial. Plaintiffs also seek punitive damages because FCA engaged in aggravated and outrageous conduct with an evil mind.

- 85 -

185.   Plaintiffs also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Arizona CFA.

## COUNT VI

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER ARIZONA LAW
### (Ariz. Rev. Stat. § 47-2314)
### (Alleged by Plaintiffs James and Alicia Kappes
### on behalf of the Arizona Shutdown Risk Subclass)

186.   Plaintiffs and the Arizona Shutdown Risk Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

187.   Plaintiffs bring this claim on behalf of themselves and the Arizona Shutdown Risk Subclass ("Subclass," for the purposes of this claim).

188.   FCA is and was at all relevant times a merchant with respect to motor vehicles under Ariz. Rev. Stat. § 47-2014.

189.   Under Arizona law, an implied warranty of merchantability attaches to the Shutdown Risk Vehicles. Ariz. Rev. Stat. § 47-2314.

190.   The Pacifica Hybrids were not merchantable when sold or leased because their gasoline propulsion systems are prone to spontaneous shutdown and motive power loss, which poses an unreasonable risk of accident due to the Spontaneous Shutdown Risk as described herein.

191.   Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a wiring harness in the transmission that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

192.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Arizona Subclass members of the benefit of their bargain.

193.   Plaintiffs and Subclass members were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Arizona Subclass members.

194.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Arizona Subclass members have been damaged in an amount to be determined at trial.

2.     **California**

### COUNT VII

**VIOLATION OF THE CALIFORNIA
CONSUMER LEGAL REMEDIES ACT
(Cal. Civ. Code § 1750, *et seq.*)
(Alleged by Plaintiffs Carney, Clancy, and Shusta on behalf of
the California Shutdown Risk Subclass)**

195.   Plaintiffs and the California Shutdown Risk Subclass ("Subclass," for the purposes of each claim under California law) reallege and incorporate by reference all paragraphs as though fully set forth herein.

196.   Plaintiffs bring this claim on behalf of themselves and the California Shutdown Risk Subclass.

197.   FCA is a person as defined in California Civil Code § 1761(c).

198.   Plaintiffs and the California Shutdown Risk Subclass members are consumers as defined in California Civil Code § 1761(d).

199.   Defendant engaged in unfair and deceptive acts in violation of the California Consumer Legal Remedies Act (CLRA) through the practices described herein, and by knowingly and intentionally concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, from Plaintiffs and California Subclass members, along with concealing the risks, costs, and monetary damage resulting from the defect. These acts and practices violate, at a minimum, the following sections of the CLRA: (a)(2) mis-

- 88 -

representing the source, sponsorship, approval, or certification of goods or services; (a)(5) representing that goods or services have sponsorships, characteristics, uses, benefits, or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have; (a)(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and (a)(9) advertising goods and services with the intent not to sell them as advertised.

200.   FCA's unfair and deceptive acts or practices occurred repeatedly in its trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

201.   FCA knew the Shutdown Risk Vehicles were defectively designed and/or manufactured, were prone to spontaneous shutdown and loss of motive power and were not suitable for their intended use.

202.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

- 89 -

suppression or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale of the Pacifica

Hybrids.

203.   FCA had a duty to Plaintiffs and Subclass members to disclose the

defective nature of the Pacifica Hybrids because:

a.      FCA was in a superior position to know the true state of
facts about the Spontaneous Shutdown Risk and
associated risks of spontaneous shutdown in the
Shutdown Risk Vehicles, and the defect affects a core
function of the car;

b.      Plaintiffs and Subclass members could not reasonably
have been expected to learn or discover that the
Shutdown Risk Vehicles had a dangerous safety defect
until repeated shutdowns forced FCA to finally issue the
recall;

c.      FCA knew that Plaintiffs and Subclass members could
not reasonably have been expected to learn or discover
the Spontaneous Shutdown Risk and the consequences
thereof until repeated shutdowns forced FCA to finally
disclose the risk; and

d.      FCA actively concealed the defect and the consequences
thereof by knowingly failing to recall the Pacifica
Hybrids at an earlier date.

204.   In failing to disclose the Spontaneous Shutdown Risk and the

associated safety risks and repair costs that result from it, FCA has knowingly and

intentionally concealed material facts and breached its duty to disclose.

205.   The facts concealed or not disclosed by FCA to Plaintiffs and

Subclass members are material in that a reasonable consumer would have

- 90 -

considered them important in deciding whether to purchase the Pacifica Hybrids or to pay a lesser price. Had Plaintiffs and the Subclass members known about the defective nature of the Pacifica Hybrids, they would not have purchased or leased the vehicles or would have paid less for them.

206. FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss. FCA's unlawful acts and practices complained of herein affect the public interest.

207. On or about January 30, 2023, Plaintiffs' undersigned counsel provided FCA written notice of their violations of the CLRA under California Civil Code § 1782(a) regarding the Shutdown Risk Vehicles

208. Plaintiffs and Subclass members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

209. Plaintiffs and the Subclass members seek all relief available under the CLRA, including equitable relief, damages, punitive damages, and attorneys' fees.

## COUNT VIII

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code § 17200)
### (Alleged by Plaintiffs Carney, Clancy and Shusta on behalf of the California Shutdown Risk Subclass)

210.   Plaintiffs and the California Subclass ("Subclass" for the purpose of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

211.   Plaintiffs bring this claim on behalf of themselves and the Subclass against Defendant.

212.   The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

213.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of material facts with intent that others rely upon such

- 92 -

concealment, suppression or omission, in connection with the sale of the Pacifica

Hybrids.

214.   FCA engaged in unfair competition and unfair, unlawful, or

fraudulent business practices through the conduct, statements, and omissions

described herein, and by knowingly and intentionally concealing the Spontaneous

Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the

Pacifica Hybrids, from Plaintiffs and Subclass members, along with concealing the

risks, costs, and monetary damage resulting from the defect. FCA should have

disclosed this information because it was in a superior position to know the true

facts related to the Spontaneous Shutdown Risk, and Plaintiffs and Subclass

members could not reasonably be expected to learn or discover the true facts

related to the Spontaneous Shutdown Risk.

215.   The Spontaneous Shutdown Risk causes unexpected and spontaneous

shutdown and loss of motive power in the Shutdown Risk Vehicles, and this

constitutes a safety issue that triggered FCA's duty to disclose the safety issue to

consumers.

216.   FCA's acts and practices deceived Plaintiffs and are likely to deceive

the public. In failing to disclose the Spontaneous Shutdown Risk and suppressing

other material facts from Plaintiffs and Subclass members, FCA breached its duty

to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and

Subclass members. FCA's omissions and concealment concerned information that was material to Plaintiffs and Subclass members, as it would have been to all reasonable consumers.

217. The injuries suffered by Plaintiffs and Subclass members are not greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and Subclass members could or should have reasonably avoided.

218. FCA's acts and practices are unlawful because they violate California Civil Code §§ 1668, 1709, 1710, and 1750, *et seq.*, and California Commercial Code § 2313. FCA knew or should have known its conduct violated the UCL.

219. Plaintiffs and Subclass members have suffered an injury in fact, including the loss of money or property, because of FCA's unfair, unlawful, and deceptive practices.

220. Plaintiffs seek to enjoin further unlawful, unfair, and fraudulent acts or practices by FCA, to obtain restitutionary disgorgement of all monies and revenues generated because of such practices, and all other relief allowed under California Business & Professions Code § 17200.

- 94 -

## COUNT IX

**VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW**
**(Cal. Bus. & Prof. Code § 17500,** *et seq***.)**
**(Alleged by Plaintiffs Carney, Clancy and Shusta on behalf of the California**
**Shutdown Risk Subclass)**

221.   Plaintiffs and the California Subclass ("Subclass" for the purpose of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

222.   Plaintiffs bring this claim on behalf of themselves and the Subclass against FCA.

223.   California Business & Professions Code § 17500 states: "It is unlawful for any … corporation … with intent directly or indirectly to dispose of real or personal property … to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

224.   FCA caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or through the exercise of

- 95 -

reasonable care should have been known to FCA, to be untrue and misleading to consumers, including Plaintiffs and the Subclass members.

225.   FCA violated Section 17500 because its misrepresentations and omissions regarding the safety, reliability, and functionality of the Pacifica Hybrids as plug-in hybrid electric vehicles, including in gasoline modes, as described herein were material, untrue, and misleading, and likely to deceive a reasonable consumer.

226.   Plaintiffs and Subclass members have suffered an injury in fact, including the loss of money or property, because of FCA's deceptive advertising. In purchasing or leasing their Pacifica Hybrids, Plaintiffs and Subclass members relied on FCA's misrepresentations and omissions regarding the safety, reliability, and functionality of the vehicles. FCA's representations and omissions were untrue because the Shutdown Risk Vehicles were sold with a defective transmission wiring harness. Had Plaintiffs and the Subclass members known this, they would not have purchased or leased their vehicles or paid as much for them. Accordingly, Plaintiffs and the Subclass members overpaid for their vehicles and did not receive the benefit of their bargain.

227.   All the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of FCA's business. FCA's wrongful conduct is part of a

pattern or generalized course of conduct that is still perpetuated and repeated, both in California and nationwide.

228.    Plaintiffs, individually and on behalf of the Subclass members, request this Court enter such orders or judgments as necessary to enjoin FCA from continuing its unlawful and deceptive advertising, to restore to Plaintiffs and the Subclass members any money FCA acquired by its deceptive advertising, including restitution and restitutionary disgorgement, and for such other relief permitted.

**COUNT X**

**VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CALIFORNIA LAW (Cal. Civ. Code §§ 1791.1 & 1792) (Alleged by Plaintiffs Carney, Clancy and Shusta on behalf of the California Shutdown Risk Subclass)**

229.    Plaintiffs and the California Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

230.    Plaintiffs bring this claim on behalf of themselves and the California Subclass ("Subclass," for the purposes of this claim).

231.    Plaintiffs and the California Subclass members are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

232.    The Pacifica Hybrids are "consumer goods" within the meaning of Civ. Code § 1791(a).

- 97 -

233.   FCA is the "manufacturer" of the Pacifica Hybrids within the meaning of Cal. Civ. Code § 1791(j).

234.   FCA impliedly warranted to Plaintiffs and the California Subclass that the Pacifica Hybrids were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) & 1792; however, the Pacifica Hybrids do not have the quality that a buyer would reasonably expect and were therefore not merchantable.

235.   Cal. Civ. Code § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)   Pass without objection in the trade under the contract description.
>
> (2)   Are fit for the ordinary purposes for which such goods are used.
>
> (3)   Are adequately contained, packaged, and labeled.
>
> (4)   Conform to the promises or affirmations of fact made on the container or label.

236.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk

- 98 -

of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Shutdown Risk Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

237.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the California Subclass members of the benefit of their bargain.

238.   Notice of breach is not required because Plaintiffs and the California Subclasses did not purchase their automobiles directly from FCA. Nonetheless, Plaintiffs' counsel sent notification to FCA on or about January 30, 2023.

239.   Plaintiffs and the other California Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and California Subclass members.

240.   As a direct and proximate result FCA's breach of the implied warranty of merchantability, Plaintiffs and the California Subclass members received goods whose dangerous condition now renders them at least partially inoperable and substantially impairs their value. Plaintiffs and the California

- 99 -

Subclass members have been damaged as they overpaid for their vehicles, and now suffer the partial or complete loss of use of their vehicles.

241.   Under Cal. Civ. Code §§ 1791.1(d) & 1794, Plaintiffs and the California Subclass members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their vehicles.

242.   Under Cal. Civ. Code § 1794, Plaintiffs and the California Subclass are entitled to costs and attorneys' fees.

### 3.   Colorado

**COUNT XI**

**VIOLATIONS OF THE COLORADO CONSUMER PROTECTION ACT**
**(Colo. Rev. Stat. § 6-1-101, *et seq.*)**
**(Alleged by Plaintiffs Berzanskis and Wilensky**
**on behalf of the Colorado Subclass)**

243.   Plaintiffs and the Colorado Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

244.   Plaintiffs bring this action on behalf of themselves and the Colorado Subclass.

245.   FCA is a "person" within the meaning of § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq*.

- 100 -

246.   Plaintiffs are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a).

247.   The Colorado CPA prohibits deceptive trade practices in the course of a person's business. FCA engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Pacifica Hybrids that had the capacity or tendency to deceive Plaintiffs; (2) representing that the Pacifica Hybrids are of a particular standard, quality, and grade even though FCA knew or should have known they are not; (3) advertising the Pacifica Hybrids with the intent not to sell them as advertised; and (4) failing to disclose material information concerning the Pacifica Hybrids that was known to FCA at the time of advertisement or sale with the intent to induce Plaintiffs to purchase, lease or retain the Pacifica Hybrids.

248.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

- 101 -

249.   By failing to disclose and by actively concealing the defects in the Pacifica Hybrids, as well as the true nature of the Pacifica Hybrids, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, including in gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the Colorado CPA.

250.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Pacifica Hybrids.

251.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Subclass members, about the true safety and reliability of their vehicles.

252.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

253.   FCA knew or should have known that its conduct violated the Colorado CPA.

254.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles, including in gasoline modes, that were either false or misleading.

255.   FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

a.   Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

- 102 -

       b.     Intentionally concealed the foregoing from Plaintiffs;

       c.     Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and Subclass that contradicted these representations; and/or

       d.     Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

256. Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from this catastrophic defect. Had Plaintiffs been aware of the defects in their vehicles, they either would not have bought or leased their Pacifica Hybrids, or would have paid less for them.

257. FCA's concealment of the Spontaneous Shutdown Risk was material to Plaintiffs.

258. Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk. Plaintiffs either would have paid less for their vehicles or would not have purchased or leased them at all.

259. FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA has yet to offer any fix for the Pacifica Hybrids. FCA's unlawful acts and practices complained of herein affect the public interest.

260.   As a direct and proximate result of FCA's violations of the Colorado CPA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

261.   Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs seek monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages in the amount of $500 for each Plaintiff.

262.   Plaintiffs also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

## COUNT XII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER COLORADO LAW
### (Colo. Rev. Stat. § 4-2-314)
### (Alleged by Plaintiffs Berzanskis and Wilensky on behalf of the Colorado Subclass)

263.   Plaintiffs and the Colorado Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

264.   Plaintiffs bring this action on behalf of themselves and the Colorado Subclass.

265.   FCA is a "merchant" of the Pacifica Hybrids within the meaning of Colo. Rev. Stat. § 4-2-104(1) and a "seller" of the Pacifica Hybrids within the

meaning of Colo. Rev. Stat. § 4-2-103(d), and the Pacifica Hybrids are "goods" under Colo. Rev. Stat. § 4-2-105(1).

266.   Under Colorado law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Colo. Rev. Stat. § 4-2-314.

267.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Shutdown Risk Vehicles when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

268.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Colorado Subclass members of the benefit of their bargain.

- 105 -

269.   Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs.

270.   It was reasonable to expect that Plaintiffs would use, consume or be affected by the Pacifica Hybrids, and they are therefore entitled to the protections of the implied warranty of merchantability under Colo. Rev. Stat. § 4-2-318.

271.   FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint. In addition, on or about March 8, 2022, Plaintiffs sent a notice letter to FCA complying with Colo. Rev. Stat. § 4-2-607(3)(a), to the extent such notice is required. Because FCA has failed to remedy the Spontaneous Shutdown Risk within the requisite time period, Plaintiffs seek all damages and other relief to which they are entitled.

272.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Colorado Subclass members have been damaged in an amount to be determined at trial.

## COUNT XIII
## BREACH OF EXPRESS WARRANTIES UNDER COLORADO LAW
### (Colo. Rev. Stat. §§ 4-2-313 and 4-2.5-210)
### (Alleged by Plaintiffs Berzanskis and Wilensky
### on behalf of the Colorado Express Warranty Subclass)

273.   Plaintiffs and the Colorado Express Warranty Subclass ("Express Warranty Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

274.   Plaintiffs bring this action on behalf of themselves and the Colorado Express Warranty Subclass.

275.   Plaintiffs Berzanskis and Wilensky presented their vehicle for repair and did not receive an effective repair, and they seek to represent a class of all persons who presented for repair at the time of any notice to the class.

276.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3); and is a "seller" of motor vehicles under Colo. Rev. Stat. § 4-2-103(1)(d).

277.   With respect to leases, FCA is and was at all relevant times "lessors" of motor vehicles.

278.   The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

279.   Defendant provided Plaintiffs and members of the Colorado Express Warranty Subclass with one or more express warranties in connection with the

- 107 -

purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiffs and the Colorado Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

280.  Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiffs and members of the Colorado Express Warranty Subclass.

281.  Plaintiffs and members of the Colorado Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiffs and members of the Colorado Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties.

- 108 -

The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

282.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Colorado Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace.

283.   Plaintiffs and members of the Colorado Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Colorado Express Warranty Subclass that the Pacifica Hybrids contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

284.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiffs and members

- 109 -

of the Colorado Express Warranty Subclass despite the existence of the

Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or

lease.

285.   The warranties accompanying Pacifica Hybrids were procedurally and

substantively unconscionable under the Uniform Commercial Code § 2-302 and

other applicable state warranty laws because of the disparity in bargaining power

of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were

defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to

increase coverage of the warranties, their lack of knowledge, their lack of

meaningful alternatives, disparity in sophistication of the parties, unfair terms in

the warranty (including, but not limited to, exclusion of design defects that unfairly

favored Defendant particularly where there were Shutdown Risk Vehicle defects

known only to Defendant and the warranty unfairly shifted repair costs to

consumers when Pacifica Hybrids prematurely fail during their reasonably

expected life), absence of effective warranty competition, and the fact that Pacifica

Hybrids fail with substantially fewer miles of operation than competitive vehicles

from other manufacturers or models much like the Pacifica Hybrids without the

Spontaneous Shutdown Risk.

286.   The time limits contained in Defendant's warranty periods were also

unconscionable and inadequate to protect Plaintiffs and members of the Colorado

Express Warranty Subclass. Among other things, Plaintiffs and members of the Colorado Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

287.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

288.   Defendant was provided notice by Plaintiffs of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

- 111 -

289.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

290.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Colorado Express Warranty Subclass have been damaged in an amount to be determined at trial.

291.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Colorado Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

292.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiffs and members of the Colorado Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Colorado Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**4.      Connecticut**

## COUNT XIV

**VIOLATION OF CONNECTICUT UNLAWFUL
TRADE PRACTICES ACT
(Conn. Gen. Stat. § 42-110a, *et seq.*)
(Alleged by Plaintiffs Kelsey and Peter Keefe
on behalf of the Connecticut Subclass)**

293.    Plaintiffs and the Connecticut Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

294.    Plaintiffs brings this claim on behalf of themselves and the Subclass.

295.    FCA is a "person" within the meaning of Conn. Gen. Stat. § 42-110a(3). FCA's challenged acts occurred is in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

296.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") provides: "No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). By concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, FCA participated in unfair and deceptive trade practices that violated the Connecticut UTPA as described herein.

297.    In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise

- 113 -

engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

298.   By failing to disclose and by actively concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, including in gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the Connecticut UTPA.

299.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

300.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Subclass members, about the true safety and reliability of their vehicles.

301.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs and the Subclass.

302.   FCA knew or should have known that its conduct violated the Connecticut UTPA.

- 114 -

303.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles that were either false or misleading.

304.   FCA owed Plaintiffs and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

     a.    Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

     b.    Intentionally concealed the foregoing from Plaintiffs and the Subclass;

     c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and Subclass that contradicted these representations; and/or

     d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

305.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Had Plaintiffs been aware of the defects in their vehicles, they either would not have bought or leased their Pacifica Hybrids, or would have paid less for them.

306.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs and the Subclass.

- 115 -

307.   Plaintiffs and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose Spontaneous Shutdown Risk. Plaintiffs and Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

308.   FCA's violations present a continuing risk to Plaintiffs and the Subclass as well as to the general public. In particular and as alleged herein, FCA has yet to offer any fix for the Pacifica Hybrids. FCA's unlawful acts and practices complained of herein affect the public interest.

309.   As a direct and proximate result of FCA's violations of the Connecticut UTPA Plaintiffs and the Subclass have suffered injury-in-fact and/or actual damage as alleged above.

310.   Plaintiffs are entitled to recover their actual damages, punitive damages, and attorneys' fees pursuant to Conn. Gen. Stat. § 42-110g.

311.   FCA acted with a reckless indifference to another's rights or wanton or intentional violation to another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights and safety of others. Therefore, punitive damages are warranted.

## COUNT XV

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER CONNECTICUT LAW
### (Conn. Gen. Stat. § 42a-2-314)
### (Alleged by Plaintiffs Kelsey and Peter Keefe
### on behalf of the Connecticut Subclass)

312.   Plaintiffs and the Connecticut Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

313.   Plaintiffs bring this claim on behalf of themselves and the Connecticut Subclass ("Subclass," for the purposes of this claim).

314.   FCA is a "merchant" within the meaning of Conn. Gen. Stat. § 42a-2-104(1).

315.   Under Connecticut law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Conn. Gen. Stat. § 42a-2-314.

316.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

- 117 -

well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

317.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Connecticut Subclass members of the benefit of their bargain.

318.   Plaintiffs and the other Subclass members were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Subclass members.

319.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Subclass members have been damaged in an amount to be determined at trial.

5. **Florida**

## COUNT XVI

### VIOLATION OF FLORIDA'S UNFAIR &
### DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et seq.*)
### (Alleged by Plaintiff Latacki
### on behalf of the Florida Subclass)

320. Plaintiffs and the Florida Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

321. Plaintiffs bring this claim on behalf of themselves and the Florida Subclass.

322. Plaintiffs and the Subclass are "consumers" within the meaning of the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. § 501.203(7).

323. FCA engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

324. The FUDTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce …." Fla. Stat. § 501.204(1). By concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, FCA participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

- 119 -

325.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

326.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

327.   By failing to disclose and by actively concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, including in gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the FUDTPA.

328.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

329.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Subclass members, about the true safety and reliability of their vehicles.

- 120 -

330.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs and the Subclass.

331.   FCA knew or should have known that its conduct violated the FUDTPA.

332.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles that were either false or misleading.

333.   FCA owed Plaintiffs and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

   a.   Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Subclass;

   c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and the Subclass that contradicted these representations; and/or

   d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

334.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Had Plaintiffs been aware of

- 121 -

the defects in their vehicles, they either would not have bought or leased their Pacifica Hybrids, or would have paid less for them.

335.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs and the Subclass.

336.   Plaintiffs and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose Spontaneous Shutdown Risk. Plaintiffs and Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

337.   FCA's violations present a continuing risk to Plaintiffs and the Subclass as well as to the general public. In particular and as alleged herein, FCA has yet to offer any fix for the Pacifica Hybrids. FCA's unlawful acts and practices complained of herein affect the public interest.

338.   As a direct and proximate result of FCA's violations of the FUDTPA, Plaintiffs and the Subclass have suffered injury-in-fact and/or actual damage as alleged above.

339.   Plaintiffs and the Subclass are entitled to recover their actual damages under Fla. Stat. § 501.211(2) and attorneys' fees under Fla. Stat. § 501.2105(1).

340.   Plaintiffs also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FUDTPA.

## COUNT XVII

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER FLORIDA LAW
### (Fla. Stat. § 672.314)
### (Alleged by Plaintiff Latacki
### on behalf of the Florida Subclass)

341.   Plaintiffs and the Florida Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

342.   Plaintiffs bring this claim on behalf of themselves and the Florida Subclass ("Subclass," for the purposes of this claim).

343.   FCA is a "merchant" within the meaning of Fla. Stat. § 672.104, and a "seller" of motor vehicles within the meaning of Fla. Stat. § 672.103(d).

344.   Under Florida law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Fla. Stat. § 672.314.

345.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit, and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

- 123 -

well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

346.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Florida Subclass members of the benefit of their bargain.

347.   Plaintiffs and Subclass members were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Florida Subclass members. *See* Fla. Stat. § 672.318.

348.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and Florida Subclass members have been damaged in an amount to be determined at trial.

## COUNT XVIII

## BREACH OF EXPRESS WARRANTY UNDER FLORIDA LAW
### (Fla. Stat. § 672.313, 680.21 and 680.1031)
### (Alleged by Plaintiff Latacki on behalf of the
### Florida Express Warranty Subclass)

349.   Plaintiff and the Florida Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 124 -

350.   Plaintiff brings this claim on behalf of himself and the Florida Express Warranty Subclass.

351.   Plaintiff Latacki presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

352.   Defendant is and was at all relevant times a "merchant" with respect of motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and a "seller" of motor vehicles under § 672.103(1)(d).

353.   With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

354.   The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

355.   Defendant provided Plaintiff and members of the Florida Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Florida Express Warranty Subclass, Defendant promised to repair or replace covered defective

components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

356.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Florida Express Warranty Subclass.

357.   Plaintiff and members of the Florida Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Florida Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

358.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Florida Express Warranty Subclass purchased

or leased their Pacifica Hybrids. Given that the nature of the Spontaneous

Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the

warranties are substantively unconscionable because Defendant knew that the

Pacifica Hybrids were defective and manipulated the warranties in such a manner

to avoid paying the costs to repair and/or replace.

359.   Plaintiff and members of the Florida Express Warranty Subclass were

induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent

pretenses. Despite the existence of the warranties, Defendant failed to adequately

inform Plaintiff and members of the Florida Express Warranty Subclass that the

Pacifica Hybrids contained the Spontaneous Shutdown Risk and failed to provide a

suitable repair or replacement free of charge within a reasonable time.

360.   On information and belief, Defendant has not suitably repaired or

replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of

the Florida Express Warranty Subclass despite the existence of the Spontaneous

Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

361.   The warranties accompanying Pacifica Hybrids were procedurally and

substantively unconscionable under the Uniform Commercial Code § 2-302 and

other applicable state warranty laws because of the disparity in bargaining power

of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were

defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to

- 127 -

increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

362.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Florida Express Warranty Subclass. Among other things, Plaintiff and members of the Florida Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

363.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide,

- 128 -

complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

364.   Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

365.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

366.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Florida Express Warranty Subclass have been damaged in an amount to be determined at trial.

367.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff

and members of the Florida Express Warranty Subclass whole because, on

information and belief, Defendant has failed and/or has refused to adequately

provide the promised remedies within a reasonable time.

368.   Finally, because of Defendant's breach of express warranty as set

forth herein, Plaintiff and members of the Florida Express Warranty Subclass

assert, as additional and/or alternative remedies, the revocation of acceptance of

the goods and the return to Plaintiff and members of the Florida Express Warranty

Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or

leased, and for such other incidental and consequential damages as allowed.

    **6.**    **Georgia**

**COUNT XIX**

**VIOLATION OF GEORGIA'S FAIR BUSINESS PRACTICES ACT**
**(Ga. Code Ann. § 10-1-390, *et seq.*)**
**(Alleged by Plaintiff Spruance on behalf of the Georgia Subclass)**

369.   Plaintiff and the Georgia Subclass ("Subclass," for the purposes of

this claim) reallege and incorporate by reference all paragraphs as though fully set

forth herein.

370.   Plaintiff brings this claim on behalf of himself and the Georgia

Subclass ("Subclass," for the purposes of this claim).

371.   The Georgia Fair Business Practices Act ("Georgia FBPA") declares

"[u]nfair or deceptive acts or practices in the conduct of consumer transactions and

- 130 -

consumer acts or practices in trade or commerce" to be unlawful, Ga. Code. Ann. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," Ga. Code. Ann. § 10-1-393(b).

372.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

373.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

374.   By failing to disclose and by actively concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, including in

gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the Georgia FBPA.

375. In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

376. FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Subclass members, about the true safety and reliability of their vehicles.

377. FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiff and the Subclass.

378. FCA knew or should have known that its conduct violated the Georgia FBPA.

379. As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles that were either false or misleading.

380. FCA owed Plaintiff and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

    a.    Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

    b.    Intentionally concealed the foregoing from Plaintiff and the Subclass;

    c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully

withholding material facts from Plaintiff and the Subclass that contradicted these representations; and/or

d.       Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

381.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Had Plaintiffs been aware of the defects in their vehicles, they either would not have bought or leased their Pacifica Hybrids, or would have paid less for them.

382.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiff and the Subclass.

383.   Plaintiff and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose Spontaneous Shutdown Risk. Plaintiff and Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

384.   FCA's violations present a continuing risk to Plaintiff and the Subclass as well as to the general public. In particular and as alleged herein, FCA has yet to offer any fix for the Pacifica Hybrids. FCA's unlawful acts and practices complained of herein affect the public interest.

385.   As a direct and proximate result of FCA's violations of the Georgia FBPA, Plaintiff and the Subclass have suffered injury-in-fact and/or actual damage as alleged above.

386.   Plaintiff and the Subclass are entitled to recover damages and exemplary damages (for intentional violations) per Ga. Code. Ann § 10-1-399(a).

387.   Plaintiff and the Subclass also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Georgia FBPA per Ga. Code. Ann § 10-1-399.

388.   On or about January 30, 2023, Plaintiffs' counsel sent a letter complying with Ga. Code. Ann § 10-1-399(b). Because FCA failed to remedy its unlawful conduct within the requisite time period, Plaintiff and the Subclass seek all damages and relief to which they are entitled.

## COUNT XX

**BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY UNDER GEORGIA LAW**
**(Ga. Code Ann. § 11-2-314(1))**
**(Alleged by Plaintiff Spruance on behalf of the Georgia Subclass)**

389.   Plaintiff and the Georgia Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

390.   Plaintiff brings this claim on behalf of himself and the Georgia Subclass ("Subclass," for the purposes of this claim).

- 134 -

391.   FCA is a "merchant" within the meaning of Ga. Code Ann. § 11-2-

and Ga. Code Ann. § 11-2-104(1), and a "seller" of motor vehicles within the

meaning of Ga. Code Ann. § 11-2-(103)(1)(d).

392.   Under Georgia law, an implied warranty of merchantability attaches

to the Pacifica Hybrids. Ga. Code Ann. § 11-2-314(1).

393.   The Shutdown Risk Vehicles were not merchantable when sold or

leased because their transmission wiring harnesses are prone to short-circuit and

pose an unreasonable risk of spontaneous shutdown due to the Spontaneous

Shutdown Risk as described herein. Without limitation, the Shutdown Risk

Vehicles share a common defect in that they are all equipped with a faulty wiring

harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

loss of motive power, causing an unreasonable risk of death, serious bodily harm

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

when sold/leased and at all times thereafter, unmerchantable and unfit for their

ordinary use of driving.

394.   FCA breached the implied warranty of merchantability by selling

Shutdown Risk Vehicles containing defects leading to the sudden shutdown and

loss of motive power of the vehicles during ordinary operating conditions. This

- 135 -

defect has deprived Plaintiff and the Georgia Subclass members of the benefit of their bargain.

395.   Plaintiff and the Subclass were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Subclass members.

396.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXI

### BREACH OF EXPRES WARANTY UNDER GEORGIA LAW
### (Ga. Code Ann. § 11-2-313)
### (Alleged by Plaintiff Spruance on behalf of the
### Georgia Express Warranty Subclass)

397.   Plaintiff and the Georgia Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

398.   Plaintiff brings this claim on behalf of himself and the Georgia Express Warranty Subclass.

399.   Plaintiff Spruance presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

400.   FCA is and was at all relevant times a merchant with respect to motor vehicles.

- 136 -

401.   Defendant provided Plaintiff and members of the Georgia Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Georgia Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

402.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Georgia Express Warranty Subclass.

403.   Plaintiff and members of the Georgia Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Georgia Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the

- 137 -

other members of the Classes are intended third-party beneficiaries of contracts

between Defendant and its dealers, and specifically, of their express warranties.

The dealers were not intended to be the ultimate users of the Pacifica Hybrids and

have no rights under the warranty agreements provided with the Pacifica Hybrids;

the warranty agreements were designed for and intended to benefit purchasers and

lessees of the Pacifica Hybrids only.

404.   Defendant's warranties formed a basis of the bargain that was reached

when Plaintiff and members of the Georgia Express Warranty Subclass purchased

or leased their Pacifica Hybrids. Given that the nature of the Spontaneous

Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the

warranties are substantively unconscionable because Defendant knew that the

Pacifica Hybrids were defective and manipulated the warranties unconscionable

because Defendant knew that the Pacifica Hybrids werein such a manner to avoid

paying the costs to repair and/or replace.

405.   Plaintiff and members of the Georgia Express Warranty Subclass

were induced to purchase or lease the Pacifica Hybrids under false and/or

fraudulent pretenses. Despite the existence of the warranties, Defendant failed to

adequately inform Plaintiff and members of the Georgia Express Warranty

Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown

- 138 -

Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

406.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Georgia Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

407.   The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles

- 139 -

from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

408.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Georgia Express Warranty Subclass. Among other things, Plaintiff and members of the Georgia Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

409.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

410.   Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor

actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

411.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

412.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Georgia Express Warranty Subclass have been damaged in an amount to be determined at trial.

413.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Georgia Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

414.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Georgia Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Georgia Express Warranty

- 141 -

Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

### 7. Idaho

### COUNT XXII

**VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT**
**(Idaho Civ. Code § 48-601, *et seq.*)**
**(Alleged by Plaintiff Keeth on behalf of the Idaho Subclass)**

415. Plaintiff and the Idaho Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

416. Plaintiff brings this action on behalf of himself and the Idaho Subclass ("Subclass," for the purposes of this claim).

417. FCA is a "person" under the Idaho Consumer Protection Act ("Idaho CPA"), Idaho Civ. Code § 48-602(1).

418. FCA's acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under Idaho Civ. Code § 48-602(2).

419. FCA participated in misleading, false, or deceptive acts that violated the Idaho CPA. By systematically concealing the defects in the Pacifica Hybrids, FCA engaged in deceptive business practices prohibited by the Idaho CPA, including: (1) representing that the Pacifica Hybrids have characteristics, uses, and benefits which they do not have; (2) representing that the Pacifica Hybrids are of a

- 142 -

particular standard, quality, and grade when they are not; (3) advertising the Pacifica Hybrids with the intent not to sell them as advertised; (4) engaging in acts or practices which are otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce. *See* Idaho Civ. Code § 48-603.

420. FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

421. In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

422. By failing to disclose and by actively concealing the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, which it marketed as safe, reliable, of high quality, and fit for use as plug-in hybrid electric vehicles, including in gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the Idaho CPA.

423.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

424.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Subclass members, about the true safety and reliability of their vehicles.

425.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiff and the Subclass.

426.   FCA knew or should have known that its conduct violated the Idaho CPA.

427.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles that were either false or misleading.

428.   FCA owed Plaintiff and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

   a.   Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

   b.   Intentionally concealed the foregoing from Plaintiff and the Subclass;

   c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiff and the Subclass that contradicted these representations; and/or

   d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

- 144 -

429.    Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiff was deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Had Plaintiff been aware of the defects in their vehicles, he would have either not have bought or leased his Shutdown Risk Vehicle or would have paid less for it.

430.    FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiff and the Subclass.

431.    Plaintiff and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose Spontaneous Shutdown Risk. Plaintiff and Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

432.    FCA's violations present a continuing risk to Plaintiff and the Subclass as well as to the general public. In particular and as alleged herein, FCA has yet to offer any fix for the Pacifica Hybrids. FCA's unlawful acts and practices complained of herein affect the public interest.

433.    As a direct and proximate result of FCA's violations of the Idaho CPA, Plaintiff and the Subclass have suffered injury-in-fact and/or actual damage as alleged above.

434.   Pursuant to Idaho Code § 48-608, Plaintiff and the Subclass seek monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $1,000 for each Plaintiff and Subclass member.

435.   Plaintiff and the Subclass also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, attorneys' fees, and any other just and proper relief available under the Idaho CPA.

436.   Plaintiff and the Subclass also seek punitive damages against FCA because FCA's conduct evidences an extreme deviation from reasonable standards. FCA flagrantly, maliciously, and fraudulently misrepresented the safety and reliability of the Pacifica Hybrids, deceived Plaintiff and the Subclass on life-or-death matters, concealed material facts that only it knew, and repeatedly promised Plaintiff and the Subclass that the Pacifica Hybrids were safe. FCA's unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XXIII

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER IDAHO LAW
### (Idaho Civ. Code § 28-2-314)
### (Alleged by Plaintiff Keeth on behalf of the Idaho Subclass)

437.   Plaintiff and the Idaho Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 146 -

438.   Plaintiff brings this action on behalf of himself and the Idaho Subclass.

439.   FCA is a "merchant" within the meaning of Idaho Civ. Code § 28-2-104(1).

440.   Under Idaho law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Idaho Civ. Code § 28-2-314.

441.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

442.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This

- 147 -

defect has deprived Plaintiff and the Idaho Subclass members of the benefit of their bargain.

443.   Plaintiff and the other Idaho Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Idaho Subclass members.

444.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Idaho Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXIV

**BREACH OF EXPRESS WARRANTY UNDER IDAHO LAW**
**(Idaho § 28-12-210**
**(Alleged by Plaintiff Keeth on behalf of the**
**Idaho Express Warranty Subclass)**

445.   Plaintiff and the Idaho Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

446.   Plaintiff brings this action on behalf of himself and the Idaho Express Warranty Subclass.

447.   Plaintiff Keeth presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

448.   FCA is and was at all relevant times a merchant with respect to motor vehicles.

- 148 -

449.   Defendant provided Plaintiff and members of the Idaho Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Idaho Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

450.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Idaho Express Warranty Subclass.

451.   Plaintiff and members of the Idaho Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Idaho Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the

- 149 -

other members of the Classes are intended third-party beneficiaries of contracts

between Defendant and its dealers, and specifically, of their express warranties.

The dealers were not intended to be the ultimate users of the Pacifica Hybrids and

have no rights under the warranty agreements provided with the Pacifica Hybrids;

the warranty agreements were designed for and intended to benefit purchasers and

lessees of the Pacifica Hybrids only.

452.   Defendant's warranties formed a basis of the bargain that was reached

when Plaintiff and members of the Idaho Express Warranty Subclass purchased or

leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown

Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are

substantively unconscionable because Defendant knew that the Pacifica Hybrids

were defective and manipulated the warranties to avoid paying the costs to repair

and/or replace.

453.   Plaintiff and members of the Idaho Express Warranty Subclass were

induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent

pretenses. Despite the existence of the warranties, Defendant failed to adequately

inform Plaintiff and members of the Idaho Express Warranty Subclass that the

Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to

provide a suitable repair or replacement free of charge within a reasonable time.

- 150 -

454.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Idaho Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

455.   The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

- 151 -

456.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Idaho Express Warranty Subclass. Among other things, Plaintiff and members of the Idaho Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

457.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

458.   Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of the complaint in this action. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a

suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

459.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

460.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Idaho Express Warranty Subclass have been damaged in an amount to be determined at trial.

461.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Idaho Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

462.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Idaho Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Idaho Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**8.     Illinois**

## COUNT XXV

### VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (810 ILCS 505/1, *et seq.*, and 720 ILCS 295/1A)
### (Alleged by Plaintiffs Su and Voss
### on behalf of the Illinois Subclass)

463.   Plaintiffs and the Illinois Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

464.   Plaintiffs bring this claim on behalf of themselves and the Subclass.

465.   FCA is a "person" as that term is defined in 815 ILCS 505/1(c).

466.   Plaintiffs the Subclass are "consumers" as that term is defined in 815 ILCS 505/1(e).

467.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of trade or commerce … whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2.

- 154 -

468. FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

469. In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

470. By failing to disclose and by actively concealing the defects in the Pacifica Hybrids, as well as the true nature of the Pacifica Hybrids, which it marketed as safe, reliable, of high quality, and safe for use as plug-in hybrid electric vehicles, including in gasoline drive modes, FCA engaged in unfair and deceptive business practices in violation of the Illinois CFA.

471. In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles.

- 155 -

472.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and the Subclass members, about the true safety and reliability of their vehicles.

473.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs and the Subclass.

474.   FCA knew or should have known that its conduct violated the Illinois CFA.

475.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids when operating as plug-in hybrid electric vehicles that were either false or misleading.

476.   FCA owed Plaintiffs and the Subclass a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

   a.   Possessed exclusive knowledge about the Spontaneous Shutdown Risk;

   b.   Intentionally concealed the foregoing from Plaintiffs and the Subclass;

   c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and Subclass that contradicted these representations; and/or

   d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defect.

- 156 -

477.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known safety defect. Had Plaintiffs been aware of the defects in their vehicles, they would have either not have bought their Pacifica Hybrids or would have paid less for them.

478.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs and the Subclass.

479.   Plaintiffs and the Subclass suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose Spontaneous Shutdown Risk. Plaintiffs and the Subclass members either would have paid less for their vehicles or would not have purchased or leased them at all.

480.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

481.   As a direct and proximate result of FCA's violations of the Illinois

CFA, Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

As a direct result of FCA's misconduct, all Plaintiffs and Subclass members

incurred damages.

482.   Pursuant to 815 ILCS 505/10a(a), Plaintiffs seek monetary relief

against FCA in the amount of actual damages, as well as punitive damages because

FCA acted with fraud and/or malice and/or was grossly negligent.

483.   Plaintiffs also seek an order enjoining FCA's unfair and/or deceptive

acts or practices, punitive damages, and attorneys' fees, and any other just and

proper relief available under 815 ILCS § 505/1 *et seq.*

## COUNT XXVI

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER ILLINOIS LAW
### (810 ILCS 5/2-314)
### (Alleged by Plaintiffs Su and Voss
### on behalf of the Illinois Subclass)

484.   Plaintiffs and the Illinois Subclass reallege and incorporate by

reference all paragraphs as though fully set forth herein.

485.   Plaintiffs bring this claim on behalf of themselves and the Illinois

Subclass.

- 158 -

486.   FCA is a "merchant" within the meaning of 810 ILCS 5/2-103(2) and 810 ILCS 5/2-104, and a "seller" of motor vehicles within the meaning of 810 ILCS 5/2-103(1)(d).

487.   Under Illinois law, an implied warranty of merchantability attaches to the Pacifica Hybrids. 810 ILCS 5/2-314.

488.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

489.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This

- 159 -

defect has deprived Plaintiffs and the Illinois Subclass members of the benefit of their bargain.

490.    Plaintiffs and the other Illinois Subclass members were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Illinois Subclass members.

491.    As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Illinois Subclass members have been damaged in an amount to be determined at trial.

### 9.    Iowa

### COUNT XXVII

### VIOLATIONS OF THE IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT
**(Iowa Code § 714h.1, *et seq.*)**
**(Alleged by Plaintiff Banas on behalf of the Iowa Subclass)**

492.    Plaintiff and the Iowa Subclass (the "Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

493.    Plaintiff brings this claim on behalf of himself and the Iowa Subclass.

494.    FCA is "person" under Iowa Code § 714H.2(7).

495.    Plaintiff and the Subclass are "consumers," as defined by Iowa Code § 714H.2(3), who purchased or leased one or more Pacifica Hybrids.

Case 2:23-cv-10259-BAF-KGA   ECF No. 1, PageID.174   Filed 02/01/23   Page 174 of 328

496.   The Iowa Private Right of Action for Consumer Frauds Act ("Iowa CFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3. FCA participated in misleading, false, or deceptive acts that violated the Iowa CFA.

497.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

498.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

- 161 -

499.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Iowa CFA.

500.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

501.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Subclass, about the true safety and reliability of their vehicles.

502.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiff and the Subclass.

503.   FCA knew or should have known that its conduct violated the Iowa CFA.

504.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

505.   FCA owed Plaintiff a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

      a.     Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

      b.     Intentionally concealed the foregoing from Plaintiff and the Subclass

- 162 -

      c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiff that contradicted these representations; and/or

      d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

506.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiff and Subclass members were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

507.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiff and the Iowa Subclass.

508.   Plaintiff and Subclass members suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

509.   FCA's violations present a continuing risk to Plaintiff and the Subclass as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: follow FCA's instructions, if possible, at the great inconvenience

- 163 -

of parking far from home and the expense and environmental impact of additional consumption of gasoline, ignore FCA's instructions and risk calamity, or sell the vehicles at a substantial loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

510.   As a direct and proximate result of FCA's violations of the Iowa CFA, all Subclass members have suffered injury-in-fact and/or actual damage as alleged above.

511.   Pursuant to Iowa Code § 714H.5, Plaintiff and the Subclass seek an order enjoining FCA's unfair and/or deceptive acts or practices; actual damages; in addition to an award of actual damages, statutory damages up to three times the amount of actual damages awarded as a result of FCA's willful and wanton disregard for the rights or safety of others; attorneys' fees; and such other equitable relief as the Court deems necessary to protect the public from further violations of the Iowa CFA.

## COUNT XXVIII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER IOWA LAW
### (Iowa Code § 554.2314)
### (Alleged by Plaintiff Banas on behalf of the Iowa Subclass)

512.   Plaintiff and the Iowa Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

513.   Plaintiff brings this claim on behalf of himself and the Iowa Subclass.

- 164 -

514.   FCA is a "merchant" of the Pacifica Hybrids within the meaning of Iowa Code § 554.2104 and a "seller" of the Pacifica Hybrids within the meaning of Iowa Code § 554.2103(d), and the Pacifica Hybrids are "goods" under Iowa Code § 554.2105.

515.   Under Iowa law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Iowa Code § 554.2314.

516.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

517.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This

defect has deprived Plaintiff and the Iowa Subclass members of the benefit of their bargain.

518.   Plaintiff and the other Iowa Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Iowa Subclass members.

519.   It was reasonable to expect that Plaintiff and the Iowa Subclass members would use, consume or be affected by the Pacifica Hybrids, and they are therefore entitled to the protections of the implied warranty of merchantability under Iowa Code § 554.2318.

520.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiff's counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

521.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Iowa Subclass members have been damaged in an amount to be determined at trial.

10.  **Kansas**

## COUNT XXIX

### VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
(Kan. Stat. § 50-623, *et seq.*)
(Alleged by Plaintiff Vu on behalf of the Kansas Subclass)

522.  Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

523.  Plaintiff brings this claim on behalf of himself and the Kansas Subclass ("Subclass," for the purposes of this claim).

524.  The Kansas Consumer Protection Act ("Kansas CPA") states that "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction."[14] Deceptive acts or practices include, but are not limited to: "the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact"; "the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact"; and "making false or misleading representations, knowingly or with reason to know, of fact concerning the reason for, existence of or amounts of price reductions."[15] These acts constitute deceptive conduct "whether or not any consumer has in fact been misled."[16]

---

[14] Kan. Stat. § 50-626(a).
[15] *Id.* § 50-626(b).
[16] *Id.*

525.   Plaintiff and Subclass members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

526.   The sale of Pacifica Hybrids to Plaintiff and the Subclass was a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

527.   FCA's conduct, as described in this complaint, constitutes "deceptive" practices in violation of the Kansas CPA.

528.   Under Kan. Stat. Ann. § 50-634, Plaintiff seeks monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial or (b) statutory damages in the amount of $10,000 for each plaintiff.

529.   Plaintiff also seeks an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under Kan. Stat. Ann. § 50-623, *et seq.*

## COUNT XXX

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Kan. Stat. Ann. § 84-2-314)
### (Alleged by Plaintiff Vu on behalf of the Kansas Subclass)

530.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

531.   Plaintiff brings this claim on behalf of himself and the Kansas Subclass ("Subclass," for the purposes of this claim).

532.   FCA was and is a merchant with respect to motor vehicles within the meaning of Kan. Stat. Ann. § 84-2-104(1).

533.   Under Kan. Stat. Ann. § 84-2-314, a warranty that the Pacifica Hybrids were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Pacifica Hybrids.

534.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

535.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This

- 169 -

defect has deprived Plaintiff and the Kansas Subclass members of the benefit of their bargain.

536.   Plaintiff and Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Kansas Subclass members.

537.   It was reasonable to expect that Plaintiff and Subclass members would use, consume or be affected by the Pacifica Hybrids, and they are therefore entitled to the protections of the implied warranty of merchantability.

538.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiff's counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

539.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and Subclass members have been damaged in an amount to be determined at trial.

11.    **Kentucky**

## COUNT XXXI

**VIOLATIONS OF THE KENTUCKY CONSUMER PROTECTION ACT**
**(Ky. Rev. Stat. § 367.110, *et seq.*)**
**(Alleged by Plaintiff Dorn on behalf of the Kentucky Subclass)**

540.   Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

541.   Plaintiff brings this claim on behalf of himself and the Kentucky Subclass ("Subclass" for purposes of this claim).

542.   FCA and Plaintiff are "persons" within the meaning of Ky. Rev. Stat. § 367.110(1).

543.   FCA engaged in "trade" or "commerce" within the meaning of Ky. Rev. Stat. § 367.110(2).

544.   The Kentucky Consumer Protection Act ("Kentucky CPA") makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce …." Ky. Rev. Stat. § 367.170(1). FCA participated in misleading, false, or deceptive acts that violated the Kentucky CPA. By systematically concealing the defects in the Pacifica Hybrids, FCA engaged in deceptive business practices prohibited by the Kentucky CPA.

545.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

- 171 -

546.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles and its failure to adequately design and test the vehicles to ensure their safety as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

547.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Kentucky CPA.

548.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

549.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and Subclass members, about the true safety and reliability of their vehicles.

550.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiff and Subclass members.

551.   FCA knew or should have known that its conduct violated the Kentucky CPA.

552.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

553.   FCA owed Plaintiff and Subclass members a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

      a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

      b.    Intentionally concealed the foregoing from Plaintiff and Subclass members;

      c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiff and Subclass members that contradicted these representations; and/or

      d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

554.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, Pacifica Hybrid owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

- 173 -

555.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiff and Subclass members.

556.   Plaintiff and Subclass members suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

557.   FCA's violations present a continuing risk to Plaintiff and Subclass members as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

558.   As a direct and proximate result of FCA's violations of the Kentucky CPA, Plaintiff and Subclass members have suffered injury-in-fact and/or actual damage as alleged above.

559.   Pursuant to Ky. Rev. Stat. Ann. § 367.220, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Kentucky CPA.

## COUNT XXXII

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER KENTUCKY LAW
### (Kentucky Rev. Stat. §§ 355.2, *et seq.*)
### (Alleged by Plaintiff Dorn on behalf of the Kentucky Subclass)

560.    Plaintiff and the Kentucky Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

561.    Plaintiff brings this action on behalf of himself and the Kentucky Subclass.

562.    The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Kentucky Rev. Stat. §§ 355.2-105(1) and 355.2A-103(h).

563.    FCA was at all relevant times a "seller" and "merchant" with respect to the Pacifica Hybrids under Kentucky Rev. Stat. §§ 355.2-103 and 355.2-104, and, with respect to leases, is and was at all relevant times a "lessor" of the Pacifica Hybrids under Kentucky Rev. Stat. § 355.2A-103

564.    Plaintiff and Kentucky Subclass Members are "buyers" or "lessees" within the meaning of Kentucky Rev. Stat. §§ 355.2-103(1) and 355.2A-103(n).

565.    Under Kentucky law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Kentucky Rev. Stat. §§ 355.2-314.

566.    The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous

- 175 -

Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

567. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the Kentucky Subclass members of the benefit of their bargain.

568. Plaintiff and the other Kentucky Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Kentucky Subclass members.

569. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Kentucky Subclass members have been damaged in an amount to be determined at trial.

12.    **Maryland**

## COUNT XXXIII

**VIOLATIONS OF THE MARYLAND CONSUMER PROTECTION ACT**
**(Md. Code Com. Law § 13-101, *et seq.*)**
**(Alleged by Plaintiff Hoffman**
**on behalf of the Maryland Subclass)**

570.   Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

571.   Plaintiffs bring this claim on behalf of themselves and the Maryland Subclass ("Subclass" for purposes of this claim).

572.   FCA and Plaintiffs are "persons" within the meaning of Md. Code Com. Law § 13-101(h).

573.   The Maryland Consumer Protection Act ("Maryland CPA") provides that a person may not engage in any unfair or deceptive trade practice in the sale or lease of any consumer good. Md. Code Com. Law § 13-303. FCA participated in misleading, false, or deceptive acts that violated the Maryland CPA. By concealing the Spontaneous Shutdown Risk in Plaintiffs' vehicles, FCA engaged in deceptive business practices prohibited by the Maryland CPA.

574.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

575.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the

- 177 -

Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein, and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

576.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Maryland CPA.

577.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

578.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs and Subclass members, about the true safety and reliability of their vehicles.

579.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs and Subclass members.

580.   FCA knew or should have known that its conduct violated the Maryland CPA.

581.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

582.   FCA owed Plaintiffs and Subclass members a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

a.   Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

b.   Intentionally concealed the foregoing from Plaintiffs and Subclass members;

c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs and Subclass members that contradicted these representations; and/or

d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

583.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

584.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs and Subclass members.

585.   Plaintiffs and Subclass members suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

586.   FCA's violations present a continuing risk to Plaintiffs and Subclass members as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

587.   As a direct and proximate result of FCA's violations of the Maryland CPA, Plaintiffs and Subclass members have suffered injury-in-fact and/or actual damage as alleged above.

588.   Pursuant to Md. Code Com. Law § 13-408, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

## COUNT XXXIV

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER MARYLAND LAW
### (Md. Code Com. Law § 2-314)
### (Alleged by Plaintiff Hoffman
### on behalf of the Maryland Subclass)

589.   Plaintiffs and the Maryland Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

590.   Plaintiffs bring this action on behalf of themselves and the Maryland Subclass.

591.   FCA is a "merchant" of motor vehicles within the meaning of Md. Com. Law § 2-104(1).

592.   Under Maryland law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Md. Com. Law § 2-314.

593.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit, and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

- 181 -

well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

594.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Maryland Subclass members of the benefit of their bargain.

595.   Plaintiffs and the other Maryland Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Maryland Subclass members.

596.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Maryland Subclass members have been damaged in an amount to be determined at trial.

13.    **Massachusetts**

## COUNT XXXV

## DECEPTIVE ACTS OR PRACTICES PROHIBITED
## BY MASSACHUSETTS LAW
### (Mass. Gen. Laws Ch. 93A, § 1, *et seq.*)
### (Alleged by Plaintiffs Alicia and David Maltz,
### on behalf of the Massachusetts Subclass)

597.    Plaintiffs and the Massachusetts Subclass ("Plaintiffs," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

598.    Plaintiffs bring this claim on behalf of themselves and the Massachusetts Subclass ("Plaintiffs," for the purposes of this claim).

599.    FCA and Plaintiffs are "persons" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

600.    FCA engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(b).

601.    Massachusetts law (the "Massachusetts Act") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws Ch. 93A, § 2. FCA participated in misleading, false, or deceptive acts that violated the Massachusetts Act. By concealing the known defect in Plaintiffs' vehicles, FCA engaged in deceptive business practices prohibited by the Massachusetts Act.

- 183 -

602.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

603.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

604.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Massachusetts Act.

605.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

606.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

- 184 -

607.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

608.   FCA knew or should have known that its conduct violated the Massachusetts Act.

609.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

610.   FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

    a.   Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

    b.   Intentionally concealed the foregoing from Plaintiffs;

    c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

    d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

611.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had

Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

612.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs.

613.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

614.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

615.   As a direct and proximate result of FCA's violations of the Massachusetts Act, all Plaintiffs have suffered injury-in-fact and/or actual damage as alleged above.

616.   Pursuant to Mass. Gen. Laws Ch. 93A, § 9, Plaintiffs seek monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $25 for each

- 186 -

Plaintiff. Because FCA's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff, up to three times actual damages, but no less than two times actual damages.

617.   Plaintiffs also seek an order enjoining FCA's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Massachusetts Act.

618.   On or about March 8, 2022, Plaintiffs' counsel sent a letter complying with Mass. Gen. Laws Ch. 93A, § 9(3).

**COUNT XXXVI**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MASSACHUSETTS LAW
(Mass. Gen. Laws Ch. 106, § 2-314)
(Alleged by Plaintiffs Alicia and David Maltz
on behalf of the Massachusetts Subclass)**

619.   Plaintiffs and the Massachusetts Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

620.   Plaintiffs bring this action on behalf of themselves and the Massachusetts Subclass.

621.   FCA is a "merchant" with respect to motor vehicles under ALM GL Ch. 106, § 2-104(1).

622.   Under ALM GL Ch. 106, § 2-314, a warranty that the Pacifica Hybrids were in merchantable condition was implied by law in the transactions

- 187 -

when Plaintiffs and the Massachusetts Subclass members purchased or leased them.

623.   The Pacifica Hybrids were not merchantable when sold or leased at all times thereafter because their hybrid propulsion systems pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

624.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Massachusetts Subclass members of the benefit of their bargain.

625.   It was reasonable to expect that Plaintiffs and the Massachusetts Subclass members would use, consume or be affected by the Pacifica Hybrids.

- 188 -

626.   Plaintiffs and the other Massachusetts Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and the Massachusetts Subclass.

627.   In addition, or in the alternative, Plaintiffs and the Massachusetts Subclass members directly relied on FCA's advertising, as alleged above.

628.   FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint. In addition, on or about March 8, 2022, Plaintiffs' counsel sent notice letters to FCA to the extent such notice is required. Because FCA failed to remedy the Spontaneous Shutdown Risk within the requisite time period, Plaintiffs and the Massachusetts Subclass seek all damages and relief to which they are entitled.

629.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Massachusetts Subclass members have been damaged in an amount to be determined at trial.

## COUNT XXXVII

## BREACH OF EXPRESS WARRANTY
## UNDER MASSACHUSETTS LAW
### (Mass. Gen. Laws Ch. 106, § 2-313, 2A-103 and 2A-210 et seq.)
### (Alleged by Plaintiffs Alicia and David Maltz
### on behalf of the Massachusetts Express Warranty Subclass)

630.   Plaintiffs and the Massachusetts Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

631.   Plaintiffs bring this action on behalf of themselves and the Massachusetts Express Warranty Subclass.

632.   Plaintiffs Alicia and David Maltz presented their vehicle for repair and did not receive an effective repair, and they seek to represent a class of all persons who presented for repair at the time of any notice to the class.

633.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Alm Gl. Ch. 106 § 2-104(a), and "sellers" and "lessors" of motor vehicles under § 2-103(1)(d) and § 2A-103(1)(p).

634.   The Massachusetts Express Warranty Subclass members are and were at all relevant times "buyers" with respect to the Pacifica Hybrids under Alm Gl. Ch. 106 § 2-103(1)(a).

635.   The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Alm Gl. Ch. 106 §§2-105(1) and 2A-103(1)(h).

- 190 -

636.   Defendant provided Plaintiffs and members of the Massachusetts Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiffs and the Massachusetts Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

637.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiffs and members of the Massachusetts Express Warranty Subclass.

638.   Plaintiffs and members of the Massachusetts Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiffs and members of the Massachusetts Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because

- 191 -

Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

639.    Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Massachusetts Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace.

640.    Plaintiffs and members of the Massachusetts Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Massachusetts Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

- 192 -

641.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiffs and members of the Massachusetts Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

642.   The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

- 193 -

643.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Massachusetts Express Warranty Subclass. Among other things, Plaintiffs and members of the Massachusetts Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

644.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

645.   Defendant was provided notice by Plaintiffs of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties

- 194 -

and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

646.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

647.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Massachusetts Express Warranty Subclass have been damaged in an amount to be determined at trial.

648.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Massachusetts Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

649.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiffs and members of the Massachusetts Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Massachusetts Express Warranty Subclass of the purchase or lease price of all

- 195 -

Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**14.   Michigan**

**COUNT XXXVIII**

**BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY UNDER MICHIGAN LAW**
**(Mich. Comp. Laws § 440.314)**
**(Alleged by Plaintiff Huntington**
**on behalf of the Michigan Subclass)**

650.   Plaintiffs and the Michigan Subclass ("Plaintiffs," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

651.   FCA is a "merchant" of motor vehicles within the meaning of Mich. Comp. Laws § 440.2314(1).

652.   Under Michigan law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Mich. Comp. Laws § 440.2314.

653.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

- 196 -

loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

654.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Michigan Subclass members of the benefit of their bargain.

655.   Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Michigan Subclass members.

656.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

- 197 -

**COUNT XXXIX**

**BREACH OF EXPRESS WARRANTY**
**UNDER MICHIGAN LAW**
**(Mich. Comp. Laws § 440.2313, 440.2803, and 440.2860)**
**(Alleged by Plaintiff Huntington on behalf of the Michigan Subclass)**

657.   Plaintiff and the Michigan Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

658.   Plaintiff brings this claim on behalf of herself and Michigan Express Warranty Subclass.

659.   Plaintiff Huntington presented her vehicle for repair and did not receive an effective repair, and she seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

660.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Mich. Comp. Laws §440.2104(1), and "sellers" and "lessors" of motor vehicles under § 440.2103(1)(c) and § 440.2803(1)(p).

661.   The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 440.2803(1)(h).

662.   Defendant provided Plaintiff and members of the Michigan Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000

- 198 -

miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Michigan Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

663.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Michigan Express Warranty Subclass.

664.   Plaintiff and members of the Michigan Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Michigan Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids;

- 199 -

the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

665.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Michigan Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties unconscionable because Defendant knew that the Pacifica Hybrids werein such a manner to avoid paying the costs to repair and/or replace.

666.   Plaintiff and members of the Michigan Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Michigan Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

667.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of

the Michigan Express Warranty Subclass despite the existence of the Spontaneous

Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

668.   The warranties accompanying Pacifica Hybrids were procedurally and

substantively unconscionable under the Uniform Commercial Code § 2-302 and

other applicable state warranty laws because of the disparity in bargaining power

of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were

defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to

increase coverage of the warranties, their lack of knowledge, their lack of

meaningful alternatives, disparity in sophistication of the parties, unfair terms in

the warranty (including, but not limited to, exclusion of design defects that unfairly

favored Defendant particularly where there were Shutdown Risk Vehicle defects

known only to Defendant and the warranty unfairly shifted repair costs to

consumers when Pacifica Hybrids prematurely fail during their reasonably

expected life), absence of effective warranty competition, and the fact that Pacifica

Hybrids fail with substantially fewer miles of operation than competitive vehicles

from other manufacturers or models much like the Pacifica Hybrids without the

Spontaneous Shutdown Risk.

669.   The time limits contained in Defendant's warranty periods were also

unconscionable and inadequate to protect Plaintiff and members of the Michigan

Express Warranty Subclass. Among other things, Plaintiff and members of the

Michigan Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

670.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

671.   Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

- 202 -

672.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

673.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Michigan Express Warranty Subclass have been damaged in an amount to be determined at trial.

674.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Michigan Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

675.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Michigan Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Michigan Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

15.   **Minnesota**

## COUNT XL

### VIOLATION OF MINNESOTA PREVENTION
### OF CONSUMER FRAUD ACT
### (Minn. Stat. § 325F.68, *et seq.*)
### (Alleged by Plaintiff Niemioja on behalf of the Minnesota Subclass)

676.   Plaintiff and the Minnesota Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

677.   Plaintiff brings this action on behalf of herself and the Minnesota Subclass ("Plaintiffs," for the purposes of this claim).

678.   The Pacifica Hybrids constitute "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

679.   The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." Minn. Stat. § 325F.69(1). FCA participated in misleading, false, or deceptive acts that violated the Minnesota CFA.

680.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

- 204 -

681.   In the course of its business, FCA willfully failed to disclose and actively concealed the Spontaneous Shutdown Risk, and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Pacifica Hybrids.

682.   FCA was aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants. FCA concealed this information as well.

683.   By marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, FCA engaged in deceptive business practices in violation of the Minnesota CFA.

684.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Spontaneous Shutdown Risk. FCA compounded the deception by repeatedly asserting that Shutdown Risk Vehicles were safe, reliable, of high quality, and by claiming to be of a reputable

- 205 -

manufacturer that valued safety and stood behind its vehicles once they are on the road.

685.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance of the Pacifica Hybrids, the devaluing of safety and performance at FCA, and the true value of the Pacifica Hybrids.

686.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with an intent to mislead Plaintiffs.

687.   FCA knew or should have known that its conduct violated the Minnesota CFA.

688.   As alleged above, FCA made material statements about the safety and utility of the Pacifica Hybrids that were either false or misleading.

689.   FCA owed Plaintiffs a duty to disclose the true safety, performance, and reliability of the Pacifica Hybrids because FCA:

    a.   Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

    b.   Intentionally concealed the foregoing from Plaintiffs;

    c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

    d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

- 206 -

690.   FCA fraudulently concealed the Spontaneous Shutdown Risk and the true performance of the Pacifica Hybrids.

691.   The true performance and safety of the Pacifica Hybrids were material to Plaintiffs.

692.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Pacifica Hybrids either would have paid less for their vehicles or would not have purchased or leased them at all but for FCA's violations of the Minnesota CFA.

693.   FCA had an ongoing duty to all FCA customers to refrain from unfair and deceptive practices under the Minnesota CFA. All owners of the Pacifica Hybrids suffered ascertainable loss in the form of the diminished value of their vehicles as a result of FCA's deceptive and unfair acts and practices made in the course of FCA's business.

694.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

695.   As a direct and proximate result of FCA's violations of the Minnesota CFA, Plaintiffs have suffered injury-in-fact and/or actual damage.

696.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota CFA.

697.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that FCA's acts show deliberate disregard for the rights or safety of others.

**COUNT XLI**

**VIOLATION OF MINNESOTA UNIFORM
DECEPTIVE TRADE PRACTICES ACT
(Minn. Stat. § 325D.43-48, *et seq.*)
(Alleged by Plaintiff Niemioja on behalf of the Minnesota Subclass)**

698.    Plaintiff and the Minnesota Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

699.    Plaintiff brings this action on behalf of herself and the Minnesota Subclass ("Plaintiffs," for the purposes of this claim).

700.    The Minnesota Uniform Deceptive Trade Practices Act ("Minnesota UDTPA") prohibits deceptive trade practices, which occur when a person "(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and

- 208 -

"(9) advertises goods or services with intent not to sell them as advertised." Minn. Stat. § 325D.44. In the course of FCA's business, it systematically concealed the Spontaneous Shutdown Risk and engaged in deceptive practices by representing that the Pacifica Hybrids have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have; representing that the Pacifica Hybrids are of a particular standard, quality, or grade, or that goods are of a particular style or model, when they are of another; and advertising Pacifica Hybrids with intent not to sell them as advertised.

701.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

702.   In the course of its business, FCA willfully failed to disclose and actively concealed the Spontaneous Shutdown Risk, and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Pacifica Hybrids.

703.   FCA was aware that it valued profits over safety, and that it was manufacturing, selling, and distributing vehicles throughout the United States that

- 209 -

did not perform as advertised and jeopardized the safety of the vehicle's occupants. FCA concealed this information as well.

704.   By marketing its vehicles as safe, reliable, and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, FCA engaged in deceptive business practices in violation of the Minnesota UDTPA.

705.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Spontaneous Shutdown Risk. FCA compounded the deception by repeatedly asserting that Shutdown Risk Vehicles were safe, reliable, of high quality, and by claiming to be of a reputable manufacturer that valued safety and stood behind its vehicles once they are on the road.

706.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true performance of the Pacifica Hybrids, the devaluing of safety and performance at FCA, and the true value of the Pacifica Hybrids.

707.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with an intent to mislead Plaintiffs.

708.   FCA knew or should have known that its conduct violated the Minnesota UDTPA.

- 210 -

709.   As alleged above, FCA made material statements about the safety and utility of the Pacifica Hybrids that were either false or misleading.

710.   FCA owed Plaintiffs a duty to disclose the true safety, performance, and reliability of the Pacifica Hybrids, and the devaluing of safety and performance, because FCA:

     a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

     b.    Intentionally concealed the foregoing from Plaintiffs;

     c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

     d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

711.   FCA fraudulently concealed the Spontaneous Shutdown Risk and the true performance of the Pacifica Hybrids.

712.   The true performance and safety of the Pacifica Hybrids were material to Plaintiffs.

713.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Pacifica Hybrids either would have paid less for their vehicles or would not have purchased or leased them at all but for FCA's violations of the Minnesota UDTPA.

- 211 -

714.   FCA had an ongoing duty to all FCA customers to refrain from unfair and deceptive practices under the Minnesota UDTPA. All owners of the Pacifica Hybrids suffered ascertainable loss in the form of the diminished value of their vehicles as a result of FCA's deceptive and unfair acts and practices made in the course of FCA's business.

715.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

716.   As a direct and proximate result of FCA's violations of the Minnesota UDTPA, Plaintiffs suffered injury-in-fact and/or actual damages as alleged above.

717.   Pursuant to Minn. Stat. § 8.31(3a) and 325D.45, Plaintiffs seek actual damages, attorneys' fees, and any other just and proper relief available under the Minnesota UDTPA.

718.   Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the clear and convincing evidence that FCA's acts show deliberate disregard for the rights or safety of others.

**COUNT XLII**

**BREACH OF IMPLIED WARRANTY OF**
**MERCHANTABILITY UNDER MINNESOTA LAW**
**(Minn. Stat. § 336.2-314)**
**(Alleged by Plaintiff Niemioja on behalf of the Minnesota Subclass)**

719.   Plaintiff and the Minnesota Subclass reallege and incorporate by

reference all paragraphs as though fully set forth herein.

720.   Plaintiff brings this action on behalf of herself and the Minnesota

Subclass.

721.   FCA is a "merchant" of motor vehicles within the meaning of Minn.

Stat. § 336.2-104(1).

722.   Under Minnesota law, an implied warranty of merchantability

attaches to the Pacifica Hybrids. Minn. Stat. § 336.2-314.

723.   The Shutdown Risk Vehicles were not merchantable when sold or

leased because their transmission wiring harnesses are prone to short-circuit and

pose an unreasonable risk of spontaneous shutdown due to the Spontaneous

Shutdown Risk as described herein. Without limitation, the Shutdown Risk

Vehicles share a common defect in that they are all equipped with a faulty wiring

harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

loss of motive power, causing an unreasonable risk of death, serious bodily harm

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

- 213 -

when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

724.  FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the Minnesota Subclass members of the benefit of their bargain.

725.  Plaintiff and the other Minnesota Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Minnesota Subclass members.

726.  As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Minnesota Subclass members have been damaged in an amount to be determined at trial.

## COUNT XLIII

**BREACH OF EXPRESS WARRANTY
UNDER MINNESOTA LAW
(Minn. Stat. § § 336.2-313, and § 336.2A-210)
(Alleged by Plaintiff Niemioja on behalf of the
Minnesota Express Warranty Subclass)**

727.  Plaintiff and the Minnesota Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

728.  Plaintiff brings this action on behalf of herself and the Minnesota Express Warranty Subclass.

729.  Plaintiff Niemioja presented her vehicle for repair and did not receive an effective repair, and she seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

730.  FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Minn. Stat § 336.2-104(1) and a "seller" of motor vehicles under § 336.2-313(1)

731.  With respect to leases, FCA is and was at all relevant times a "lessor" with respect to motor vehicles under Minn. Stat § 336.2A-103(1)(p) and § 336.2A-210.

732.  The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Minn. Stat. § 336.2-105 and Minn. Stat § 336.2A-103(1)(h)

733.  FCA is and was at all relevant times a merchant with respect to motor vehicles.

734.  Defendant provided Plaintiff and members of the Minnesota Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000

- 215 -

miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Minnesota Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

735.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Minnesota Express Warranty Subclass.

736.   Plaintiff and members of the Minnesota Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Minnesota Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids;

- 216 -

the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

737.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Minnesota Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties unconscionable because Defendant knew that the Pacifica Hybrids werein such a manner to avoid paying the costs to repair and/or replace.

738.   Plaintiff and members of the Minnesota Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Minnesota Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

739.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of

- 217 -

the Minnesota Express Warranty Subclass despite the existence of the Spontaneous

Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

740. The warranties accompanying Pacifica Hybrids were procedurally and

substantively unconscionable under the Uniform Commercial Code § 2-302 and

other applicable state warranty laws because of the disparity in bargaining power

of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were

defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to

increase coverage of the warranties, their lack of knowledge, their lack of

meaningful alternatives, disparity in sophistication of the parties, unfair terms in

the warranty (including, but not limited to, exclusion of design defects that unfairly

favored Defendant particularly where there were Shutdown Risk Vehicle defects

known only to Defendant and the warranty unfairly shifted repair costs to

consumers when Pacifica Hybrids prematurely fail during their reasonably

expected life), absence of effective warranty competition, and the fact that Pacifica

Hybrids fail with substantially fewer miles of operation than competitive vehicles

from other manufacturers or models much like the Pacifica Hybrids without the

Spontaneous Shutdown Risk.

741. The time limits contained in Defendant's warranty periods were also

unconscionable and inadequate to protect Plaintiff and members of the Minnesota

Express Warranty Subclass. Among other things, Plaintiff and members of the

Minnesota Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

742. Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

743. Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

744.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

745.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Minnesota Express Warranty Subclass have been damaged in an amount to be determined at trial.

746.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Minnesota Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

747.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Minnesota Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Minnesota Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**16.    Missouri**

## COUNT XLIV

### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT
**(Mo. Rev. Stat. § 407.010, *et seq.*)**
**(Alleged by Plaintiff Perry on behalf of the Missouri Subclass)**

748.    Plaintiff and the Missouri Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

749.    Plaintiff brings this action on behalf of himself and the Missouri Subclass ("Plaintiffs," for the purposes of this claim).

750.    Plaintiffs are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

751.    The Missouri Merchandising Practices Act ("Missouri MPA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, misrepresentation, unfair practice, or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise." Mo. Rev. Stat. § 407.020.

752.    In the course of its business, FCA willfully failed to disclose and actively concealed the Spontaneous Shutdown Risk, and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact

- 221 -

with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Pacifica Hybrids.

753.   FCA was aware that it was manufacturing, selling, and distributing vehicles throughout the United States that did not perform as advertised and jeopardized the safety of the vehicle's occupants, surrounding vehicles and property, and bystanders. FCA concealed this information as well.

754.   By marketing its vehicles as safe, reliable, and of high quality, FCA engaged in deceptive business practices in violation of the Missouri MPA.

755.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the Spontaneous Shutdown Risk. FCA compounded the deception by repeatedly asserting that the Shutdown Risk Vehicles were safe, reliable, and of high quality.

756.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, performance and value of the Pacifica Hybrids.

757.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with an intent to mislead Plaintiffs.

758.   FCA knew or should have known that its conduct violated the Missouri MPA.

759.    As alleged above, FCA made material statements about the safety and utility of the Pacifica Hybrids that were either false or misleading.

760.    FCA owed Plaintiffs a duty to disclose the true safety, performance, and reliability of the Pacifica Hybrids because FCA:

    a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

    b.    Intentionally concealed the foregoing from Plaintiffs;

    c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

    d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

761.    FCA fraudulently concealed the Spontaneous Shutdown Risk and the true performance of the Pacifica Hybrids.

762.    The true performance and safety of the Pacifica Hybrids were material to Plaintiffs.

763.    Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose material information. Plaintiffs who purchased the Pacifica Hybrids either would have paid less for their vehicles or would not have purchased or leased them at all but for FCA's violations of the Missouri MPA.

- 223 -

764.   FCA had an ongoing duty to all FCA customers to refrain from unfair and deceptive practices under the Missouri MPA. All owners of the Pacifica Hybrids suffered ascertainable loss in the form of the diminished value of their vehicles as a result of FCA's deceptive and unfair acts and practices made in the course of FCA's business.

765.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

766.   As a direct and proximate result of FCA's violations of the Missouri MPA, Plaintiffs have suffered injury-in-fact and/or actual damage.

767.   FCA is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and punitive damages, as well as injunctive relief enjoining FCA's unfair and deceptive practices, and any other just and proper relief under Mo. Rev. Stat. § 407.025.

## COUNT XLV

**BREACH OF EXPRESS WARRANTY
UNDER MISSOURI LAW
(Mo. Stat. § 400.2-313, and § 400.2A-210)
(Alleged by Plaintiff Perry on behalf of the
Missouri Express Warranty Subclass)**

768.   Plaintiff and the Missouri Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

- 224 -

769.   Plaintiff brings this action on behalf of himself and the Missouri Express Warranty Subclass.

770.   Plaintiff Perry presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

771.   FCA is and was at all relevant times a "merchant" with respect to motor vehicles under Mo. Stat. § 400.2-104(1) and a "seller" of motor vehicles under § 400.2-313.

772.   With respect to leases, FCA is and was at all relevant times a "lessor" with respect to motor vehicles under Mo. Stat. § 400.2A-103(1)(p) and § 400.2A-210.

773.   The Affected Vehicles are and were at all relevant times "goods" within the meaning of Mo. Stat. § 400.2-105(1) and Mo. Stat. § 400.2A-103(1)(h).

774.   Defendant provided Plaintiffs and members of the Missouri Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiffs and the Missouri Express

- 225 -

Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

775. Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiffs and members of the Missouri Express Warranty Subclass.

776. Plaintiffs and members of the Missouri Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiffs and members of the Missouri Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

- 226 -

777. Defendant's warranties formed a basis of the bargain that was reached when Plaintiffs and members of the Missouri Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties unconscionable because Defendant knew that the Pacifica Hybrids werein such a manner to avoid paying the costs to repair and/or replace.

778. Plaintiffs and members of the Missouri Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiffs and members of the Missouri Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

779. On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiffs and members of the Missouri Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

780. The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

781. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiffs and members of the Missouri Express Warranty Subclass. Among other things, Plaintiffs and members of the Missouri Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining

- 228 -

power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

782.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

783.   Defendant was provided notice by Plaintiffs of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

784.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

- 229 -

785.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiffs and members of the Missouri Express Warranty Subclass have been damaged in an amount to be determined at trial.

786.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiffs and members of the Missouri Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

787.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiffs and members of the Missouri Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and members of the Missouri Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

17.   **New Hampshire**

## COUNT XLVI

**VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT**
**(N.H. Rev. Stat. § 358-A:1, *et seq*.)**
**(Alleged by Plaintiffs Bergantino and Nicole and Stephen Costa**
**on behalf of the New Hampshire Subclass)**

788.   Plaintiffs and the New Hampshire Subclass ("Plaintiffs," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

789.   FCA and Plaintiffs are "persons" under the New Hampshire Consumer Protection Act ("New Hampshire CPA"), N.H. Rev. Stat. § 358-A:1.

790.   FCA's actions as set forth herein occurred in the conduct of trade or commerce as defined under N.H. Rev. Stat. § 358-A:1.

791.   The New Hampshire CPA prohibits a person, in the conduct of any trade or commerce, from using "any unfair or deceptive act or practice," including "but … not limited to, the following: … (V) Representing that goods or services have … characteristics, … uses, benefits, or quantities that they do not have;" "(VII) Representing that goods or services are of a particular standard, quality, or grade, … if they are of another;" and "(IX) Advertising goods or services with intent not to sell them as advertised." N.H. Rev. Stat. § 358-A:2.

792.   FCA participated in unfair or deceptive acts or practices that violated the New Hampshire CPA as described above and below. By devaluing safety and

- 231 -

concealing the Spontaneous Shutdown Risk, FCA engaged in deceptive business practices prohibited by the CPA, including representing that Pacifica Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Pacifica Hybrids are of a particular standard, quality, and grade when they are not; advertising Pacifica Hybrids with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Pacifica Hybrids has been supplied in accordance with a previous representation when it has not; and engaging in other unconscionable, false, misleading, or deceptive acts or practices in the conduct of trade or commerce.

793.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

794.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

795.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

796.   FCA knew or should have known that its conduct violated the New Hampshire CPA.

797.    As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

798.    FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

     a.    Possessed exclusive knowledge about the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles;

     b.    Intentionally concealed the foregoing from Plaintiffs;

     c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

     d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

799.    Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

800.    FCA's concealment of the defect in the Pacifica Hybrids was material to Plaintiffs.

- 233 -

801.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

802.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

803.   Because FCA's willful conduct caused injury to Plaintiffs' property through violations of the New Hampshire CPA, Plaintiffs seek recovery of actual damages or $1,000, whichever is greater, treble damages, costs and reasonable attorneys' fees, an order enjoining FCA's unfair and/or deceptive acts and practices, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

**COUNT XLVII**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER NEW HAMPSHIRE LAW
(N.H. Rev. Stat. § 382-A:2-314)
(Alleged by Plaintiffs Bergantino and Nicole and Stephen Costa
on behalf of the New Hampshire Subclass)**

804.   Plaintiffs and the New Hampshire Subclass ("Plaintiffs," for the

purposes of this claim) reallege and incorporate by reference all paragraphs as

though fully set forth herein.

805.   FCA is a "merchant" of motor vehicles within the meaning of N.H.

N.H. Rev. Stat. § 382-A:2-104(1).

806.   Under New Hampshire law, an implied warranty of merchantability

attaches to the Pacifica Hybrids. N.H. Rev. Stat. § 382-A:2-314.

807.   The Shutdown Risk Vehicles were not merchantable when sold or

leased because their transmission wiring harnesses are prone to short-circuit and

pose an unreasonable risk of spontaneous shutdown due to the Spontaneous

Shutdown Risk as described herein. Without limitation, the Shutdown Risk

Vehicles share a common defect in that they are all equipped with a faulty wiring

harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

loss of motive power, causing an unreasonable risk of death, serious bodily harm

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

- 235 -

when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

808. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the New Hampshire Subclass members of the benefit of their bargain.

809. Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and New Hampshire Subclass members.

810. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

### 18. North Carolina

## COUNT XLVIII

### VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE ACTS AND PRACTICES ACT
### (N.C. Gen. State §§ 75-1.1, *et seq.*)
### (Alleged by Plaintiff Fong on behalf of the North Carolina Subclass)

811. Plaintiff brings this action on behalf of himself and the North Carolina Subclass ("Plaintiffs," for the purposes of this claim).

- 236 -

812.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

813.   FCA engaged in "commerce" within the meaning of N.C. GEN. STAT. § 75- 1.1(b).

814.   The North Carolina UDTPA broadly prohibits "unfair or deceptive acts or practices in or affecting commerce." N.C. GEN. STAT. § 75-1.1(a). In the course of FCA's business, it willfully failed to disclose and actively concealed that the Spontaneous Shutdown Risk. Accordingly, FCA engaged in unfair and deceptive trade practices because it (1) had the capacity or tendency to deceive, (2) offends public policy, (3) is immoral, unethical, oppressive or unscrupulous, or (4) causes substantial injury to consumers.

815.   In purchasing or leasing the Pacifica Hybrids, Plaintiffs were deceived by FCA's failure to disclose the Spontaneous Shutdown Risk.

816.   Plaintiffs reasonably relied upon FCA's material omissions and false misrepresentations. They had no way of knowing that FCA's representations were false and gravely misleading. As alleged herein, FCA engaged in extremely sophisticated methods of deception. Plaintiffs did not, and could not, unravel FCA's deception on their own.

817.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

- 237 -

818.   FCA intentionally and knowingly failed to disclose and

misrepresented material facts regarding the Pacifica Hybrids with an intent to

mislead Plaintiffs.

819.   FCA knew or should have known that its conduct violated the North

Carolina UDTPA.

820.   FCA owed Plaintiffs a duty to disclose the truth about its Pacifica

Hybrids because FCA:

      a.     Possessed exclusive knowledge of the Spontaneous
             Shutdown Risk;

      b.     Intentionally concealed the foregoing from Plaintiffs;
             and/or

      c.     Made incomplete representations while purposefully
             withholding material facts from Plaintiffs that
             contradicted these representations; and/or

      d.     Had duties under the TREAD Act and related regulations
             to disclose and remedy the defects well prior to the issue
             of its confounding recall notice in 2023.

821.   FCA had a duty to disclose the Spontaneous Shutdown Risk, because,

having volunteered to provide information to Plaintiffs, FCA had the duty to

disclose not just the partial truth, but the entire truth. Further, Plaintiffs relied on

FCA's material omissions and representations that the Pacifica Hybrids they were

purchasing safe and free from defects.

822.   Plaintiffs were unaware of the omitted material facts referenced

herein, and they would not have acted as they did if they had known of the

concealed and/or suppressed facts, in that they would not have purchased the Pacifica Hybrids manufactured by FCA, would have paid less, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' actions were justified. FCA was in exclusive control of the material facts, and such facts were not generally known to the public or Plaintiffs.

823.   FCA's conduct proximately caused injuries to Plaintiffs.

824.   Plaintiffs were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of FCA's conduct in that Plaintiffs overpaid for their Pacifica Hybrids and did not receive the benefit of their bargain, and their Pacifica Hybrids have suffered a diminution in value. These injuries are the direct and natural consequence of FCA's misrepresentations and omissions.

825.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. FCA's unlawful acts and practices complained of herein affect the public interest.

826.   Plaintiffs seek an order for treble their actual damages, costs of Court, attorneys' fees, and any other just and proper relief available under the North Carolina Act, N.C. GEN. STAT. § 75-16.

827.   Plaintiffs also seek punitive damages against FCA because FCA's conduct was malicious, willful, reckless, wanton, fraudulent and in bad faith.

- 239 -

## COUNT XLIX

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER NORTH CAROLINA LAW
### (N.C. Gen. Stat. § 25-2-314)
### (Alleged by Plaintiff Fong on Behalf of the North Carolina Subclass)

828.   Plaintiff and the North Carolina Subclass ("Plaintiffs," for the
purposes of this claim) reallege and incorporate by reference all paragraphs as
though fully set forth herein.

829.   FCA is a "merchant" of the Pacifica Hybrids within the meaning of
N.C. Gen. Stat. § 25-2-314, and the Pacifica Hybrids are "goods" under the statute.

830.   Under North Carolina law, an implied warranty of merchantability
attaches to the Pacifica Hybrids.

831.   The Shutdown Risk Vehicles were not merchantable when sold or
leased because their transmission wiring harnesses are prone to short-circuit and
pose an unreasonable risk of spontaneous shutdown due to the Spontaneous
Shutdown Risk as described herein. Without limitation, the Shutdown Risk
Vehicles share a common defect in that they are all equipped with a faulty wiring
harness that makes the vehicles susceptible to a risk of spontaneous shutdown and
loss of motive power, causing an unreasonable risk of death, serious bodily harm
and/or property damage to lessees and owners of the Shutdown Risk Vehicles as
well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

- 240 -

when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

832.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the North Carolina Subclass members of the benefit of their bargain.

833.   Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and North Carolina Subclass members.

834.   It was reasonable to expect that Plaintiffs would use, consume or be affected by the Pacifica Hybrids, and they are therefore entitled to the protections of the implied warranty of merchantability under N.C. Gen. Stat. § 25-2-314.

835.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiff's counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

- 241 -

836.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

### 19.   Ohio

### COUNT L

### IMPLIED WARRANTY IN TORT UNDER OHIO LAW
**(Alleged by Plaintiffs Gadomski Littleton and Huntington
on behalf of the Ohio Subclass)**

837.   Plaintiffs bring this claim on behalf of themselves and the Ohio Subclass ("Plaintiffs," for the purposes of this claim)

838.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

839.   The Pacifica Hybrids, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

840.   The Shutdown Risk Vehicles are inherently defective because their transmission wiring harnesses are prone to short-circuit, and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to

- 242 -

lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

841. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Ohio Subclass members of the benefit of their bargain.

842. The design, manufacturing, and/or assembly defect existed at the time the Pacifica Hybrids containing the defective hybrid propulsion systems left the possession or control of FCA.

843. Based upon the dangerous product defect, FCA failed to meet the expectations of a reasonable consumer. The Pacifica Hybrids failed their ordinary, intended use because the hybrid propulsion systems in the vehicles do not function as a reasonable consumer would expect. Moreover, the defect presents a serious danger to Plaintiffs that cannot be eliminated without significant cost and extreme inconvenience.

844. FCA was provided notice of the Spontaneous Shutdown Risk and its consequences by pre-sale investigation, complaints made to NHTSA, and internal

investigations before or within a reasonable amount of time after FCA issued the recall and the allegations of the defect became public.

845.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be proven at trial.

**20.   Oregon**

**COUNT LI**

**VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT**
**(Or. Rev. Stat. §§ 646.605, *et seq.*)**
**(Alleged by Plaintiff Christie on behalf of the Oregon Subclass)**

846.   Plaintiff brings this claim on behalf of themselves and the Oregon Subclass ("Subclass," for the purposes of this claim).

847.   Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

848.   Plaintiff brings this claim on behalf of himself and the Oregon Subclass.

849.   FCA is a person within the meaning of Or. Rev. Stat. § 646.605(4).

850.   The Pacifica Hybrids at issue are "goods" obtained primarily for personal family or household purposes within the meaning of Or. Rev. Stat. § 646.605(6).

- 244 -

851.   The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits a person from, in the course of the person's business, doing any of the following: "(e) Represent[ing] that … goods … have … characteristics … uses, benefits, … or qualities that they do not have; (g) Represent[ing] that … goods … are of a particular standard [or] quality … if they are of another; (i) Advertis[ing] … goods or services with intent not to provide them as advertised;" and "(u) engag[ing] in any other unfair or deceptive conduct in trade or commerce." Or. Rev. Stat. § 646.608(1).

852.   FCA engaged in deceptive trade practices that violated the Oregon UTPA, including: knowingly representing that Pacifica Hybrids have uses and benefits which they do not have; representing that Pacifica Hybrids are of a particular standard, quality, and grade when they are not; advertising Pacifica Hybrids with the intent not to sell or lease them as advertised; representing that the subject of a transaction involving Pacifica Hybrids has been supplied in accordance with a previous representation when it has not; knowingly making other false representations in a transaction; and concealing the known Spontaneous Shutdown Risk in Plaintiff's and Subclass members' vehicles.

853.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

- 245 -

854.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

855.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Oregon UTPA.

856.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

857.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Subclass, about the true safety and reliability of their vehicles.

858.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

859.   FCA knew or should have known that its conduct violated the Oregon UTPA.

860.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

861.   FCA owed Plaintiff a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

    a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

    b.    Intentionally concealed the foregoing from Plaintiff;

    c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiff that contradicted these representations; and/or

    d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

862.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiff and Subclass members were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they either would not have bought their vehicles or would have paid less for them.

- 247 -

863.   FCA's concealment of the defect in the Pacifica Hybrids was material to Plaintiff and Subclass members.

864.   Plaintiff and Subclass members suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

865.   FCA's violations present a continuing risk to Plaintiff as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

866.   As a direct and proximate result of FCA's violations of the Oregon UTPA, Plaintiff and Subclass members have suffered injury-in-fact and/or actual damage as alleged above.

867.   Plaintiff is entitled to recover the greater of actual damages or $200 pursuant to Or. Rev. Stat. § 646.638(1). Plaintiff is also entitled to punitive damages because FCA engaged in conduct amounting to a particularly aggravated, deliberate disregard of the rights of others.

## COUNT LII

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER OREGON LAW
### (Or. Rev. Stat. §72.3140)
### (Alleged by Plaintiff Christie on behalf of the Oregon Subclass)

868.   Plaintiff and the Oregon Subclass ("Subclass," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

869.   Plaintiff brings this claim on behalf of himself and the Oregon Subclass.

870.   FCA is a "merchant" within the meaning of Or. Rev. Stat. § 72.1040(1), and "seller" of motor vehicles within the meaning of Or. Rev. Stat. § 72.1030(1)(d).

871.   The Pacifica Hybrids are "goods" under Or. Rev. Stat. § 72.5010 (see Or. Rev. Stat. § 72.1030(2)(m)). Under Or. Rev. Stat. § 72.3140, an implied warranty of merchantability attaches to the Pacifica Hybrids.

872.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit, and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

- 249 -

loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

873.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the Oregon Subclass members of the benefit of their bargain.

874.   Plaintiff and Oregon Subclass members were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Oregon Subclass members.

875.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of the initial complaints, and by consumer complaints to NHTSA regarding the defect that is the subject of this. In addition, Plaintiffs' counsel sent notice letters to FCA to the extent such notice is required. FCA has failed to remedy the Spontaneous Shutdown Risk within the requisite time period. Plaintiffs seek all damages and relief to which they are entitled.

876. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the Oregon Subclass members have been damaged in an amount to be determined at trial.

## COUNT LIII

### BREACH OF EXPRESS WARRANTY
### UNDER OREGON LAW
### (Or. Rev. Stat. §§ 72.3130 and § 72A.2100)
### (Alleged by Plaintiff Christie on behalf of the
### Oregon Express Warranty Subclass)

877. Plaintiff and the Oregon Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

878. Plaintiff brings this claim on behalf of themselves and the Oregon Express Warranty Subclass.

879. Plaintiff Christie presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

880. With respect to leases, FCA is and was at all relevant times a "lessor" with respect to motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p) and § 72A.2100.

881. The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. § 72.1050(1) and Or. Rev. Stat. § 72A.1030(1)(h).

- 251 -

882.   Defendant provided Plaintiff and members of the Oregon Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Oregon Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

883.   Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Oregon Express Warranty Subclass.

884.   Plaintiff and members of the Oregon Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Oregon Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the

- 252 -

other members of the Express Warranty Subclass are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

885.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Oregon Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace.

886.   Plaintiff and members of the Oregon Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Oregon Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

887.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Oregon Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

888.   The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

889.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Oregon Express Warranty Subclass. Among other things, Plaintiff and members of the Oregon Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

890.   Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

891.   Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties

- 255 -

and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

892.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

893.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Oregon Express Warranty Subclass have been damaged in an amount to be determined at trial.

894.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Oregon Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

895.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Oregon Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Oregon Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

- 256 -

21.    **Pennsylvania**

### COUNT LIV

**VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION LAW
(73 P.S. § 201-1, *et seq*.)
(Alleged by Plaintiff Ohodnicki on behalf of the Pennsylvania Subclass)**

896.    Plaintiff and the Pennsylvania Subclass ("Plaintiffs," for the purposes
of this claim) reallege and incorporate by reference all paragraphs as though fully
set forth herein.

897.    Plaintiff brings this claim on behalf of himself and the Pennsylvania
Subclass.

898.    Plaintiff purchased or leased their Pacifica Hybrids primarily for
personal, family or household purposes within the meaning of 73 P.S. § 201-9.2.

899.    All of the acts complained of herein were perpetrated by FCA in the
course of trade or commerce within the meaning of 73 P.S. § 201-2(3).

900.    The Pennsylvania Unfair Trade Practices and Consumer Protection
Law ("Pennsylvania CPL") prohibits unfair or deceptive acts or practices,
including: (i) "Representing that goods or services have … characteristics, ….
Benefits or qualities that they do not have;" (ii) "Representing that goods or
services are of a particular standard, quality or grade … if they are of another;" (iii)
"Advertising goods or services with intent not to sell them as advertised;" and (iv)

- 257 -

"Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

901.   FCA engaged in unlawful trade practices, including representing that Pacifica Hybrids have characteristics, uses, benefits, and qualities which they do not have; representing that Pacifica Hybrids are of a particular standard and quality when they are not; advertising Shutdown Risk Vehicles with the intent not to sell them as advertised; and engaging in other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

902.   In purchasing or leasing the Pacifica Hybrids, Plaintiff and Subclass members were deceived by FCA's failure to disclose the Spontaneous Shutdown Risk.

903.   Plaintiff and Subclass members reasonably relied upon FCA's material omissions and false misrepresentations. They had no way of knowing that FCA's representations were false and gravely misleading. Plaintiff and Subclass members did not, and could not, unravel FCA's deception on their own.

904.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers.

905.   FCA intentionally and knowingly failed to disclose and misrepresented material facts regarding the Pacifica Hybrids with an intent to mislead Plaintiff and Subclass members.

- 258 -

906.   FCA knew or should have known that its conduct violated the Pennsylvania CPL.

907.   FCA owed Plaintiff a duty to disclose the truth about its Pacifica Hybrids because FCA:

      a.     Possessed exclusive knowledge of the Spontaneous Shutdown Risk;

      b.     Intentionally concealed the foregoing from Plaintiff;

      c.     Made incomplete representations while purposefully withholding material facts from Plaintiff that contradicted these representations; and/or

      d.     Had duties under the TREAD Act and related regulations to disclose and remedy the defects.

908.   FCA had a duty to disclose the Spontaneous Shutdown Risk, because, having volunteered to provide information to Plaintiffs, FCA had the duty to disclose not just the partial truth, but the entire truth. Further, Plaintiff relied on FCA's material omissions and representations that the Pacifica Hybrids they were purchasing safe and free from serious safety defects.

909.   Plaintiff were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Pacifica Hybrids manufactured by FCA, would have paid less, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff's

actions were justified. FCA was in exclusive control of the material facts, and such facts were not generally known to the public or Plaintiff.

910.   FCA's conduct proximately caused injuries to Plaintiff and Subclass members.

911.   Plaintiffs were injured and suffered ascertainable loss, injury-in-fact, and/or actual damage as a proximate result of FCA's conduct in that Plaintiff and Subclass Members overpaid for their Pacifica Hybrids and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of FCA's misrepresentations and omissions.

912.   FCA is liable to Plaintiff for treble their actual damages or $100, whichever is greater, and attorneys' fees and costs. 73 P.S. § 201-9.2(a). Plaintiff is also entitled to an award of punitive damages given that FCA's conduct was malicious, wanton, willful, oppressive, or exhibited a reckless indifference to the rights of others.

## COUNT LV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER PENNSYLVANIA LAW
### (13 Pa. Cons. Stat. Ann. § 2314)
### (Alleged by Plaintiff Ohodnicki on behalf of the Pennsylvania Subclass)

913.   Plaintiff brings this claim on behalf of himself and the Pennsylvania Subclass ("Subclass," for the purposes of this claim).

- 260 -

914.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

915.    FCA is a "merchant" with respect to motor vehicles.

916.    Under Pennsylvania law, an implied warranty of merchantability attaches to the Pacifica Hybrids.

917.    The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

918.    FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This

- 261 -

defect has deprived Plaintiff and the Pennsylvania Subclass members of the benefit of their bargain.

919.   Plaintiff and Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Pennsylvania Subclass members.

920.   It was reasonable to expect that Plaintiff would use, consume or be affected by the Pacifica Hybrids.

921.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiff's counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

922.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and Subclass members have been damaged in an amount to be determined at trial.

## COUNT LVI

## BREACH OF EXPRESS WARRANTY
## UNDER PENNSYLVANIA LAW
### (13 Pa. Cons. Stat. Ann. § 2313 and 2A103)
### (Alleged by Plaintiff Ohodnicki on behalf of
### the Pennsylvania Express Warranty Subclass)

923.   Plaintiff brings this claim on behalf of himself and the Pennsylvania Express Warranty Subclass ("Subclass," for the purposes of this claim).

924.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

925.   Plaintiff Ohodnicki presented his vehicle for repair and did not receive an effective repair, and seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

926.   Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(a), and "sellers" and "lessors" of motor vehicles under § 2103(a) and § 2A103(1)(p).

927.   The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

928.   Defendant provided Plaintiff and members of the Pennsylvania Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited

- 263 -

Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Pennsylvania Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

929. Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Pennsylvania Express Warranty Subclass.

930. Plaintiff and members of the Pennsylvania Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Pennsylvania Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids;

- 264 -

the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

931.   Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Pennsylvania Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace.

932.   Plaintiff and members of the Pennsylvania Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Pennsylvania Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

933.   On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Pennsylvania Express Warranty Subclass despite the existence of the

Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

934.   The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

935.   The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Pennsylvania Express Warranty Subclass. Among other things, Plaintiff and

- 266 -

members of the Pennsylvania Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

936. Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

937. Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

- 267 -

938.   Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

939.   As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Pennsylvania Express Warranty Subclass have been damaged in an amount to be determined at trial.

940.   In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Pennsylvania Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

941.   Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Pennsylvania Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Pennsylvania Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

- 268 -

22.   **Rhode Island**

## COUNT LVII

**VIOLATION OF THE RHODE ISLAND UNFAIR TRADE PRACTICES
AND CONSUMER PROTECTION ACT RHODE ISLAND LAW
(R.I. Gen. Laws § 6-13.1, *et seq.*)
(Alleged by Plaintiff Bartek on behalf of the Rhode Island Subclass)**

942.   Plaintiff brings this claim on behalf of herself and the Rhode Island

Subclass ("Plaintiffs," for the purposes of this claim).

943.  Plaintiffs reallege and incorporate by reference all paragraphs as

though fully set forth herein.

944.   Plaintiffs are persons who purchased or leased one or more Pacifica

Hybrids primarily for personal, family, or household purposes within the meaning

of R.I. Gen Laws § 6-13.1-5.2(a).

945.   Rhode Island's Unfair Trade Practices and Consumer Protection Act

("Rhode Island CPA") prohibits "unfair or deceptive acts or practices in the

conduct of any trade or commerce" including: "(v) Representing that goods or

services have sponsorship, approval, characteristics, ingredients, uses, benefits, or

quantities that they do not have"; "(vii) Representing that goods or services are of a

particular standard, quality, or grade …, if they are of another"; "(ix) Advertising

goods or services with intent not to sell them as advertised"; "(xii) Engaging in any

other conduct that similarly creates a likelihood of confusion or of

misunderstanding"; "(xiii) Engaging in any act or practice that is unfair or

- 269 -

deceptive to the consumer"; and "(xiv) Using any other methods, acts or practices which mislead or deceive members of the public in a material respect." R.I. Gen Laws § 6-13.1-1(6)

946.   In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

947.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Rhode Island CPA.

948.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

949.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

950.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

951.   FCA knew or should have known that its conduct violated the Rhode Island CPA.

952.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

953.   FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

   a.   Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

   b.   Intentionally concealed the foregoing from Plaintiffs;

   c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

   d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

954.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of

the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

955.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs.

956.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

957.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

958.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

959.   Plaintiffs are entitled to recover the greater of actual damages or $200 pursuant to R.I. Gen Laws § 6-13.1-5.2(a). Plaintiffs also seek punitive damages in

the discretion of the Court because of FCA's egregious disregard of consumer and public safety and its long-running concealment of the serious safety defect and its horrific consequences.

### COUNT LVIII

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER RHODE ISLAND LAW
(R.I. Gen Laws § 6A-2-314)
(Alleged by Plaintiff Bartek on behalf of the Rhode Island Subclass)**

960.    Plaintiff and the Rhode Island Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

961.    Plaintiff brings this claim on behalf of herself and the Rhode Island Subclass.

962.    FCA is a "merchant" of the Pacifica Hybrids within the meaning of R.I. Gen Laws § 6A-2-104, and "seller" within the meaning of R.I. Gen Laws § 6A-2-103(4), and the Pacifica Hybrids are "goods" under R.I. Gen Laws. § 6A-2-105(1).

963.    Under Rhode Island law, an implied warranty of merchantability attaches to the Pacifica Hybrids. R.I. Gen Laws § 6A-2-314).

964.    The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit, and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk

- 273 -

Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

965.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the Rhode Island Subclass members of the benefit of their bargain.

966.   Plaintiff and the other Rhode Island Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiff and Rhode Island Subclass members.

967.   It was reasonable to expect that Plaintiff and the Rhode Island Subclass members would use, consume or be affected by the Pacifica Hybrids, and they are therefore entitled to the protections of the implied warranty of merchantability under R.I. Gen Laws § 6a-2-318.

968.   FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiff's counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

969.   As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiff and the other Rhode Island Subclass members have been damaged in an amount to be determined at trial.

**23.   South Carolina**

**COUNT LIX**

**VIOLATIONS OF THE SOUTH CAROLINA REGULATION OF MANUFACTURERS, DISTRIBUTORS, AND DEALERS ACT**
**(S.C. Code Ann. § 56-15-10, *et seq.*)**
**(Alleged by Plaintiff Carbajales-Dale**
**on behalf of the South Carolina Subclass)**

970.   Plaintiffs and the South Carolina Subclass ("Plaintiffs," for the purposes of this claim) reallege and incorporate by reference all paragraphs as though fully set forth herein.

971.   Plaintiffs bring this claim on behalf of themselves and the South Carolina Subclass.

011086-11/2143139 V1

972.   FCA was a "manufacturer" within the meaning of S.C. Code Ann.

§ 56-15-10, as it was engaged in the business of manufacturing or assembling new

and unused motor vehicles.

973.   FCA committed unfair or deceptive acts or practices that violated the

South Carolina Regulation of Manufacturers, Distributors, and Dealers Act

("Dealers Act"), S.C. Code Ann. § 56-15-30.

974.   FCA engaged in actions which were arbitrary, in bad faith,

unconscionable, and which caused damage to Plaintiffs and to the public.

975.   FCA's bad faith and unconscionable actions include, but are not

limited to: (1) representing that the Pacifica Hybrids have characteristics, uses,

benefits, and qualities which they do not have, (2) representing that Pacifica

Hybrids are of a particular standard, quality, and grade when they are not,

(3) advertising Pacifica Hybrids with the intent not to sell them as advertised,

(4) representing that a transaction involving Pacifica Hybrids confers or involves

rights, remedies, and obligations which it does not, and (5) representing that the

subject of a transaction involving Pacifica Hybrids has been supplied in accordance

with a previous representation when it has not.

976.   In the course of its business, FCA concealed the Spontaneous

Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the

Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure

- 276 -

their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

977.   By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA violated the Dealers Act.

978.   In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

979.   FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

980.   FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

981.   FCA knew or should have known that its conduct violated the Dealers Act.

982.   As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

983.   FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

a.   Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

b.   Intentionally concealed the foregoing from Plaintiffs;

c.   Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

d.   Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

984.   Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

985.   FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs.

- 278 -

986.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

987.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing 's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

988.   FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

989.   Plaintiffs bring this action pursuant to S.C. Code Ann. § 56-15-110(2), as the action is one of common or general interest to many persons and the parties are too numerous to bring them all before the court.

990.   Plaintiffs are entitled to double their actual damages, the cost of the suit, and attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. Plaintiffs also seek treble damages because FCA acted maliciously.

**COUNT LX**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER SOUTH CAROLINA LAW
(S.C. Code § 36-2-314)
(Alleged by Plaintiff Carbajales-Dale
on behalf of the South Carolina Subclass)**

991.   Plaintiffs and the South Carolina Subclass bring this claim on behalf of themselves and the South Carolina Subclass ("Plaintiffs," for the purposes of this claim).

992.   Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

993.   FCA was a merchant with respect to motor vehicles under S.C. Code § 36-2-314.

994.   Under South Carolina law, an implied warranty of merchantability attaches to the Pacifica Hybrids. S.C. Code § 36-2-314.

995.   The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm

- 280 -

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

996.   FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the South Carolina Subclass members of the benefit of their bargain.

997.   Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and South Carolina Subclass members.

998.   It was reasonable to expect that Plaintiffs would use, consume or be affected by the Pacifica Hybrids,

999.   FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1000. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

**24.   Texas**

### COUNT LXI

**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES CONSUMER PROTECTION ACT ("DTPA")**
**(Tex. Bus. & Com. Code §§ 17.41, *et seq.*)**
**(Alleged by Plaintiff Sheehan**
**on behalf of the Texas Subclass)**

1001. Plaintiff brings this claim on behalf of themselves and the Texas Subclass ("Plaintiffs," for the purposes of this claim).

1002. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1003. Plaintiff brings this claim under the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), which makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46.

1004. Plaintiffs are "consumers" within the meaning of Tex. Bus. & Com. Code § 17.46(4).

1005. FCA engaged in "trade or commerce" within the meaning of the DTPA.

- 282 -

1006. The DTPA prohibits "false, misleading, or deceptive acts or services in the conduct of any trade or commerce[.]" Tex. Bus. & Com. Code § 17.46(a). By its acts, omissions, failures, and conduct described in this Complaint, FCA has violated Tex. Bus. & Com. Code § 17.46(b)(1), (2), (5), (7), (9), (12) (13), (20), and (24). FCA engaged in unfair and deceptive trade practices that violated the DTPA as described herein.

1007. In the course of its business, FCA concealed, omitted and suppressed material facts concerning the Spontaneous Shutdown Risk. FCA falsely represented the quality of the Pacifica Hybrids and omitted material facts regarding the extreme risks associated with charging the lithium-ion batteries and/or driving the vehicles in electric mode (and the consequences of that risk), as well as the durability and overall value of the Pacifica Hybrids, for the purpose of inducing Plaintiff and other Texas Subclass members to purchase Pacifica Hybrids, and to increase FCA's revenue and profits.

1008. Specifically, by misrepresenting the Pacifica Hybrids as safe, reliable, and capable of safely charging and operating in electric mode, and by failing to disclose and actively concealing the Spontaneous Shutdown Risk, FCA engaged in deceptive business practices prohibited by the Texas DTPA, including:

> a.   Knowingly making a false representation as to the characteristics, uses, and benefits of the Pacifica Hybrids;

b.      Knowingly making a false representation as to whether the Pacifica Hybrids are of a particular standard, quality, or grade;

c.      Advertising the Pacifica Hybrids with the intent not to sell them as advertised; and

d.      Engaging in unconscionable, false, or deceptive act or practice in connection with the sale of the Pacifica Hybrids.

1009. FCA's unfair or deceptive acts or practices, including the above-mentioned concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers and were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Pacifica Hybrids, the quality of the plug-in hybrid electric vehicles, and the true value of the Pacifica Hybrids.

1010. As alleged above, FCA intentionally and knowingly misrepresented facts regarding the Pacifica Hybrids and the defective Spontaneous Shutdown Risk contained therein with an intent to mislead Plaintiffs.

1011. FCA knew or should have known that its conduct violated the Texas DTPA.

1012. To protect its profits, FCA concealed the Spontaneous Shutdown Risk and continued to allow unsuspecting new and used vehicle purchasers to continue to buy, lease, and drive inherently defective Pacifica Hybrids.

- 284 -

1013. FCA's representations violate subdivisions (b)(5) and (b)(24) of the DTPA in that they constitute representations that particular goods and services have certain qualities, uses or benefits when they did not; FCA also and failed to disclose information about goods or services with the intent to induce Plaintiffs to enter into transactions that they would not have entered into had the information been disclosed.

1014. FCA owed Plaintiffs a duty to disclose the truth about the quality, reliability, and safety of the Pacifica Hybrids because FCA:

a. Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

b. Intentionally concealed the foregoing from Plaintiffs;

c. Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

d. Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

1015. Because FCA fraudulently concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, and failed to disclose to Plaintiffs at the time of purchase or lease that the vehicles are prone to spontaneous shutdown and loss of motive power when operated as FCA marketed that they should be operated, the Pacifica Hybrids were worth significantly less than the amounts paid by Plaintiffs at the time of purchase or lease. Indeed, consumers who purchased or leased the

Pacifica Hybrids would not have purchased or leased those vehicles, or would have paid significantly less for them, or would have purchased the much cheaper non-hybrid version of the Pacifica had they known of the existence of the Spontaneous Shutdown Risk prior to purchase or lease.

1016. Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its failure to disclose material information. Plaintiffs did not receive the benefit of their bargains as a result of FCA's misconduct.

1017. As a direct and proximate result of FCA's violations of the Texas DTPA, Plaintiffs have suffered injury-in-fact and/or actual damages.

1018. Plaintiffs seek monetary relief against FCA pursuant to Tex. Bus. & Com. Code §§ 14.41, *et seq.* Plaintiffs also seek an order enjoining FCA's unfair, unlawful, and/or deceptive practices, attorneys' fees, and mental anguish damages and additional damages up to three times the amount of economic damages as permitted by the DTPA.

1019. On or around January 30, 2023, Plaintiffs' counsel made a demand in satisfaction of Tex. Bus. & Com. Code § 17.505(a). Because the 60-day statutory period has lapsed, and Plaintiffs seek relief under the Texas DTPA.

## COUNT LXII

## BREACH OF THE IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER TEXAS LAW
### (Tex. Bus. & Com. Code § 2.314)
### (Alleged by Plaintiff Sheehan
### on behalf of the Texas Subclass)

1020. Plaintiff brings this claim on behalf of themselves and the Texas Subclass ("Plaintiffs," for the purposes of this claim).

1021. Plaintiffs incorporate by reference all paragraphs as though fully set forth herein.

1022. FCA was and is a merchant with respect to motor vehicles under Tex. Bus. & Com. Code § 2.104.

1023. Under Tex. Bus. & Com. Code § 2.314, a warranty that the Pacifica Hybrids were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased their Pacifica Hybrids.

1024. The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm

- 287 -

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

1025. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Texas Subclass members of the benefit of their bargain.

1026. Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Texas Subclass members.

1027. It was reasonable to expect that Plaintiffs would use, consume or be affected by the Pacifica Hybrids,

1028. FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1029. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

## COUNT LXIII

### BREACH OF EXPRESS WARRANTY UNDER TEXAS LAW
(Tex. Bus. & Com. Code § 2.313 and 2A.210)
(Alleged by Plaintiff Sheehan behalf
of the Texas Express Warranty Subclass)

1030. Plaintiff brings this claim on behalf of himself and the Texas Express Warranty Subclass.

1031. Plaintiff incorporates by reference all paragraphs as though fully set forth herein.

1032. Plaintiff Sheehan presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

1033. Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Tex. Bus. & Com. Code §§ 2.104(1) and 2A.103(a)(20), and "sellers" of motor vehicles under § 2.103(a)(4).

1034. With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Tex. Bus. & Com. Code § 2A.103(a)(16).

- 289 -

1035. Plaintiff and members of Texas Express Warranty Subclass who purchased Pacifica Hybrids are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

1036. Members of the Texas Express Warranty Subclass who leased Pacifica Hybrids are "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

1037. The Pacifica Hybrids are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.105(a) and 2A.103(a)(8).

1038. Defendant provided Plaintiff and members of the Texas Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Texas Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

1039. Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products

- 290 -

and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Texas Express Warranty Subclass.

1040. Plaintiff and members of the Texas Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Texas Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

1041. Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Texas Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties unconscionable because Defendant

- 291 -

knew that the Pacifica Hybrids werein such a manner to avoid paying the costs to repair and/or replace.

1042. Plaintiff and members of the Texas Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Texas Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

1043. On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Texas Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

1044. The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly

favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably expected life), absence of effective warranty competition, and the fact that Pacifica Hybrids fail with substantially fewer miles of operation than competitive vehicles from other manufacturers or models much like the Pacifica Hybrids without the Spontaneous Shutdown Risk.

1045. The time limits contained in Defendant's warranty periods were also unconscionable and inadequate to protect Plaintiff and members of the Texas Express Warranty Subclass. Among other things, Plaintiff and members of the Texas Express Warranty Subclass did not determine these time limitations, the terms of which unreasonably favored Defendant. A gross disparity in bargaining power existed between Defendant and members of the Classes, and Defendant knew or should have known that the Pacifica Hybrids were defective at the time of sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

1046. Defendant was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA and through their own testing. Affording Defendant a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile here because Defendant has known of, and has concealed

the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

1047. Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

1048. Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

1049. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Texas Express Warranty Subclass have been damaged in an amount to be determined at trial.

1050. In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Texas Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

- 294 -

1051. Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Texas Express Warranty Subclass assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Texas Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**25.    Virginia**

**COUNT LXIV**

**VIOLATION OF VIRGINIA CONSUMER PROTECTION**
**(Va. Code Ann. §§ 59.1-196, *et seq.*)**
**(Alleged by Plaintiffs Golland and Ventura**
**on behalf of the Virginia Subclass)**

1052. Plaintiffs bring this claim on behalf of themselves and the Virginia Subclass ("Plaintiffs," for the purposes of this claim).

1053. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1054. FCA is a "supplier" under Va. Code Ann. § 59.1-198.

1055. The sale of the Pacifica Hybrids to Plaintiffs was a "consumer transaction" within the meaning of Va. Code Ann. § 59.1-198.

1056. The Virginia Consumer Protection Act ("Virginia CPA") lists prohibited "practices" which include: "5. Misrepresenting that goods or services have certain characteristics;" "6. Misrepresenting that goods or services are of a

- 295 -

particular standard, quality, grade style, or model;" "8. Advertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" "9. Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" and "14. Using any other deception, fraud, or misrepresentation in connection with a consumer transaction." VA. CODE ANN. § 59.1-200. FCA violated the Virginia CPA by misrepresenting that Pacifica Hybrids had certain quantities, characteristics, ingredients, uses, or benefits; misrepresenting that Pacifica Hybrids were of a particular standard, quality, grade, style, or model when they were another; advertising Pacifica Hybrids with intent not to sell them as advertised; and otherwise "using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."

1057. FCA's actions, as set forth above, occurred in the conduct of trade or commerce.

1058. In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment,

- 296 -

suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

1059. By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Virginia CPA.

1060. In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

1061. FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

1062. FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

1063. FCA knew or should have known that its conduct violated the Virginia CPA.

1064. As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

1065. FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

      a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

      b.    Intentionally concealed the foregoing from Plaintiffs;

      c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

      d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

1066. Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

1067. FCA's concealment of the defects in the Pacifica Hybrids was material to Plaintiffs.

1068. Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

1069. FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

1070. Pursuant to Va. Code Ann. § 59.1-204, Plaintiffs seek monetary relief against FCA measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $500 for each Plaintiff. Because FCA's conduct was committed willfully and knowingly, Plaintiffs are entitled to recover, for each Plaintiff, the greater of (a) three times actual damages or (b) $1,000.

1071. Plaintiffs also seek an order enjoining FCA's unfair and/or deceptive acts or practices, punitive damages, and attorneys' fees, and any other just and proper relief available under Va. Code Ann. § 59.1-204.

## COUNT LXV

### BREACH OF IMPLIED WARRANTY OF
### MERCHANTABILITY UNDER VIRGINIA LAW
### (Va. Code Ann. § 8.2-314)
### (Alleged by Plaintiffs Golland and Ventura
### on behalf of the Virginia Subclass)

1072. Plaintiffs and the Virginia Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

1073. Plaintiffs bring this action on behalf of themselves and the Virginia Subclass.

1074. FCA is a "merchant" and "seller" of motor vehicles.

1075. Under Virginia law, an implied warranty of merchantability attaches to the Pacifica Hybrids. Va. Code Ann. § 8.2-314.

1076. The Shutdown Risk Vehicles were not merchantable when sold or leased because their transmission wiring harnesses are prone to short-circuit and pose an unreasonable risk of spontaneous shutdown due to the Spontaneous Shutdown Risk as described herein. Without limitation, the Shutdown Risk Vehicles share a common defect in that they are all equipped with a faulty wiring harness that makes the vehicles susceptible to a risk of spontaneous shutdown and loss of motive power, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Shutdown Risk Vehicles as well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

- 300 -

when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

1077. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiffs and the Virginia Subclass members of the benefit of their bargain.

1078. Plaintiffs and the other Virginia Subclass members were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Virginia Subclass members.

1079. It was reasonable to expect that Plaintiffs and the other Virginia Subclass members would use, consume or be affected by the Pacifica Hybrids.

1080. FCA was provided notice of these issues within a reasonable time of Plaintiffs' knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1081. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs and the other Virginia Subclass members have been damaged in an amount to be determined at trial.

## COUNT LXVI

### BREACH OF EXPRESS WARRANTY UNDER VIRGINIA LAW
(Va. Code Ann. § 8.2-313 and 8.2A-210)
(Alleged by Plaintiff Golland on behalf of the
Virginia Express Warranty Subclass)

1082.  Plaintiff and the Virginia Express Warranty Subclass reallege and incorporate by reference all paragraphs as though fully set forth herein.

1083.  Plaintiff brings this action on behalf of himself and the Virginia Express Warranty Subclass.

1084.  Plaintiff Golland presented his vehicle for repair and did not receive an effective repair, and he seeks to represent a class of all persons who presented for repair at the time of any notice to the class.

1085.  Defendant is and was at all relevant times a "merchant" with respect to motor vehicles under Va. Code Ann. §§ 8-2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2-103(1)(d).

1086.  With respect to leases, Defendant is and was at all relevant times a "lessor" of motor vehicles under Va. Code Ann. § 8-2A-103(1)(p).

1087.  Plaintiff and members of the Virginia Express Warranty Subclass members who purchased Pacifica Hybrids in Virginia are "buyers" within the meaning of Va. Code Ann. § 8.2-103(1)(a).

- 302 -

1088. Members of the Virginia Express Warranty Subclass who leased Shutdown Risk Vehicles in Virginia are "lessees" within the meaning of Va. Code Ann. § 8.2A-103(1)(n).

1089. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

1090. Defendant provided Plaintiff and members of the Virginia Express Warranty Subclass with one or more express warranties in connection with the purchase or lease of Pacifica Hybrids. For illustrative purposes, Defendant currently provides on the Pacifica Hybrids: (1) a 5-year/60,000 mile Basic Limited Warranty; and (2) a High Voltage Battery Limited Warranty for 10-years/150,000 miles in zero-emission vehicle (ZEV) states and 10-years/100,000 miles in non-ZEV states. Under the warranties provided to Plaintiff and the Virginia Express Warranty Subclass, Defendant promised to repair or replace covered defective components, at no cost to owners and lessees of the vehicles. As alleged herein, Defendant breached these warranties.

1091. Defendant marketed the Pacifica Hybrids as high quality, reliable, and safe vehicles, and that Defendant would stand behind the quality of its products and promptly repair any defects. These statements helped conceal the existence of the Spontaneous Shutdown Risk and its corresponding safety risk from Plaintiff and members of the Virginia Express Warranty Subclass.

1092. Plaintiff and members of the Virginia Express Warranty Subclass have had sufficient direct dealings with Defendant or its agents, its authorized dealerships, to establish privity of contract between Defendant, on the one hand, and Plaintiff and members of the Virginia Express Warranty Subclass, on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other members of the Classes are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of their express warranties. The dealers were not intended to be the ultimate users of the Pacifica Hybrids and have no rights under the warranty agreements provided with the Pacifica Hybrids; the warranty agreements were designed for and intended to benefit purchasers and lessees of the Pacifica Hybrids only.

1093. Defendant's warranties formed a basis of the bargain that was reached when Plaintiff and members of the Virginia Express Warranty Subclass purchased or leased their Pacifica Hybrids. Given that the nature of the Spontaneous Shutdown Risk is uniform and present when the Pacifica Hybrids are sold, the warranties are substantively unconscionable because Defendant knew that the Pacifica Hybrids were defective and manipulated the warranties in such a manner to avoid paying the costs to repair and/or replace.

1094. Plaintiff and members of the Virginia Express Warranty Subclass were induced to purchase or lease the Pacifica Hybrids under false and/or

- 304 -

fraudulent pretenses. Despite the existence of the warranties, Defendant failed to adequately inform Plaintiff and members of the Virginia Express Warranty Subclass that the Shutdown Risk Vehicles contained the Spontaneous Shutdown Risk and failed to provide a suitable repair or replacement free of charge within a reasonable time.

1095. On information and belief, Defendant has not suitably repaired or replaced the defective Pacifica Hybrids free of charge for Plaintiff and members of the Virginia Express Warranty Subclass despite the existence of the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles at the time of sale or lease.

1096. The warranties accompanying Pacifica Hybrids were procedurally and substantively unconscionable under the Uniform Commercial Code § 2-302 and other applicable state warranty laws because of the disparity in bargaining power of the parties, the purchasers' lack of knowledge that Pacifica Hybrids were defective, the inability of Pacifica Hybrid purchasers to bargain with Defendant to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, disparity in sophistication of the parties, unfair terms in the warranty (including, but not limited to, exclusion of design defects that unfairly favored Defendant particularly where there were Shutdown Risk Vehicle defects known only to Defendant and the warranty unfairly shifted repair costs to consumers when Pacifica Hybrids prematurely fail during their reasonably

- 305 -

expected life), absence of effective warranty competition, and the fact that Pacifica
Hybrids fail with substantially fewer miles of operation than competitive vehicles
from other manufacturers or models much like the Pacifica Hybrids without the
Spontaneous Shutdown Risk.

1097. The time limits contained in Defendant's warranty periods were also
unconscionable and inadequate to protect Plaintiff and members of the Virginia
Express Warranty Subclass. Among other things, Plaintiff and members of the
Virginia Express Warranty Subclass did not determine these time limitations, the
terms of which unreasonably favored Defendant. A gross disparity in bargaining
power existed between Defendant and members of the Classes, and Defendant
knew or should have known that the Pacifica Hybrids were defective at the time of
sale or lease and that the Spontaneous Shutdown Risk posed a safety risk.

1098. Defendant was provided notice of the Spontaneous Shutdown Risk by
numerous consumer complaints made to their authorized dealers nationwide,
complaints to NHTSA and through their own testing. Affording Defendant a
reasonable opportunity to cure their breach of written warranties would be
unnecessary and futile here because Defendant has known of, and has concealed
the Spontaneous Shutdown Risk, and has failed to provide a suitable repair or
replacement of the defective vehicles or components free of charge within a
reasonable time.

- 306 -

1099. Defendant was provided notice by Plaintiff of its breach of express warranties by the original filing of complaints in this action and its predecessor actions. Despite this notice, Defendant did not cure its breach of express warranties and failed to provide a suitable repair or replacement of the defective vehicles or components free of charge within a reasonable time.

1100. Because of the Spontaneous Shutdown Risk, the Pacifica Hybrids are not reliable and owners of these vehicles have lost confidence in the ability of Pacifica Hybrids to perform the function of safe, reliable transportation.

1101. As a direct and proximate result of Defendant's breach of express warranties, Plaintiff and members of the Virginia Express Warranty Subclass have been damaged in an amount to be determined at trial.

1102. In the alternative, should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because the contractual remedy is insufficient to make Plaintiff and members of the Virginia Express Warranty Subclass whole because, on information and belief, Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

1103. Finally, because of Defendant's breach of express warranty as set forth herein, Plaintiff and members of the Virginia Express Warranty Subclass

- 307 -

assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiff and members of the Virginia Express Warranty Subclass of the purchase or lease price of all Pacifica Hybrids currently owned or leased, and for such other incidental and consequential damages as allowed.

**26.    Washington**

**COUNT LXVII**

**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT**
**(Rev. Code Wash. §§ 19.86.010, *et seq.*)**
**(Alleged by Plaintiff Benzur on behalf of the Washington Subclass)**

1104. Plaintiff brings this claim on behalf of herself and the Washington Subclass ("Plaintiffs" for purposes of this claim).

1105. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

1106. FCA committed the acts complained of herein in the course of "trade" or "commerce" within the meaning of RCW § 19.96.010.

1107. The Washington Consumer Protection Act ("Washington CPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW § 19.96.010.

1108. In the course of its business, FCA concealed the Spontaneous Shutdown Risk in the Shutdown Risk Vehicles, as well as the true nature of the Pacifica Hybrids, and its failure to adequately design and test the vehicles to ensure

- 308 -

their safety as described herein and otherwise engaged in activities with a tendency or capacity to deceive. FCA also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Pacifica Hybrids.

1109. By failing to disclose and by actively concealing the defect in the Pacifica Hybrids, which it marketed as safe, reliable, and of high quality, FCA engaged in unfair and deceptive business practices in violation of the Washington CPA.

1110. In the course of FCA's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in the Pacifica Hybrids.

1111. FCA's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of their vehicles.

1112. FCA intentionally and knowingly misrepresented material facts regarding the Pacifica Hybrids with the intent to mislead Plaintiffs.

1113. FCA knew or should have known that its conduct violated the Washington CPA.

1114. As alleged above, FCA made material statements about the safety and reliability of the Pacifica Hybrids and their ability to operate as plug-in hybrid vehicles that were either false or misleading.

1115. FCA owed Plaintiffs a duty to disclose the true safety and reliability of the Pacifica Hybrids because FCA:

    a.    Possessed exclusive knowledge about the defects in the Pacifica Hybrids;

    b.    Intentionally concealed the foregoing from Plaintiffs;

    c.    Made incomplete representations about the safety and reliability of the Pacifica Hybrids, while purposefully withholding material facts from Plaintiffs that contradicted these representations; and/or

    d.    Had duties under the TREAD Act and related regulations to disclose and remedy the defects well prior to the issue of its confounding recall notice in 2023.

1116. Because FCA fraudulently concealed the Spontaneous Shutdown Risk, as well as the true nature of the Pacifica Hybrids, Plaintiffs were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the known serious safety defect. Had Pacifica Hybrid owners been aware of the defects in their vehicles, they would have either not have bought their vehicles or would have paid less for them.

1117. FCA's concealment of the defect in the Pacifica Hybrids was material to Plaintiffs.

1118.   Plaintiffs suffered ascertainable loss caused by FCA's misrepresentations and its concealment of and failure to disclose the Spontaneous Shutdown Risk.

1119.   FCA's violations present a continuing risk to Plaintiffs as well as to the general public. In particular and as alleged herein, FCA's failure to provide a *bona fide* recall remedy leaves Pacifica Hybrid owners facing a Hobson's choice: gamble with their lives as to whether they will have motive power to clear traffic in a spontaneous shutdown, stop driving, or sell the vehicle at a loss as a result of FCA's conduct. FCA's unlawful acts and practices complained of herein affect the public interest.

1120.   As a direct and proximate result of FCA's violations of the Washington CPA, Plaintiffs have suffered injury-in-fact and/or actual damage, as alleged above.

1121.   FCA is liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under RCW § 19.86.090.

## COUNT LXVIII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
UNDER WASHINGTON LAW
(Rev. Code Wash. § 62A.2-314)
(Alleged by Plaintiff Benzur on behalf of the Washington Subclass)

1122. Plaintiff brings this claim on behalf of herself and the Washington

Subclass ("Plaintiffs" for purposes of this claim).

1123. Plaintiffs reallege and incorporate by reference all paragraphs as

though fully set forth herein.

1124. FCA is a "merchant" and "seller" of motor vehicles.

1125. Under Washington law, an implied warranty of merchantability

attaches to the Pacifica Hybrids. RCW § 62A.2-314.

1126. The Shutdown Risk Vehicles were not merchantable when sold or

leased because their transmission wiring harnesses are prone to short-circuit and

pose an unreasonable risk of spontaneous shutdown due to the Spontaneous

Shutdown Risk as described herein. Without limitation, the Shutdown Risk

Vehicles share a common defect in that they are all equipped with a faulty wiring

harness that makes the vehicles susceptible to a risk of spontaneous shutdown and

loss of motive power, causing an unreasonable risk of death, serious bodily harm

and/or property damage to lessees and owners of the Shutdown Risk Vehicles as

well as their passengers and bystanders. This defect renders the Pacifica Hybrids,

- 312 -

when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use of driving.

1127. FCA breached the implied warranty of merchantability by selling Shutdown Risk Vehicles containing defects leading to the sudden shutdown and loss of motive power of the vehicles during ordinary operating conditions. This defect has deprived Plaintiff and the Washington Subclass members of the benefit of their bargain.

1128. Plaintiffs were and are third-party beneficiaries to FCA's contracts with FCA-certified/authorized retailers who sold or leased the Pacifica Hybrids to Plaintiffs and Washington Subclass members.

1129. It was reasonable to expect that Plaintiffs would use, consume or be affected by the Pacifica Hybrids,

1130. FCA was provided notice of these issues within a reasonable time of Plaintiff's knowledge of the non-conforming or defective nature of the Pacifica Hybrids by the filing of this Complaint, by letters from Plaintiffs' counsel to FCA, consumer complaints to NHTSA regarding the defect that is the subject of this Complaint, and/or by the allegations contained in this Complaint.

1131. As a direct and proximate result of FCA's breach of the implied warranty of merchantability, Plaintiffs have been damaged in an amount to be determined at trial.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the

Class and Subclasses, respectfully request that the Court enter judgment in their

favor and against FCA, as follows:

A.     Certification of the proposed Nationwide and State Subclasses,

including appointment of Plaintiffs' counsel as Class Counsel;

B.     Restitution, including at the election of Class and Subclass members,

recovery of the purchase price of their Shutdown Risk Vehicles, or the

overpayment for their vehicles;

C.     Damages, including punitive damages, costs, and disgorgement in an

amount to be determined at trial;

D.     An order requiring FCA to pay both pre- and post-judgment interest

on any amounts awarded;

E.     An award of costs and attorneys' fees; and

F.     Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

011086-11/2143139 V1

DATED: February 1, 2023

Respectfully submitted,

*/s/ Steve W. Berman*
Steve W. Berman
Thomas E. Loeser
**HAGENS BERMAN SOBOL SHAPIRO LLP**
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)
**THE MILLER LAW FIRM PC**
950 W. University Drive, Suite 300
Rochester, MI 48307
Telephone: (248) 841-2200
epm@millerlawpc.com
ssa@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

*Counsel for Plaintiffs*

- 315 -