**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMES and ALICIA KAPPES, *et al.*, on behalf of themselves and all persons similarly situated,

Plaintiffs,

v.

FCA US LLC,

Defendant.

Case No.: 2:23-cv-10259-BAF-KGA

Hon. Bernard A. Friedman

Magistrate Judge Kimberly G. Altman

# PLAINTIFFS' OPPOSITION TO DEFENDANT FCA US LLC'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

# STATEMENT OF ISSUES PRESENTED

1. Should this Court deny FCA's motion to dismiss Plaintiffs' claims for lack of standing where Plaintiffs have alleged an injury in fact, and where courts in this District and the Sixth Circuit have held that overpayment for a defective vehicle is sufficient to establish standing?

    Plaintiffs' answer: Yes.

2. Should the Court deny FCA's motion to dismiss Plaintiffs' nationwide claims on the basis of standing when courts in this District have rejected the same argument, and because a determination as to whether nationwide claims may be certified under Rule 23 is premature at the motion to dismiss stage?

    Plaintiffs' answer: Yes.

3. Should this Court deny FCA's motion to dismiss the Magnuson-Moss Warranty Act claim where Plaintiffs pled viable state law implied warranty claims, and because Plaintiffs pled their Magnuson-Moss Warranty Act claim as a nationwide claim and any further inquiry is premature at the motion to dismiss stage?

    Plaintiffs' answer: Yes.

4. Do Plaintiffs adequately plead their fraud-by-omissions and consumer protection act claims under the laws of various states, where they have alleged multiple concurrent factors showing FCA's pre-sale knowledge of the Spontaneous Shutdown Risk, including 59 field reports concerning the Defect dated before the majority of the vehicles were sold, consumer complaints to NHTSA demonstrating that the Defect occurred soon after purchase, customer assistance records and warranty claims, and pre-sale testing that should have revealed the Defect?

    Plaintiffs' answer: Yes.

5. Do Plaintiffs adequately plead their claims for fraud-by-omissions and their claims under various state consumer protection statutes where FCA had a duty to disclose a material fact due to FCA's superior knowledge of the Spontaneous Shutdown Risk, the continuing safety risk posed by the Spontaneous Shutdown Risk, the fact that customers relied on FCA's

communications, and the fact that customers could not have discovered the latent safety defect?

Plaintiffs' answer: Yes.

6. Should this Court deny FCA's motion to dismiss Plaintiffs' Florida and North Carolina claims on manifestation grounds where the Defect has not been remedied and the Class Vehicles could shutdown at any time?

Plaintiffs' answer: Yes.

7. Do Plaintiffs adequately plead their California UCL claim where Plaintiffs sufficiently plead that FCA concealed the Spontaneous Shutdown Risk, the true nature of the Class Vehicles, and the risks, costs, and monetary damage resulting from the Spontaneous Shutdown Risk?

Plaintiffs' answer: Yes.

8. Should this Court deny FCA's motion to dismiss Plaintiffs' Missouri, North Carolina, and Texas consumer protection claims on the basis of the economic loss rule where each state recognizes exceptions to the economic loss rule?

Plaintiffs' answer: Yes.

9. Should this Court deny FCA's motion to dismiss Plaintiffs' Idaho and Kentucky statutory fraud claims for lack of contractual privity where no direct privity is required under Idaho law and Kentucky law recognizes exceptions to privity?

Plaintiffs' answer: Yes.

10. Should this Court deny FCA's arguments regarding prohibitions to Plaintiffs' Georgia, Kansas, and Kentucky statutory class claims where courts in this District have held class action prohibitions in state consumer protection statutes to be procedural and therefore superseded by Rule 23, and where Plaintiffs are permitted to recover monetary damages under the Kansas Consumer Protection Act claim?

Plaintiffs' answer: Yes.

11. Should this Court deny FCA's contention that Plaintiff Spruance failed to provide pre-suit notice where he specifically alleged that he provided notice in compliance with Georgia law, and where courts have held that when at least some notice is given, the question of adequacy and timeliness of notice becomes one of fact, and the claim should not be defeated at the motion to dismiss stage?

    Plaintiffs' answer: Yes.

12. Should the Court deny FCA's motion to dismiss Plaintiffs' unjust enrichment claims as an unjust enrichment claim may be pled in the alternative, Plaintiffs alleged that they conferred a benefit on FCA, courts have consistently ruled that unjust enrichment claims under the laws of Texas, Massachusetts, and Pennsylvania are independent causes of action, and FCA provides no support for its argument that "factual allegations showing Plaintiffs' legal remedies are inadequate" is a "threshold requirement"?

    Plaintiffs' answer: Yes.

13. Should the Court deny FCA's motion to dismiss the implied warranty of merchantability claims where Plaintiffs adequately allege that the Class Vehicles are dangerous, unsafe, and unreliable because of the Spontaneous Shutdown Risk due to a Defect that can cause the Class Vehicles to spontaneously lose power and shut down, and where Plaintiffs allege that the breach of warranty occurred at the point of sale?

    Plaintiffs' answer: Yes.

14. Should the Court deny FCA's motion to dismiss the implied warranty of merchantability claims for lack of privity where the states at issue either do not require privity or recognize an exception to the privity requirement, and because courts have repeatedly held that the issue of whether privity is required to maintain an implied warranty claim is fact-intensive and better suited for the summary judgment stage?

    Plaintiffs' answer: Yes.

15. Should this Court deny FCA's motion to dismiss the implied warranty of merchantability claims for lack of pre-suit notice where Plaintiffs gave FCA written notice of its alleged wrongdoing by letter, and where FCA was provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing, as well as from the original filing of complaints in this action and its predecessor, and because pre-suit notice is a fact-intensive question and should not serve as a basis for dismissal at the pleading stage?

Plaintiffs' answer: Yes.

16. Should the Court deny FCA's motion to dismiss the express warranty claims where Plaintiffs alleged that the defect may be a design, manufacturing, and/or assembly defect?

Plaintiffs' answer: Yes.

17. Should the Court deny FCA's motion to dismiss the express warranty claims where Plaintiffs adequately alleged that FCA breached the express warranty by failing to remedy the defect, several Plaintiffs presented their vehicles to authorized dealerships, presentment to dealerships would otherwise be futile where FCA does not have a remedy for the Defect, and where the express warranty has failed its essential purpose?

Plaintiffs' answer: Yes.

## STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES

1. Plaintiffs' Have Standing:
   - *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)
   - *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838 (6th Cir. 2013)
   - *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297 (E.D. Mich. Apr. 18, 2017)
2. Plaintiffs' Nationwide Claims Should Proceed:
   - *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)
   - *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d. 1257 (E.D. Mich. 2021)
   - *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017)
3. Plaintiffs Properly Plead Their MMWA Claim:
   - *Bossart v. Gen. Motors LLC*, 2021 WL 5278191 (E.D. Mich. May 19, 2021)
4. Plaintiffs Properly Plead Their Fraud-Based Claims:
   - *Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D. Mich. Mar. 31, 2023)
   - *Raymo v. FCA US LLC*, 475 F. Supp. 3d 680 (E.D Mich. 2020)
   - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
5. FCA's Arguments Regarding Additional State Specific Grounds Are Meritless:
   - ▪ Manifestation of the Defect:
     - *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297 (E.D. Mich. Apr. 18, 2017)
   - ▪ California UCL Claim:
     - *Pistorio v. FCA US LLC*, 2022 WL 141524 (E.D. Mich. Jan. 14, 2022)

- The Economic Loss Rule:
  - *Estate of Pilgrim v. Gen. Motors LLC*, 596 F. Supp. 3d 808 (E.D. Mich. 2022)
  - *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257 (E.D. Mich. 2021)
  - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
- Contractual Privity:
  - *In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067 (N.D. Cal. 2021).
  - *Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727 (W.D. Ky. 2013)
  - *Skilcraft Sheetmetal, Inc. v. Kentucky Mach. Inc.*, 836 S.W.2d 907 (Ky. App. 1992)
- Class Action Prohibitions:
  - *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635 (E.D. Mich. 2021)
  - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
- Pre-suit Notice Under Georgia Law:
  - *In re Chevrolet Bolt EV Battery Litig*., 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)
  - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)

6. Plaintiffs' Properly Plead Their Unjust Enrichment Claims:
   - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
   - *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975 (E.D. Mich. 2017)
   - *In re Cardizem CD Antirust Litig*., 105 F. Supp. 2d 618 (E.D. Mich. 2000)
7. Plaintiffs' Adequately Plead that the Class Vehicles Are Not Merchantable
   - *Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D. Mich. Mar. 31, 2023)
   - *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)
   - *In re FCA US LLC Monostable Elec. Gearshift Litig*., 280 F. Supp. 3d 975 (E.D. Mich. 2017)
8. Plaintiffs' Implied Warranty Claims Do Not Fail for a Lack of Privity:

- *Droesser v. Ford Motor Co.*, 2023 WL 2746792 (E.D. Mich. Mar. 31, 2023)
- *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)
- *Milisits v. FCA US LLC*, 2021 WL 3145704 (E.D. Mich. July 26, 2021)

9. Plaintiffs' Implied Warranty Claims Do Not Fail for Lack of Pre-suit Notice:

- *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659 (E.D. Mich. 2020)

10. Plaintiffs Adequately Plead Claims for Breach of Express Warranty:

- *In re Chevrolet Bolt EV Battery Litig.*, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022)
- *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975 (E.D. Mich. 2017

# TABLE OF CONTENTS


STATEMENT OF ISSUES PRESENTED ........ i

STATEMENT OF CONTROLLING OR MOST APPROPRIATE AUTHORITIES ........ v

TABLE OF CONTENTS ........ viii

TABLE OF AUTHORITIES ........ ix

I. INTRODUCTION ........ 1

II. LEGAL STANDARD ........ 2

III. ARGUMENT ........ 2

A. Plaintiffs Have Standing ........ 2

B. Plaintiffs' Nationwide Claims Should Proceed ........ 4

C. Plaintiffs Properly Plead a Magnuson-Moss Warranty Act Claim ........ 5

D. Plaintiffs Properly Plead Their Fraud-Based Claims ........ 5

1. Plaintiffs' Omission-Based Fraud Claims Satisfy Rule 9(b) ........ 5

2. Plaintiffs Plausibly Allege FCA's Pre-Sale Knowledge of the Spontaneous Shutdown Risk ........ 7

3. FCA Had a Duty to Disclose the True Nature of the Shutdown Risk Vehicles, the Spontaneous Shutdown Risk, and the True Nature of Its Intended Repair ........ 9

E. FCA's "Additional State-Specific Grounds for Dismissal" Are Meritless ........ 13

F. Plaintiffs Properly Plead Their Unjust Enrichment Claims ........ 18

G. Plaintiffs' Implied Warranty Claims Are Well Pled ........ 20

1. The Class Vehicles Are Not Merchantable ........ 20

2. FCA Breached the Implied Warranty at the Time of Purchase ........ 21

3. Plaintiffs' Claims Do Not Fail for Lack of Privity ........ 21

4. Plaintiffs' Claims Do Not Fail for Lack of Pre-Suit Notice ........ 22

H. Plaintiffs Adequately Plead Claims for Breach of Express Warranty ........ 23

1. FCA's Express Warranty Covers the Defect ........ 23

2. FCA Breached the Express Warranty ........ 24

3. FCA's Warranty Failed in Its Essential Purpose ........ 25

# TABLE OF AUTHORITIES

**Cases**


*Adams v. Nissan N. Am., Inc.*,
395 F. Supp. 3d 838 (S.D. Tex. 2018) .......... 12

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) .......... 20

*Beck v. FCA US LLC*,
273 F. Supp. 3d 735 (E.D. Mich. 2017) .......... 6

*Benson v. Newell Brands, Inc.*,
2020 WL 1863296 (N.D. Ill. Apr. 14, 2020) .......... 5

*Bossart v. Gen. Motors LLC*,
2021 WL 5278191 (E.D. Mich. May 19, 2021) .......... 5, 9

*Bussian v. DaimlerChrysler Corp.*,
411 F. Supp. 2d 614 (M.D.N.C. 2006) .......... 14

*Callen v. Daimler AG*,
2020 WL 10090879 (N.D. Ga. June 17, 2020) .......... 12

*Chapman v. Gen. Motors LLC*,
531 F. Supp. 3d 1257 (E.D. Mich. 2021) .......... 3, 5, 16, 17

*Ciszewski v. Denny's Corp.*,
2010 WL 1418582 (N.D. Ill. Apr. 7, 2010) .......... 13

*Crawford v. FCA US LLC*,
2021 WL 3603342 (E.D. Mich. Aug. 13, 2021) .......... 3

*Darne v. Ford Motor Co.*,
2017 WL 3836586 (N.D. Ill. Sept. 1, 2017) .......... 13

*Droesser v. Ford Motor Co.*,
2023 WL 2746792 (E.D. Mich. Mar. 31, 2023) .......... 5, 7, 10, 21

*Duffie v. Michigan Grp., Inc.—Livingston*,
2016 WL 8259511 (E.D. Mich. Jan 15, 2016) .......... 18

*Elkhart Metal Fabricating, Inc. v. Martin*,
2014 WL 2972709 (E.D. Mo. July 1, 2014) .......... 15

*Elward v. Electrolux Home Prod., Inc.*,
214 F. Supp. 3d 701 (N.D. Ill. 2016) .......... 22

*First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*,
2010 WL 973466 (E.D. Mich. Mar. 16, 2010) .......... 10

*First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*,
2010 WL 419972 (E.D. Mich. Feb. 1, 2010) .......... 10

*Ford Motor Co. v. Mayes*,
575 S.W.2d 480 (Ky. App. 1978) .......... 16

*Francis v. Gen. Motors, LLC*,
504 F. Supp. 3d 659 (E.D. Mich. 2020)........................................................ passim
*Gonzalez v. Pepsico, Inc.*,
489 F. Supp. 2d 1233 (D. Kan. 2007).................................................................21
*Gregorio v. Ford Motor Co.*,
522 F. Supp. 3d 264 (E.D. Mich. 2021)........................................................ 23, 24
*In re Cardizem CD Antitrust Litig.*,
105 F. Supp. 2d 618 (E.D. Mich. 2000)...............................................................19
*In re Chevrolet Bolt EV Battery Litig.*,
--- F. Supp. 3d ----, 2022 WL 4686974 (E.D. Mich. Sept. 30, 2022).......... passim
*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
355 F. Supp. 3d 582 (E.D. Mich. 2018)...............................................................19
*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
2017 WL 1382297 (E.D. Mich. Apr. 18, 2017)......................................................3
*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
280 F. Supp. 3d 975 (2017)........................................................................... passim
*In re Gen. Motors Air Conditioning*,
406 F. Supp. 3d 618 (E.D. Mich. 2019).................................................................8
*In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*,
155 F. Supp. 3d 772 (N.D. Ill. 2016) ...................................................................22
*In re Takata Airbag Prods. Liab. Litig.*,
193 F. Supp. 3d 1324 (S.D. Fla. 2016) ...............................................................13
*In re Toyota RAV4 Hybrid Fuel Tank Litig.*,
534 F. Supp. 3d 1067 (N.D. Cal. 2021) ...............................................................17
*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013)...................................................................................3
*In re: Gen. Motors LLC Ignition Switch Litig.*,
2016 WL 3920353 (S.D.N.Y. July 15, 2016) .......................................................13
*Johnson v. FCA US LLC*,
555 F. Supp. 3d 488 (E.D. Mich. 2021).................................................................5
*Kuns v. Ford Motor Co.*,
543 F. App'x 572 (6th Cir. 2013) ...........................................................................5
*Lee v. Samsung Elecs. Am., Inc.*,
2022 WL 4243957 (S.D. Tex. Sept. 13, 2022) ......................................................19
*Lilliston v. Regions Bank*,
653 S.E.2d 306 (Ga. App. 2007)...........................................................................11
*Matanky v. Gen. Motors LLC*,
370 F. Supp. 3d 772 (E.D. Mich. 2019)................................................................10
*McCabe v. Daimler AG*,
948 F. Supp. 2d 1347 (N.D. Ga. 2013) .................................................................11

*Michaels Bldg. Co. v. Ameritrust Co.,N.A.*,
848 F.2d 674 (6th Cir. 1988)....................................................................8
*Milisits v. FCA US LLC*,
2021 WL 3145704 (E.D. Mich. July 26, 2021) ............................................ 22, 24
*Naiser v. Unilever U.S., Inc.*,
975 F. Supp. 2d 727 (W.D. Ky. 2013)........................................................16
*Oro BRC4, LLC v. Silvertree Apartments, Inc.*,
2021 WL 184686 (S.D. Ohio Jan. 19, 2021) ...............................................12
*Persad v. Ford Motor Co.*,
2018 WL 3428690 (E.D. Mich. Jul. 16, 2018) ...........................................7, 23
*Pistorio v. FCA US LLC*,
2022 WL 141524 (E.D. Mich. Jan. 14, 2022)...............................................15
*Raymo v. FCA US LLC*,
475 F. Supp. 3d 680 (E.D. Mich. 2020).....................................................4, 5
*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012).......................................................................5
*Reynolds v. FCA US LLC*,
546 F. Supp. 3d 635 (E.D. Mich. 2021).................................................. 6, 17, 24
*Rollolazo v. BMW of N. Am., LLC*,
2017 WL 1536456 (C.D. Cal. Feb. 3, 2017)..................................................5
*Sanchez-Knutson v. Ford Motor Co.*,
2016 WL 11783302 (S.D. Fla. July 25, 2016)...............................................14
*Sandee's Catering v. Agri Stats, Inc.*,
2021 WL 963812 (N.D. Ill. Mar. 15, 2021)...................................................20
*Siqueiros v. Gen. Motors LLC*,
2021 WL 4061708 (N.D. Cal. Sept. 7, 2021) ...............................................14
*Skilcraft Sheetmetal, Inc. v. Kentucky Mach. Inc.*,
836 S.W.2d 907 (Ky. App. 1992) ..............................................................16
*Speerly v. Gen. Motors, LLC*,
343 F.R.D. 493 (E.D. Mich. 2023) ..............................................................3
*Spiegel, Inc. v. F.T.C.*,
540 F.2d 287 (7th Cir. 1976).......................................................................15
*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................................................................................3
*Torch v. Windsor Surry Co.*,
2019 WL 6709379 (D. Or. Dec. 9, 2019) ....................................................22
*Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*,
615 F.3d 622 (6th Cir. 2010).......................................................................2
*Veasman v. Nuance Commc'ns, Inc.*,
2022 WL 2964411 (C.D. Cal. June 29, 2022) ..............................................19

*Weiss v. Gen. Motors LLC*,
418 F. Supp. 3d 1173 (S.D. Fla. 2019) ....................................................21
*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012)........................................................................6
*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012)....................................................................14

**Rules**

Fed. R. Civ. P. 23 ..........................................................................................21
Fed. R. Civ. P. 9(b) ................................................................................ 7, 8, 9, 10

# I. INTRODUCTION

FCA US LLC ("FCA" or "Defendant") sold models of 2017–2023 Chrysler Pacifica Hybrid plug-vehicles ("Class Vehicles" or "Shutdown Risk Vehicles") that contain a defect in the propulsion system that can cause the vehicle to experience an immediate shutdown of motive power while the vehicle is being driven (the "Spontaneous Shutdown Risk" or "Defect")." ¶ 3.[1] FCA has admitted that a short in an internal transmission wiring connector in the Class Vehicles can cause "an unexpected engine shutdown." ¶ 4; Ex. 1 to Complaint. The Defect is a serious safety risk because "[a]n unexpected engine shutdown resulting in a loss of motive power can cause a vehicle to crash without prior warning." ¶ 87. FCA had exclusive knowledge about the Defect prior to Plaintiffs purchasing or leasing their vehicles but withheld that material information from Plaintiffs and Class Members. Not only did FCA conceal the risk from consumers both before and after their purchases of the Shutdown Risk Vehicles, but it also concealed its consequences, including the serious safety hazards and monetary harm caused by the Spontaneous Shutdown Risk—e.g., accidents and injury or death to persons in and around the Class Vehicle should it lose all motive power while the vehicle is traveling on a public roadway.

FCA finally has admitted that the Defect is a serious safety risk and issued a recall in January 2023, but it has failed to provide an actual remedy for the Defect.

[1] References to "¶" are to Plaintiffs' Class Complaint ("Complaint"), ECF No. 1.

The recall merely offers installation of a software update to "provide messaging to the customer and sufficient drive time to exit traffic." ¶ 10. But FCA has not explained how a "sufficient drive time to exit traffic" is determined or what it is. The time required to exit traffic necessarily varies widely based on a driver's surroundings at the time the Spontaneous Shutdown Risk occurs. FCA's supposed remedy does nothing to fix the actual Defect of the vehicles losing motive power.

Plaintiffs have standing to bring their claims, they adequately allege every element of their claims, and all of Plaintiffs' claims satisfy the applicable state and federal standards. Accordingly, FCA's motion to dismiss should be denied.

## II. LEGAL STANDARD

To survive a motion to dismiss, Plaintiffs "must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010). "[C]ourts must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true." *In re Chevrolet Bolt EV Battery Litig.*, --- F. Supp. 3d ----, 2022 WL 4686974, at *14 (E.D. Mich. Sept. 30, 2022).

## III. ARGUMENT

### A. Plaintiffs Have Standing

Plaintiffs have alleged an injury in fact, and thus have standing to bring their claims. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and

'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (citation omitted). "For an injury to be 'particularized,' it must affect the plaintiff in a personal and individual way," and, in order to be "concrete," the "injury must be '*de facto*'; that is, it must actually exist." *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 2017 WL 1382297, at *5 (E.D. Mich. Apr. 18, 2017) (citing *Spokeo*, 578 U.S. at 340). "'Concrete' is not, however, necessarily synonymous with 'tangible.'" *Ibid*. The Supreme Court has "'confirmed in many previous cases that intangible injuries can nevertheless be concrete'" and "'the ***risk*** of real harm [can] satisfy the requirement of concreteness.'" *Ibid*. (emphasis added).

It is well-settled in this District and the Sixth Circuit that allegations of overpayment for a vehicle with a defect that has not yet manifested is sufficient for standing purposes. In *Monostable*, this court explained that "[w]hen a manufacturer sells a product that is defective, which causes consumers to be misled at the point of sale into paying more and getting less than they believed they were purchasing, the consumers suffer an injury in fact, even if that defect does not manifest itself in every individual unit." *Id*. at *5 (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 857 (6th Cir. 2013)); *see also, e.g.*, *Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 522–23 (E.D. Mich. 2023); *Chapman v. Gen. Motors LLC*, 531 F. Supp. 3d 1257, 1275 (E.D. Mich. 2021); *Crawford v. FCA US LLC*, 2021 WL 3603342, at *2–3 (E.D. Mich. Aug. 13, 2021); *Raymo v. FCA US LLC*,

475 F. Supp. 3d 680, 694 (E.D. Mich. 2020). Here, Plaintiffs allege that the Defect existed at the time of sale, misleading Plaintiffs at the time of purchase. If Plaintiffs had known of the Spontaneous Shutdown Risk, Plaintiffs would not have purchased their vehicles, or would have paid less for them. ¶¶ 22–69. "Plaintiffs did not get the benefit of their bargain since the vehicles were worth less than they would have been without the defects[.]" ¶ 142. Accordingly, Plaintiffs suffered an injury in fact.

FCA itself has acknowledged that the Defect affects 2017–2023 model year Chrysler Pacifica Plug-In Hybrid Electric Vehicles, i.e., the Class Vehicles, and 100% of those vehicles are believed to contain the Defect. ¶ 3; ECF No. 1-2, PageID.331. FCA admits that the Defect "could result in an unexpected engine shutdown under certain conditions." ¶ 86. FCA further admits that the Defect is a safety risk because "[a]n unexpected engine shutdown resulting in a loss of motive power can cause a vehicle to crash without prior warning." ¶ 87. Thus, the Class Vehicles suffer from the Defect and Plaintiffs have standing to bring their claims.

**B. Plaintiffs' Nationwide Claims Should Proceed**

The prevailing authority in courts in this District and nationwide holds that plaintiffs can pursue claims on behalf of a nationwide class at the pleading stage and that the proper time to address the issue of standing for nationwide claims is class certification. *See In re FCA US LLC Monostable Elec. Gearshift Litig.*, 280 F. Supp. 3d 975, 1017 (2017) (denying motion to dismiss nationwide MMWA claim); *In re*

*Chevrolet Bolt*, 2022 WL 4686974, at *7–9; *Chapman*, 531 F. Supp. 3d at 1274; *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 495 (E.D. Mich. 2021); *Rollolazo v. BMW of N. Am., LLC*, 2017 WL 1536456, at *17 (C.D. Cal. Feb. 3, 2017); *Benson v. Newell Brands, Inc.*, 2020 WL 1863296, at *5 (N.D. Ill. Apr. 14, 2020). Accordingly, this Court should decline to dismiss Plaintiffs' nationwide claims at the pleading stage.

### C. Plaintiffs Properly Plead a Magnuson-Moss Warranty Act Claim

Plaintiffs properly plead a claim under the MMWA since Plaintiffs properly plead their state law warranty claims, as discussed below. *Bossart v. Gen. Motors LLC*, 2021 WL 5278191, at *9 (E.D. Mich. May 19, 2021).[2]

### D. Plaintiffs Properly Plead Their Fraud-Based Claims

#### 1. Plaintiffs' Omission-Based Fraud Claims Satisfy Rule 9(b)

Plaintiffs adequately plead their fraud-based claims, as these claims rest on FCA's omissions and concealment, not affirmative misrepresentations.

"For claims involving fraudulent omissions, Rule 9(b) requires that Plaintiffs plead 'the who, what, when, where, and how' of the alleged omission." *Raymo*, 475 F. Supp. 3d at 705 (quoting *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683

[2] The reasoning in *Droesser v. Ford Motor Co.*, 2023 WL 2746792, at *18–19 (E.D. Mich. Mar. 31, 2023), which held that the MMWA claims failed because the complaint fails to include 100 plaintiffs, should be reconsidered. Even FCA does not move for dismissal on this ground, likely due to the Sixth Circuit's rejection of this argument in *Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013).

F.3d 239, 256 (6th Cir. 2012)). "When it comes to claims of fraud by omission or fraudulent concealment, . . . [a] plaintiff faces a slightly more relaxed pleading burden; the claim can succeed without the same level of specificity required by a normal fraud claim." *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 646 (E.D. Mich. 2021) (citation omitted). "This is because a plaintiff alleging an omission-based fraud will not be able to specify the time, place, and specific content of an omission as precisely as would a plaintiff in a false representation claim." *Id.* (citation omitted). Thus, "[r]ule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (citation omitted).

Accordingly, "[t]he pleading will suffice under the [Rule 9(b)] standard if it alleges that a manufacturer knew of a defect before sale, the various venues the manufacturer used to sell the product failed to disclose the defect, and that the plaintiffs would not have purchased the product or would have paid less for it had they known of the defect." *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 682 (E.D. Mich. 2020) (citations omitted). *See also Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 751–52 (E.D. Mich. 2017) (concluding that plaintiff had "adequately pleaded the 'who' (FCA), the 'what' (knowing about, yet failing to disclose, the alleged . . . defect), the 'when' (from the time the vehicles were first placed on the

market . . . to the present day), the 'where' (the various channels through which FCA sold the class vehicles, including . . . where Beck purchased his vehicle), and the 'how' (if Beck and the class members had known of the alleged defect, they would have not purchased or leased the class vehicles, or they would have paid less for them)."); *Droesser*, 2023 WL 1746792, at *20.

Here, Plaintiffs have adequately alleged the "who, what, when, where, and how." Plaintiffs allege the "who" (FCA), ¶¶ 1–18; the "what" (FCA's failure to disclose the Spontaneous Shutdown Risk despite knowing about it prior to sale), ¶¶ 2, 7–12, 90; the 'when' (from the time the vehicles were first placed on the market to the present day), ¶¶ 1–17; the "where" (the various channels of information through which FCA sold the Shutdown Risk Vehicles). ¶¶ 72–85; and the "how" (if Plaintiffs had known of the Defect, they would not have purchased the Class Vehicles or would have paid less for them), ¶¶ 22–69. Accordingly, Plaintiffs adequately alleged their omission-based fraud claims to satisfy Rule 9(b).

**2. Plaintiffs Plausibly Allege FCA's Pre-Sale Knowledge of the Spontaneous Shutdown Risk**

Plaintiffs need only plead FCA's knowledge generally because the information is in FCA's possession, not Plaintiffs' possession. *In re Chevrolet Bolt*, 2022 WL 4686974, at *7–9.[3] Plaintiffs have plausibly alleged FCA's knowledge of

[3] *See Persad v. Ford Motor Co.*, 2018 WL 3428690, at *3 (E.D. Mich. Jul. 16, 2018) ("To the extent Defendant contend[s] that Plaintiffs have failed to plead Defendant's

the Spontaneous Shutdown Risk, as detailed below, but FCA improperly "attempts to parse the allegations regarding the various sources of its alleged knowledge and consign each to immateriality, but that is not how pleadings are read by federal courts." *Francis*, 504 F. Supp. 3d at 683. "The allegations are construed as a whole and read in a light most favorable to the plaintiffs, not piecemeal and in a vacuum as the defendant would take them." *Id.*; *In re Gen. Motors Air Conditioning*, 406 F. Supp. 3d 618, 637 (E.D. Mich. 2019) (the allegations of knowledge, "[w]hen taken together and accepted as true for the purposes of [defendant's] motion to dismiss, these allegations . . . plausibly establish [defendant's] knowledge of the [defect]").

In the Part 573 Safety Recall Report provided to NHTSA, FCA admitted that it had received "59 field reports potentially related to" the Spontaneous Shutdown Risk, dating back to at least February 17, 2018, long before the majority of the Class Vehicles were sold to consumers. ¶ 7 (citing Ex. 1 thereto). Plaintiffs have also provided detailed allegations of consumer complaints to NHTSA that their vehicles had experienced the Spontaneous Shutdown Risk when their vehicles shutdown

---

knowledge of the defect with particularity, the argument is not well-taken. Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b)."); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988) ("Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control."); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1056–57 (E.D. Mich. 2018) ("It is a principle of basic fairness that a plaintiff should have an opportunity to flesh out her claim through evidence unturned in discovery.").

without warning, some within only weeks of purchase and only a few hundred miles. ¶ 90. Plaintiffs allege NHTSA consumer complaints dating back to as early as April 2018. *Id*. Thus, FCA knew or should have immediately known of the Spontaneous Shutdown Risk. Moreover, FCA would have known of the Defect due to receiving customer assistance records and hundreds of warranty claims received at least as early as February 2018 ¶¶ 7 (citing Ex. 1 thereto), 12, 90. These consumer complaints demonstrate that pre-launch testing would have revealed the Spontaneous Shutdown Risk. Because consumers experienced the Defect soon after purchase and with as little as a couple hundred miles on their vehicles, pre-launch testing would have revealed the Defect. *See* ¶ 90 (experienced the Defect at only 200 miles; experienced the Defect at 250 miles and only five days after purchase; experienced the Defect at only 278 miles; experienced the defect only two weeks after purchasing the vehicle new; experienced the Defect two days after purchase and at less than 300 miles). FCA was also on notice from consumer complaints directly to FCA. *Id.* This is sufficient to plead FCA's pre-sale knowledge of the Defect at the pleading stage. *See Bossart*, 2021 WL 5278191, at *10–11.

**3. FCA Had a Duty to Disclose the True Nature of the Shutdown Risk Vehicles, the Spontaneous Shutdown Risk, and the True Nature of Its Intended Repair**

As in *Droesser*, the Court should reject FCA's duty to disclose arguments. In that case, this Court held that because the case involved latent safety defects,

allegations that defendant had superior knowledge about the cause of the failures, the fact that the defects posed a continuing safety risk, and that the defects were undiscoverable to average consumers, that plaintiffs had adequately pled defendant's "superior knowledge of the alleged defects, and plausibly establish a duty to disclose the alleged defects because of the causal link to the catastrophic failures." *Droesser*, 2023 WL 1746792, at *21. FCA's argument should similarly be rejected here.

Even if the Court considers FCA's state law arguments, those arguments fail. For the Michigan claims, the Complaint explicitly alleges that Plaintiff Huntington, "[t]hrough exposure and interaction with Chrysler, . . . was aware of Chrysler's uniform and pervasive marketing messages of dependability and safety and the benefits of being able to drive the vehicle in electric mode and in gas mode." ¶ 47 (emphasis added). In fact, she alleges that "these were primary reasons" why she purchased the vehicle. *Id.*[4] At a minimum, any analysis as to the nature and content

---

[4] This case is distinguishable from *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 794 (E.D. Mich. 2019) in which the plaintiffs "d[id] not allege they made any specific inquiry regarding the [vehicle]'s track capabilities or powertrain system." *First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*, 2010 WL 973466 (E.D. Mich. Mar. 16, 2010) is also unpersuasive as that was a ruling on summary judgment, not on the pleadings. In fact, that court even held in its original opinion that "it remains possible that 'highly misleading actions' could support a claim for silent fraud absent specific inquiry." *H.A. Howell*, 2010 WL 419972, at *3 (E.D. Mich. Feb. 1, 2010). Here, Plaintiff Huntington has alleged "misleading actions" such as (1) FCA marketed the vehicle as safe, a fact material to consumers (¶¶ 74–85); (2) FCA knew or should have known about the Spontaneous Shutdown Risk before Plaintiff Huntington purchased her vehicle (¶¶ 12, 47), and (3) FCA's pervasive marketing messages of dependability and safety and the benefits of being

of Plaintiff Huntington's interaction with FCA would be premature at this time.

FCA also overlooks the fact that Georgia, Texas, and Ohio have exceptions to the special relationship requirement. For instance, in Georgia, an exception exists when there is a latent defect that could not have been discovered through the exercise of ordinary prudence and caution. *See McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013) (citation omitted) ("The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.").[5]

Likewise, Texas law also recognizes that circumstances may impose:

> a duty on a party to speak where (1) the defendant knew that the plaintiff was ignorant of a material fact, and (2) the plaintiff did not have an equal opportunity to discover the fact. [As such,] a plaintiff may prevail on a claim for fraudulent concealment when (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*McCabe*, 948 F. Supp. 2d at 1369 (citations omitted). Here, Plaintiff Sheehan

---

able to drive the vehicle in electric mode and in gas mode were primary reasons why Plaintiff Huntington purchased her vehicle. ¶ 47.

[5] FCA's *Lilliston v. Regions Bank*, 653 S.E.2d 306 (Ga. App. 2007) is readily distinguishable, as it dealt with whether a bank had a duty to disclose any potential problems with a vehicle's title to a dealership.

alleges that "at no point did Chrysler or its agents, dealers, or other representatives disclose to Plaintiff the Spontaneous Shutdown Risk" in the vehicle he purchased and that FCA knew of the Spontaneous Shutdown Risk before he purchased his vehicle. ¶¶ 12, 63. These allegations sufficiently allege that FCA failed to disclose a material fact that it knew to be unknown to Plaintiff Sheehan.[6]

The same is true as to Plaintiff Littleton's claims under Ohio law. Contrary to FCA's assertion, a duty to disclose under Ohio law does not *require* a fiduciary duty or other similar relationship of "trust and confidence." PageID.585. Rather, a duty to disclose can also arise in the context of an arms-length negotiation when one party has knowledge of a latent defect in a product about which the other party is ignorant. *Callen v. Daimler AG*, 2020 WL 10090879, at *18 (N.D. Ga. June 17, 2020).[7]

Lastly, FCA contends that under Illinois law, "no omission-based claim is viable without identifying a specific affirmative misrepresentation and, even then, a fiduciary relationship is required." *See* ECF No. 15, PageID.585. However, this is unsupported by its own authority. Neither *Darne* nor *Ciszewski* require "affirmative

[6] FCA relies on *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838 (S.D. Tex. 2018) to argue that under Texas law a duty to disclose requires a fiduciary duty or other similar relationship of trust and confidence. *See* PageID.585. However, unlike Plaintiff Sheehan, the court in *Adams* found that the "[p]laintiffs do not allege any other facts supporting the inference that *a duty may arise by some other circumstance*, such that [defendant] made any other voluntary or partial disclosure or representation that would give rise to a duty." *Id.* at 850 (emphasis added).

[7] FCA's *Oro BRC4, LLC v. Silvertree Apartments, Inc.*, 2021 WL 184686, at *8 (S.D. Ohio Jan. 19, 2021) held that a fiduciary duty is not always required.

misrepresentation"—rather, they both make clear that an omission from a *communication* is required. *See Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("[u]nder the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."); *Ciszewski v. Denny's Corp.*, 2010 WL 1418582, at *3 (N.D. Ill. Apr. 7, 2010) (noting the Illinois Supreme Court made clear that consumers can maintain an ICFA claim either via "a communication containing a deceptive misrepresentation or one with a deceptive omission."). Here, Plaintiffs Su and Voss allege that they relied on FCA's communications. *See* ¶¶ 37–38; 74–85.[8]

**E. FCA's "Additional State-Specific Grounds for Dismissal" Are Meritless**

*Manifested Defect*: The Florida and North Carolina claims should not be dismissed on manifestation grounds. As discussed in more detail in Section III.A, *infra*, even though Plaintiffs Latacki and Fong's vehicles have not experienced a spontaneous shutdown, the Defect has not been remedied and their vehicles could shutdown at any time. ¶¶ 31–32, 55. These allegations are sufficient at the pleading stage. *See infra*, Section III.A; *see also In re Takata Airbag Prods. Liab. Litig.*, 193

[8] Further, the court in *Karpowicz v. Gen. Motors Corp.*, 1997 WL 413929, at *8 (N.D. Ill. July 18, 1997) did not state that a fiduciary relationship is *required*; instead, it noted how "[t]he Illinois Supreme Court has set forth *two situations* in which a duty to disclose a material fact might arise," including when the "plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* (quoting *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)).

F. Supp. 3d 1324, 1335 (S.D. Fla. 2016);[9] *Siqueiros v. Gen. Motors LLC*, 2021 WL 4061708, at *5–6 (N.D. Cal. Sept. 7, 2021).[10]

*California UCL Claim (Count VIII)*: Plaintiffs specifically allege that "FCA engaged in unfair competition and unfair, unlawful, or *fraudulent* business practices." ¶ 214.[11] Further, Plaintiffs "unfair" prong is sufficiently alleged as Plaintiffs allege that FCA concealed the Spontaneous Shutdown Risk, the true nature of the Pacifica Hybrids, and the risks, costs, and monetary damage resulting from the defect. *See* ¶ 214. The Spontaneous Shutdown Risk causes unexpected and spontaneous shutdown and loss of motive power in the Shutdown Risk Vehicles, and

[9] *See also In re: Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *25–27 (S.D.N.Y. July 15, 2016) (denying motion to dismiss Florida plaintiff's FDUTPA claim where "[n]either defect manifested itself in the car."); *Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4–5 & n.6 (S.D. Fla. July 25, 2016) ("[A] FDUTPA claim does not require the defect manifestation that was urged by the defendant."); *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 792–93 (C.D. Cal. 2022) (rejecting "Defendants argu[ment] that claims under the NCDTPA are 'precluded when an alleged defect has not manifested,'" finding that the complaint was "sufficient to establish an injury under the NCDTPA" where "[i]t alleges that, due to the presence of the Alleged Defect in each Class Vehicle, each Vehicle is worth less than each Plaintiff paid for it.").

[10] In reaching its decision, the court in *Siqueiros* examined FCA's *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614 (M.D.N.C. 2006) and found that it "is not a persuasive source of law," stating that "[i]t is a decision by a federal court that did not rely on North Carolina law," as it "did not cite any North Carolina legal authority requiring each putative class member to establish that a product defect caused them mechanical problems or personal injury in order to bring an implied warranty claim under North Carolina law." 2021 WL 4061708, at *6.

[11] FCA's *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 n.5 (9th Cir. 2012), does not support the proposition that failure to plead the "fraudulent" prong warrants dismissal of claims under the "unfair" and "unlawful" prongs.

this constitutes a safety issue. ¶ 215. FCA's acts and practices deceived Plaintiffs and are likely to deceive the public. ¶ 216. Surely such conduct is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Spiegel, Inc. v. F.T.C.*, 540 F.2d 287, 293 (7th Cir. 1976); *see also Pistorio v. FCA US LLC*, 2022 WL 141524, at *13 (E.D. Mich. Jan. 14, 2022) ("[B]ecause the allegations are sufficient to state a UCL claim based upon deception, the same allegations necessarily suffice to state a claim under the unfairness prong of the UCL. A practice which is deceptive is necessarily unfair.") (quotation omitted). Likewise, Plaintiffs' claims under the "unlawful" prong should not be dismissed as Plaintiffs have pled viable statutory claims. *See* ¶¶ 195–242. *See, e.g.*, *Pistorio*, 2022 WL 141524, at *13 ("[T]he CLRA claim is adequately pled, so the unlawful claim under the UCL survives.").

*Economic Loss Rule Does Not Bar North Carolina, Texas, and Missouri Consumer Protection Claims*: Exceptions to the economic loss rule "have been recognized where a defendant deliberately conceals information to induce the plaintiff to conclude a bargain, or to obfuscate product safety concerns." *Francis*, 504 F. Supp. 3d at 687 (rejecting defendant's argument that the economic loss doctrine bars claims under North Carolina's Unfair and Deceptive Trade Practices Act); *Elkhart Metal Fabricating, Inc. v. Martin*, 2014 WL 2972709, at *2 (E.D. Mo. July 1, 2014) ("The duty not to fraudulently or negligently make factual

misrepresentations to induce another person to form a contract is a duty that exists independently of any contractual obligations ultimately formed. Plaintiffs' claims are therefore not of the type barred by Missouri's economic loss doctrine."); *Chapman*, 531 F. Supp. 3d at 1297; *Estate of Pilgrim v. Gen. Motors LLC*, 596 F. Supp.3d 808, 829 (E.D. Mich. 2022) (citing *Heil Co. v. Polar Corp.*, 191 S.W.3d 805, 816 (Tex. App. 2006)) (recognizing, under Texas law, fraudulent inducement exception[12] to economic loss doctrine). "Federal courts have recognized that significant public policy concerns weigh heavily against the overextension of this limiting doctrine." *Francis*, 504 F. Supp. 3d at 686.

*Contractual Privity*: FCA argues that Plaintiffs' Idaho and Kentucky statutory fraud claims (Counts XXII and XXXI) fail because Plaintiffs do not plead a direct contractual relationship and privity. *See* ECF No. 15, PageID.587. However, while privity is generally required to assert a cause of action under the Kentucky Consumer Protection Act, the Kentucky Court of Appeals has found "distinguishable situations" such as where a defendant provides a warranty to the ultimate purchaser. *Skilcraft Sheetmetal, Inc. v. Kentucky Mach. Inc.*, 836 S.W.2d 907, 909 (Ky. App. 1992) (citing *Ford Motor Co. v. Mayes*, 575 S.W.2d 480 (Ky. App. 1978)); *see also*

---

[12] Plaintiff Sheehan's claim under the Texas Deceptive Trade Practices Consumer Protection Act specifically alleges that "FCA concealed, omitted and suppressed material facts concerning the Spontaneous Shutdown Risk . . . for the purpose of *inducing* Plaintiff and other Texas Subclass members to purchase Pacifica Hybrids, and to increase FCA's revenue and profits." ¶ 1007.

*Naiser v. Unilever U.S., Inc.*, 975 F. Supp. 2d 727, 743 (W.D. Ky. 2013) (finding that "Plaintiffs can maintain a KCPA claim against Unilever despite the absence of a direct buyer-seller relationship"). Further, no direct privity is required under Idaho law. *See In re Toyota RAV4 Hybrid Fuel Tank Litig.*, 534 F. Supp. 3d 1067, 1108 (N.D. Cal. 2021).

*Class Actions Not Barred*: When a state statute conflicts with Fed. R. Civ. P. 23, a district court should ask: "is the state law substantive (in which case it will control) or procedural (in which case Fed. R. Civ. P. 23 can supersede)?" *Chapman*, 531 F. Supp. 3d at 1301. Courts in this District have held class action prohibitions in state consumer protection statutes to be procedural and are superseded by Rule 23. *Reynolds*, 546 F. Supp. 3d at 657. Further, the argument that monetary damages are not available for Plaintiff Vu's class action statutory claim under the KCPA should be rejected for the same reason—"the interposition of this state law procedural bar is inapposite in the context of prospective class claims brought in a federal forum." *Francis*, 504 F. Supp. 3d at 690.[13]

*Plaintiff Spruance Gave Sufficient Notice*: Plaintiff Spruance specifically

---

[13] *See also id.* ("The decisions on point applying Kansas law . . . have recognized that the consumer protection laws of that state expressly permit class actions for recovery of damages incurred as a result of deceptive trade practices."); Kan. Stat. Ann. § 50-634(d) ("a consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by an act or practice . . . Violating any of the acts or practices specifically proscribed in K.S.A. 50-626.").

alleged that "[o]n or about January 30, 2023, Plaintiffs' counsel sent a letter complying with Ga. Code. Ann § 10-1-399(b)." ¶ 388. Furthermore, courts in this District have held that, when plaintiffs "allege providing at least some notice, the question of adequacy and timeliness of notice becomes one of fact, and the claim should not be defeated at the motion to dismiss stage." *In re Chevrolet Bolt*, 2022 WL 4686974, at *34 (citation omitted). FCA's claims that Plaintiffs' pre-suit notice was inadequate should not derail any of Plaintiffs' claims at this stage.[14]

**F. Plaintiffs Properly Plead Their Unjust Enrichment Claims**

*First*, ample legal authority permits Plaintiffs to plead unjust enrichment claims in the alternative, and dismissal of such claims at this stage is premature. *See In re Monostable*, 280 F. Supp. 3d at 1009; *Francis*, 504 F. Supp. 3d at 694.

*Second*, FCA has failed to cite any authority supporting its assertion that "factual allegations showing Plaintiffs' legal remedies are inadequate" is a "threshold requirement." *See* ECF No. 15, PageID.588.[15]

---

[14] The "purpose of the notification requirement is to defeat commercial bad faith, not to deprive a good faith consumer of his remedy." *Francis*, 504 F. Supp. 3d at 679 (citation omitted). For that reason, "dismissal for want of notice is inappropriate where, as here, the defendant has made no showing that it was prejudiced by being deprived of a seasonable opportunity to remedy the problem." *Id.*

[15] FCA's only cited case, *Duffie v. Michigan Grp., Inc.—Livingston*, 2016 WL 8259511, at *1 (E.D. Mich. Jan 15, 2016), is one in which the court was tasked with determining whether the expiration of a statute of limitation deprived the plaintiff of an adequate remedy at law such that equitable relief was justified. *Id.* at *1. The court did not address whether factual allegations showing the inadequacy of legal remedies is a threshold requirement. *See id.*

*Third*, contrary to FCA's contention, Plaintiffs have alleged that they conferred a direct benefit on FCA. The Complaint's allegations that "FCA has benefitted from selling, leasing, and distributing the Shutdown Risk Vehicles for more than they were worth as a result of FCA's conduct, and Plaintiffs and Nationwide Shutdown Risk Class members have overpaid for the Pacifica Hybrids" (¶¶ 154–163), are more than sufficient to state a claim for unjust enrichment. *See In re Monostable*, 280 F. Supp. 3d at 1008. Further, courts commonly reject the argument that Plaintiffs have failed to allege any direct interaction with the defendant. *Id.* at 1009; *see also In re Cardizem CD Antitrust Litig.*, 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000) ("Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct.").

*Fourth*, despite FCA's contentions, courts have consistently ruled that unjust enrichment claims under the laws of Texas, Massachusetts, and Pennsylvania are independent causes of action. *In re Monostable*, 355 F. Supp. 3d 582, 600 (E.D. Mich. 2018) (Texas); *see also Lee v. Samsung Elecs. Am., Inc.*, 2022 WL 4243957, at *16 (S.D. Tex. Sept. 13, 2022) ("In Texas, the Texas Supreme Court and Fifth Circuit have previously acknowledged unjust enrichment as an independent cause of action."); *see also In re Monostable*, 280 F. Supp. 3d at 1008–09 (Massachusetts and Pennsylvania). Unjust enrichment claims may also be maintained under

California and New Hampshire law, the remaining states. *Veasman v. Nuance Commc'ns, Inc.*, 2022 WL 2964411, at *7 (C.D. Cal. June 29, 2022) (holding that a "district court should not dismiss where a plaintiff raising an unjust enrichment claim has provided a 'straightforward statement . . . sufficient to state a quasi-contract cause of action.'") (quoting *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762–63 (9th Cir. 2015)); *Sandee's Catering v. Agri Stats, Inc.*, 2021 WL 963812, at *3 (N.D. Ill. Mar. 15, 2021) (pointing to an exception for "indirect purchaser plaintiffs to bring unjust enrichment claims" under New Hampshire law).

## G. Plaintiffs' Implied Warranty Claims Are Well Pled

### 1. The Class Vehicles Are Not Merchantable

Plaintiffs adequately allege that the Defect rendered their vehicles unfit for ordinary use, as required for an implied warranty claim. "Federal courts considering implied warranty claims in auto defect litigation consistently have held that an automobile is merchantable or fit for its intended purpose only where it is able reliably to operate in a 'safe condition' or to provide 'safe transportation.'" *Francis*, 504 F. Supp. 3d at 676; *see also In re Monostable*, 280 F. Supp. 3d at 1015; *Chapman*, 531 F. Supp. 3d at 1275–76; *Droesser*, 2023 WL 2746792, at *9–10.

Here, Plaintiffs' vehicles are dangerous, unsafe, and unreliable because of the Spontaneous Shutdown Risk. ¶¶ 2–17, 86–93. Plaintiffs' vehicles "contain a defect in the propulsion system that can cause the vehicle to experience an immediate

shutdown of motive power while the vehicle is being driven." ¶ 3. A vehicle of this nature, i.e., that can spontaneously lose motive power while driving, cannot credibly be characterized as merchantable. Moreover, FCA's recall in response to the Spontaneous Shutdown Risk is patently inadequate. ¶¶ 91–92.

**2. FCA Breached the Implied Warranty at the Time of Purchase**

FCA also incorrectly argues that Plaintiffs' implied warranty claims should be dismissed because Plaintiffs have not pled presentment to the dealership for repair within the warranty period. PageID.589. But one must only look to this Court's decision in *Droesser* from earlier this year to see why FCA is wrong. "For implied warranties, the UCC provides that '[a] breach of warranty occurs when tender of delivery is made.'" *Droesser*, 2023 WL 2746792, at *10 (citing U.C.C. § 2-725(2)). "Plaintiffs' implied warranty claims 'accrue at the time of *original* tender, when [defendant] impliedly warranted *that* vehicle's fitness." *Id.* (emphasis in original). Thus, FCA's arguments for dismissal on this basis should be rejected.

**3. Plaintiffs' Claims Do Not Fail for Lack of Privity**

The states identified by FCA (ECF No. 15, PageID.590) all either do not require privity or recognize an exception to the privity requirement. For instance, under Kansas law, privity is not required to state a claim for breach of implied warranty. *See Gonzalez v. Pepsico, Inc.*, 489 F. Supp. 2d 1233, 1246 (D. Kan. 2007). Further, under California, Florida, North Carolina, Oregon, and Washington law, a

third-party beneficiary exception is recognized.[16] Under Illinois law, privity may be established where the defendant issues a warranty, as FCA did here. *See* ¶¶ 72–73.[17] Missouri law also does not require privity. *Alexander v. Inland Steel Co.*, 263 F.2d 314, 323 n.7 (8th Cir. 1958) (acknowledging that a court may review the facts to find privity). Finally, courts have repeatedly held that the issue of whether privity is required to maintain an implied warranty claim is fact-intensive and better suited for summary judgment. *Milisits v. FCA US LLC*, 2021 WL 3145704, at *7 (E.D. Mich. July 26, 2021); *In re Chevrolet Bolt*, 2022 WL 4686974, at *37; *Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 704–05 (N.D. Ill. 2016).

**4. Plaintiffs' Claims Do Not Fail for Lack of Pre-Suit Notice**

Despite FCA's contentions, Plaintiffs gave FCA written notice of its alleged wrongdoing by a letter dated January 30, 2023, and FCA was also provided notice of the Spontaneous Shutdown Risk by numerous consumer complaints made to their authorized dealers nationwide, complaints to NHTSA, and through their own testing, as well as from the original filing of complaints in this action and its predecessor

---

[16] *See, e.g.*, *In re Chevrolet Bolt*, 2022 WL 4686974, at *36 (California, Oregon, and Washington); *Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1183 (S.D. Fla. 2019) (Florida); *Droesser*, 2023 WL 2746792, at *18 (North Carolina); *Torch v. Windsor Surry Co.*, 2019 WL 6709379, at *11 n.5 (D. Or. Dec. 9, 2019) (Oregon).
[17] *In re Rust-Oleum Restore Mktg., Sales Pracs. & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 806–07 (N.D. Ill. 2016) (privity exception applied where there were direct-to-consumer advertisements and warranties); *In re Chevrolet Bolt*, 2022 WL 4686974, at *37.

actions. ¶¶ 8, 126, 207, 238, 363–364, 409–410, 782–783, 835, 875, 890–891, 1028, 1046–1047. FCA's contention that "[n]o Plaintiff avers providing the requisite notice," is patently false.[18] Further, as explained in footnote 14, the issue of notice is one for discovery and should not serve as a basis for dismissal at the pleading stage.

## H. Plaintiffs Adequately Plead Claims for Breach of Express Warranty

### 1. FCA's Express Warranty Covers the Defect

At the motion to dismiss stage, "courts have rejected efforts" by defendants "to create an artificial distinction between design and materials/workmanship defects." *Persad*, 2018 WL 3428690, at *5; *see also In re Monostable*, 280 F. Supp. 3d at 1011 ("At this early stage of the case, without the benefit of any factual development as to the cause and origin of the alleged defect, dismissal of the express warranty claims is not justified by a premature and uninformed classification of the alleged defect as being categorically in the realm of 'design' or 'manufacturing.'"). FCA cherry picks certain allegations in the Complaint, while ignoring others, to argue that Plaintiffs allege only a design defect. ¶¶ 89, 201, 703. Further, "just because Plaintiffs plead allegations involving a class of vehicles does not preclude the possibility of a manufacturing defect." *Gregorio v. Ford Motor Co.*, 522 F. Supp.

[18] FCA also seeks dismissal of certain Plaintiffs' express warranty claims because of the purported failure to provide adequate pre-suit notice of their claims, but Plaintiffs provided notice. *See* ¶¶ 287-88, 457-58, 644-45, 670-71, 742-43, 936-37, 1098-99.

3d 264, 288 (E.D. Mich. 2021); *Francis*, 504 F. Supp. 3d at 673 ("The defendant insists that if 'all' of its transmissions are affected, then the defect necessarily must be one caused by design and not method of manufacture. But it is logically possible that either could be the case; perhaps the transmissions work badly even though built as designed; or maybe they *all* were badly built, even though well-patterned.") (citation omitted); *Milisits*, 2021 WL 3145704, at *4.

**2. FCA Breached the Express Warranty**

FCA's motion is inaccurate. Several Plaintiffs presented their vehicles to FCA-authorized dealerships soon after receiving notifications from FCA. ¶¶ 24, 27, 29, 32, 34, 36, 42, 44, 46, 48, 50, 52, 58, 60, 64, 66, 68. FCA's warranty promises to repair any defect, but "where a plaintiff plausibly alleges that a defendant has not adequately repaired [their] vehicle, the fact that the defendant has attempted repair does not absolve it from liability under its warranty." *Reynolds*, 546 F. Supp. 3d at 649 (citation omitted). Here, Plaintiffs allege that FCA has not offered owners and lessees of the Shutdown Risk Vehicles any remedy. *See, e.g.*, ¶¶ 9–10, 91–92. FCA admits that it is not going to repair or replace the transmission wire harnesses that it knows are faulty and prone to causing the dangerous Spontaneous Shutdown Risk.

Further, presentment of their vehicles for repair, even within the warranty period, would have been futile. "[A] repair-or-replace warranty fails its essential purpose when the seller is either unwilling or unable to repair the vehicle." *Gregorio*,

522 F. Supp. 3d at 290; *In re Monostable*, 280 F. Supp. 3d at 1010 (declining to dismiss express warranty claim where "the plaintiffs have alleged that the defendant failed or refused to repair" an allegedly defective part); *In re Chevrolet Bolt*, 2022 WL 4686974, at *32–33.

Plaintiffs refer the Court to Section III.G.4, *supra*, where Plaintiffs detail how pre-suit notice requirements were satisfied for each of Plaintiffs' claims.

**3. FCA's Warranty Failed in Its Essential Purpose**

Plaintiffs allege that "should Defendant claim that the Spontaneous Shutdown Risk is covered under the warranties, the warranties now fail in their essential purpose because . . . Defendant has failed and/or has refused to adequately provide the promised remedies within a reasonable time." ¶¶ 291, 367, 413, 461, 648, 674, 746, 786, 894, 940, 1050, 1102; *see In re Chevrolet Bolt*, 2022 WL 4686974, at *33 ("[T]he Court is persuaded that Plaintiffs have plausibly alleged that the Limited Warranty has failed its essential purpose because they have alleged that [defendant] failed to repair or replace the allegedly defective batteries within a reasonable time."). FCA's motion lacks any basis for dismissal of these claims on this basis.

Dated: June 23, 2023

Respectfully submitted,

**THE MILLER LAW FIRM, P.C.**

*<u>/s/ E. Powell Miller</u>*
E. Powell Miller (P39487)
Dennis A. Lienhardt (P81118)
Dana E. Fraser (P82873)

950 W. University Dr., Ste. 300
Rochester, Michigan 48307
Tel: (248) 841-2200
epm@millerlawpc.com
dal@millerlawpc.com
def@millerlawpc.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman
Thomas E. Loeser
1301 Second Ave., Ste. 2000
Seattle, Washington 98101
Tel: (206) 623-7292
steve@hbsslaw.com
toml@hbsslaw.com

*Counsel for Plaintiffs and the Proposed Classes*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2023, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste. 300
Rochester, MI 48307
Tel: (248) 841-2200
epm@millerlawpc.com